# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| **TARIQ FAROOQ** | § |
| *Plaintiff* | § |
| | § |
| | § |
| **VS.** | § |
| **LINDSEY MARIE BYERS WYNNE in her** | § |
| **official capacity as Presiding Judge of the** | § |
| **468th Judicial District Court of Collin** | § |
| **County Texas,** | § |
| **ANDREA THOMPSON, in her official** | § |
| **capacity as Presiding Judge of the 416th** | § |
| **Judicial District Court of Collin County** | § |
| **Texas,** | § |
| **THE 416TH JUDICIAL DISTRICT** | § |
| **COURT of Collin County Texas,** | § |
| **THE 468TH JUDICIAL DISTRICT** | § |
| **COURT of Collin County Texas,** | § |
| **STATE OF TEXAS by and through the** | |
| **OFFICE OF COURT** | |
| **ADMINISTRATION,** | |
| **COLLIN COUNTY TEXAS,** | |
| **JIM SKINNER, in his official capacity as** | |
| **Sheriff of Collin County Texas,** | |
| **EDWIN MCGILL in his individual** | |
| **capacity,** | |
| **CAROLYN ENGLAND in her individual** | |
| **capacity** | |
| *Defendants* | |



FILED

OCT 2 9 2025

CLERK, U.S. DISTRICT COURT
TEXAS EASTERN

Civil Action No. _4:25 cv 1188 ALM|AGD_

## PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

All paragraphs are numbered under Fed. R. Civ. P. 10(b). Each Count incorporates only the paragraphs expressly referenced to avoid shotgun pleading. Allegations are limited to facts necessary to state each element.

## I. INTRODUCTION AND NATURE OF THE ACTION

1. This action arises under including but not limited to: 42 U.S.C. §§ 1983, 1985; the Americans with Disabilities Act ("ADA"); 28 C.F.R. § 35.130; 42 U.S.C. § 12132; U.S.C. § 12131 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, challenging a systematic pattern of constitutional violations by state judicial, law enforcement, and court administrative officials that resulted including but not limited to the effective termination of Plaintiff Tariq Farooq's ("Plaintiff" or "Father" or "Dad" or "Husband") fundamental parental rights through fabricated judicial findings, coordinated constitutional violations, and systematic deprivation of due process protections.

2. This federal civil rights action seeks redress for: (a) a coordinated conspiracy to deprive Plaintiff of constitutional rights through backdated judicial orders entered after loss of jurisdiction; (b) systematic judicial bias including emotional involvement with opposing parties, crying during opposing party testimony, and near-100% adverse rulings against Plaintiff over multiple years, who is proven to be an exemplary father; (c) judicial coordination of warrantless digital searches with intimidation tactics; (d) deliberate fabrication of judicial findings including false income imputation of $100,000 despite evidence of indigency and Supplemental Nutrition Assistance Program ("SNAP" or "Food Stamps")  benefits; (e) systematic disability

discrimination spanning multiple years; (f) coordinated record manipulation by court personnel; and (g) effective termination of parental rights for a special-needs child who was confirmed suicidal, has a super-strong bond with his father Tariq Farooq ("Father" or "Plaintiff" or "Dad" or "Husband") and requires paternal care.

3. Plaintiff seeks prospective declaratory and injunctive relief, compensatory damages in an amount to be determined at trial, punitive damages in an amount to be determined at trial where allowed by law, and attorney's fees, should counsel appear or be appointed; otherwise Plaintiff seeks allowable litigation costs and expenses for multiple completed constitutional torts that have resulted in the deliberate destruction of the father-child relationship with a special-needs severely disabled minor born with a rare condition "Tetrasomy 18p" who has documented separation anxiety and suicidal ideation when separated from Plaintiff who is proven to be an exemplary hard-working father.

4. Claims under §1983 use the forum state's personal injury limitations period (two years in Texas); accrual occurs when Plaintiff knows or has reason to know of the injury. Amendments relate back when arising from the same conduct/occurrence. Fed. R. Civ. P. 15(c). This pleading is timely as to the conduct described and any new defendants/claims arise from the same nucleus of facts.

## II. RECORD REFERENCES

5. The following references to the record are referenced herein this verified original complaint:

i. Related Cases: Texas Appellate Court Cause No. [05-24-01246-CV] and Texas District Court Cause No. [416-51752-2020] formerly [468-51752-2020].

ii. The clerk's record and supplemental clerk's record will be referred to as "CR" and "SCR" and will be cited by Cause No. followed by page(s) as appropriate. CR:__; SCR: ____ : e.g. In Texas Appellate Cause No. [05-24-01246-CV:CR ____ ]. *See* Exhibit AF.

iii. The reporter's record, supplemental reporter's record, and second sup- plemental reporter's record will be referred to as "RR," "SRR," and "2SRR," respectively, and will be cited by volume(s) and page(s) as ap- propriate. __RR:__; __SRR:__; 2SRR: . *See* Exhibit AG.

iv. The reporter's record consisting of testimony, audios and videos will be referred to in the same naming convention used by the court reporter, where "Pet" denotes "Petitioner"; "Ex" denotes "Exhibit"). Appellate and District Court Cause No. will precede each record:

> 05-24-01246-CV:Collin-468-51752-2020-RR-Vol-Date-___
> OR
> 05-24-01246-CV:Collin-468-51752-2020-RR-Part___   Pet's   Ex.___
> OR
> Cause no. 05-24-01246-CV:Collin-468-51752-2020-RR-Part___   Pet's Exhibit___.

### III. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant including but not limited to: 28 U.S.C. §§ 1331 and 1343 over federal civil rights claims arising under the Constitution and laws of the United States, specifically 42 U.S.C. §§ 1983, 1985, 1988, and 12131 et seq.

7. This Court has authority to grant declaratory relief pursuant including but not limited to: 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57, and injunctive relief pursuant to Fed. R. Civ. P. 65.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in Collin County, Texas, which lies within this judicial district.

9. This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a).

10. Standing. Plaintiff alleges concrete injury in fact (lost access to court on dispositive matters; pecuniary losses; other costs), traceable to Defendants' actions including but not limited to: submission only; remote CART denial; no §35.164, and redressable by the requested relief (protocol order; damages).

11. Ripeness / Capable of Repetition and Judicial-Immunity / Relief Limitation. Prospective relief is ripe because dispositive matters continue and the challenged practices are ongoing; any suggestion of mootness is defeated by the "capable of repetition yet evading review" doctrine given recurrent short notice settings. Plaintiff seeks no damages from judicial officers. Relief as to judicial officers is sought only in their official capacities for prospective declaratory and injunctive relief under including but not limited to: *Ex parte Young*, 209 U.S. 123 (1908), to require ADA-compliant courtroom procedures. To the extent 42 U.S.C. § 1983 limits injunctive relief against a judge to circumstances where a declaratory decree was violated or declaratory relief is unavailable, Plaintiff pleads that declaratory relief is inadequate or unavailable given the ongoing ADA process deprivations and imminent settings.

## IV. ABSTENTION DOCTRINES INAPPLICABLE

12. The *Rooker-Feldman* doctrine does not divest this Court of jurisdiction because: (a) Plaintiff seeks prospective relief regarding procedurally void orders rather than appellate review of final state judgments; (b) the constitutional violations alleged herein are independent federal claims arising from official conduct under color of state law; (c) Plaintiff does not seek reversal of state court determinations but rather challenges systematic constitutional violations by state officials; (d) the claims assert injuries caused by coordinated constitutional misconduct rather than adverse state court rulings; and (e) Plaintiff has ongoing state court appeals pending, making federal relief collateral and prospective in nature.

13. *Younger* abstention is inapplicable because: (a) Plaintiff seeks retrospective monetary relief for completed constitutional torts; (b) the prospective relief sought relates to void orders; (c) Defendants' conduct exhibits bad faith, bias, and coordinated misconduct warranting established exceptions; (d) no adequate state forum exists to remedy the coordinated federal

constitutional violations alleged herein; and (d) these are independent federal claims—not appeals of state-court orders.

## V. PARTIES

14.    Plaintiff Tariq Farooq is an individual residing at 3500 S Echo Trl, Plano, Collin County, Texas 75023, within this judicial district who was and is still involved in divorce and post-divorce proceedings from Ambreen Sahar Jafri ("Wife" or "Ex-Wife" or "Mother"). At all relevant times, Plaintiff suffered from disability Tinnitus [Exhibit AH] impairing his ability to effectively participate in courtroom proceedings in addition to impairment whilst preparing motions / pleadings due to trauma caused by child separation and divorce and was proceeding *pro se* in state court family law proceedings concerning requiring ADA accommodations including but not limited to: Communication Access Realtime Translation ("CART"), extra time for preparing and participating in court proceedings, slow speech, one speaker at a time, periodic comprehension checks, and short processing time breaks necessary to make CART effective. Plaintiff's minor son, M.T.A.F., who suffers from Tetrasomy 18p, a rare chromosomal disorder causing severe amongst other conditions cognitive, intellectual and physical disability in addition to having a documented history of violence and mental health issues including but not limited to separation anxiety when away from Plaintiff, and suicidal ideation confirmed on February 1, 2024 at the Plano Children's Medical Center is center to the underlying custody dispute.

15. Defendant Lindsey Marie Byers Wynne ("Judge Wynne" or "Judge Lindsey Wynne") is sued in her official capacity as Judge of the 468th Judicial District Court, Collin County, Texas. She may be served through the Office of the Texas Attorney General, 300 W. 15th Street, Austin, Texas 78701 or wherever she may be found.

16. Defendant Andrea Thompson ("Judge Thompson" or "Judge Andrea Thompson") is sued in her official capacity as Presiding Judge of the 416th District Court, Collin County, Texas. Plaintiff seeks prospective declaratory and injunctive relief to ensure Title II effective communication compliance in current and future proceedings. She may be served through the Office of the Texas Attorney General, 300 W. 15th Street, Austin, Texas 78701 or wherever she may be found.

17. Defendant Carolyn England ("England" or "Ms. England") is sued in her individual capacity. England was the official court reporter assigned to the 468th District Court for the proceedings in this matter and transcribed the June 17, 2024 pre-trial, the June 24, 2024 pre-trial/hearing, the June 26–28, 2024 final jury trial, and related proceedings. England prepared and certified (or purported to certify) reporter's records and served as the official custodian of the official verbatim record for those proceedings. Plaintiff alleges on personal knowledge and on information and belief that England participated in the creation, alteration, and subsequent transmission of court records with incorrect dates and replaced critical audiovisual evidence outside the chain of custody and altered/incorrect reporter's materials relevant to the SAPCR proceedings. England may be served through the Collin County District Clerk or at the Russell A. Steindam Courts Building, 2100 Bloomdale Road, McKinney, Texas 75071 or at such address as the District Clerk maintains for reporters or wherever she may be found. Plaintiff reserves the right to amend to add any direct service address if later identified.

18. Defendant The 468th Judicial District Court Of Collin County ("468" or "468th" or "468 court"), Texas is a "public entity" under including but not limited to: 42 U.S.C. § 12131(1)(B). Plaintiff seeks retrospective relief tied to denials that occurred while proceedings were pending in

the 468th including but not limited to Title II of the Americans with Disabilities Act ("ADA" or "Title II")

19. Defendant The 416th Judicial District Court Of Collin County ("416" or "416th" or "416 court"), Texas is a "public entity" under including but not limited to: 42 U.S.C. § 12131(1)(B). Plaintiff seeks retrospective and prospective declaratory and injunctive relief to secure courtroom ADA protocols including but not limited to under Title II .

20. Defendant State of Texas is sued through its Office of Court Administration as the governmental entity responsible for administering the state court system, ensuring compliance with federal disability rights laws, and providing judicial training. The State may be served through the Office of Court Administration, 205 W. 14th Street, Suite 600, Austin, Texas 78701.

21. Defendant Collin County, Texas is a municipal corporation and political subdivision responsible for courthouse operations, court administration, law-enforcement services, and compliance with federal civil-rights laws. At all relevant times, the Collin County Commissioners Court, presided over by County Judge Chris Hill, was the final policymaker for courthouse security, ADA funding, and Sheriff training. including but not limited to: Tex. Const. art. V, § 18(b); Tex. Loc. Gov't Code §81.001. On information and belief, the Collin County Commissioners Court — during the relevant period presided over by County Judge Chris Hill — exercised final policymaking authority with respect to courthouse administration, courthouse security, and budget allocations for courthouse services. Plaintiff pleads that documents including but not limited to the Commissioners Court minutes, budget worksheets, and procurement records will demonstrate the Commissioners Court's role in any failure to fund or operationalize ADA accommodations; those records will be sought in discovery. Pursuant to including but not limited to: Tex. Civ. Prac. & Rem. Code § 17.024(a), Collin County may be

served by serving its County Judge, Chris Hill, at 2300 Bloomdale Road, McKinney, Texas 75071. Collin County Texas is already named; no separate claim is asserted against County Judge Chris Hill personally.

22. Defendant Jim Skinner (";Skinner" or "Sheriff Skinner") is sued in his official capacity as Sheriff of Collin County, Texas, responsible for law enforcement operations, deputy training and supervision, and courthouse security. He may be served at the Collin County Sheriff's Office, 4300 Community Avenue, McKinney, Texas 75071.

23. Defendant Edwin McGill ("Bailiff" or "McGill" or "Bailiff McGill") assigned as court officer to the 468th District Court of Collin County Texas is sued in his individual capacity as a deputy sheriff of Collin County, Texas who violated Plaintiff's clearly established Fourth Amendment rights through intimidation tactics, warrantless searches, and jury prejudice. He may be served at the Collin County Sheriff's Office, 4300 Community Avenue, McKinney, Texas 75071. Plaintiff also sues John Doe Deputy (unknown deputy of the Collin County Sheriff's Office) who, acting under color of state law, refused to accept sworn criminal complaint from Plaintiff. Plaintiff will amend to substitute the true name of this deputy when it is discovered.

## VI. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

24. A concise timeline of critical events is mentioned below in this section:

**A. Concise Timeline Of Critical Events**

468 District Court of Collin County Texas:

*March 24, 2020* – Original divorce petition filed.

*November 17, 2022* – Final divorce decree entered.

*December 7, 2023* – Father files Suit Affecting Parent Child Relationship ("SAPCR") modification petition citing child's deteriorating condition.

*February 9, 2024* – Emergency hearing: All of father's motions denied.

*March 27, 2024* – Father files first recusal motion against Judge Wynne (denied April 5).

*June 17, 2024* – 468 Court arbitrarily grants Plano Independent School District's ("Plano ISD") Quash Motion, blocking father's key witnesses.

*June 24, 2024* – Pre-trial hearing held just 2 days before Final Trial despite plaintiff's objections: **All Father's motions denied** (continuance, ADA accommodations, discovery sanctions), **All of Mother's motions granted**.

*June 26-28, 2024* – **Final trial with no ADA accommodations despite repeated written and oral requests before and during the final trial**.

*August 20, 2024* – 468 Court issues memorandum ruling (not final rendition).

*October 9, 2024* – 468 Court establishes by-submission process for final order.

*October 16, 2024* – No court action occurs despite established deadline.

*October 17, 2024*, 11:31 AM – Father files Rule 18a disqualification motion.

*October 17, 2024*, 1:30-2:00 PM – Judge Wynne abandons own established timeline and wet-signs and backdates final orders post-filing-of-Rule18a-Motion – **no prior oral rendition in open court or written memorandum filed with the court**.

*October 17, 2024*, 2:17 PM and 2:45 PM – Collin County Clerk ("Clerk" or "District Clerk") creates electronic docket entries for backdated orders and sua sponte recusal orders.

*October 17, 2024*, 2:50 PM – Clerk emails Judgment Letters for Final Order.

*October 17, 2024*, 3:22 PM – 468 Court Coordinator emails backdated and wet-signed Final Orders and Recusal Order only after Plaintiff emails her and after filing / service of plaintiff's disqualification motion clearly proving loss of jurisdiction and issuance of ulta vires void orders.

*October 22, 2024* – Plaintiff files Notice of Appeal and Request for Findings of Fact and

Conclusions of Law ("FFCL").

*October 28, 2024* – Plaintiff files Motion to Vacate and Declare the Recusal Order and Final Order Illegal, Motion for New Trial and Motion to Stay the Judgment pending the outcome of the appeal. No motion is granted by the First Administrative Judicial Region or the newly assigned 416 court.

*November 25, 2024* – Plaintiff files Past-Due Notice for FFCL.

25. A detailed timeline of significant events is mentioned below in this section:

**B. Detailed Timeline with References to the Record**

***i. Pre-Trial and Trial Events***

*March 24, 2020* – Original Petition for Divorce filed [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:43-53] filed by Wife.

*November 17, 2022* – Final Decree of Divorce [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:69-116].

*December 07, 2023* – Plaintiff Petition to Modify Parent-Child Relationship ("SAPCR") based on loss of employment and significant deterioration of M.T.A.F's condition due to Mother's lack of mental health access for M.T.A.F. (Plaintiff's Special Needs Son born with Tetrasomy 18p) and other parental concerns by mother [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:69-116].

*December 08, 2023* – Plaintiff files Motion for Emergency Temporary Orders based on due to Mother's blocking of mental health access to special needs child M.T.A.F., driving around in an unsafe, uninspected vehicle and other parental concerns by mother [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:217-346].

*January 18, 2024* – Plaintiff files First Amended Petition to Modify Parent-Child Relationship [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:359-384].

*January 18, 2024* – Mother files Original Answer and Counter-Petition to Modify Parent-Child Relationship [Cause no. 05-24-01246-CV:Collin-468-51752-2020:SCR:4-10].

*February 5, 2024* – Plaintiff files Petitioner's Motion for Temporary Restraining Order, Temporary Injunction and Temporary Orders [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:385-415].

*February 5, 2024* – Mother files Respondent's Motion for Temporary Restraining Order, Temporary Injunction and Temporary Orders [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:416-430].

*February 9, 2024* – Hearing for Emergency Temporary Orders held **two months after such motion** was filed by Plaintiff resulting in continuing harm to M.T.A.F. All relief for Plaintiff **blanketly denied** by Judge Wynne **contrary to clear and convincing evidence** admitted during hearing [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:31].

*February 15, 2024* – Judge Wynne signs Opposing Counsel's Temporary Orders AS-IS omitting "Psychological Evaluation for M.T.A.F" that she ordered (Recorded in the Docket Entry for February 09, 2024) despite Objections by Plaintiff and dismissing his proposed orders that accurately reflect her Temporary Orders Ruling heard on February 09, 2024. [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:461-463].

*February 26, 2024* – Plaintiff files Petitioner's Rule 194 Request for Disclosure, Petitioner's Request for Production and Inspection and Interrogatories to Ambreen Sahar Jafri [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:464-492].

*March 04, 2024* – Plano Independent School District's Motion to Quash and for Protective Order [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:493-513].

*March 27, 2024* – Plaintiff files Verified Motion To Recuse Honorable Judge Lindsey Wynne [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:514-555].

*March 27, 2024* – Plaintiff files Verified Motion To Recuse Honorable Judge Lindsey Wynne and First Amended Verified Motion To Recuse Honorable Judge Lindsey Wynne [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:556-604].

*March 28, 2024* – Judge Wynne signs Order of Referral on Motion to Recuse [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:605].

*April 05, 2024* – First Administrative Judicial Region Judge Ray Wheless ("Judge Wheless") Order Denying Motion to Recuse [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:606-607].

*April 19, 2024* – Plaintiff files Petitioner's Motion to Compel Discovery Responses and Response to Respondent's Objections and For Sanctions [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:608-617].

*April 29, 2024* – Plaintiff files Motion to Seal the Court Record based on the parties' minor children's sensitive personal identifiable information being unredacted in public [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:625-629].

*April 29, 2024* – Plaintiff files Motion for Additional Time Per Side in the Final Jury Trial based on the complexity of the case, a special needs child and his hearing disability [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:630-634].

*May 22, 2024* – Mother files Motion to Compel Discovery and Motion for Sanctions [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:644-659].

*June 14, 2024* – Plaintiff files First Motion for Continuance of Final Trial due to no pre-trial motions held and non-availability of critical witnesses and non-completion of pending discovery [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:667-670].

*June 14, 2024* – Plaintiff files Motion for Judge to Confer with child [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:671-674].

*June 14, 2024* – Plaintiff files Petitioner's Response In Opposition to Plano ISD's Multiple Motions to Quash and For Protective Order [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:682-735].

*June 14, 2024* – Plaintiff files Petitioner's Response to Respondent's Motion to Compel Discovery Responses and For Sanctions [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:739-741].

*June 17, 2024* – Plaintiff files Petitioner's First Amended Motion for Further Temporary Orders [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:742-848].

*June 17, 2024* – Hearing Held on Plano ISD's Motion to Quash and Order Granting Plano ISD's Motion to Quash and Motion for Protection (**Arbitrarily GRANTED to Plano ISD blocking all of Plaintiff's critical witnesses from M.T.A.F.'s school**) [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:849-852].

*June 24, 2024* – Pre-Trial Motions **held just 2 days before Final Jury Trial**: Plaintiff's First Motion for Additional Time during Final Trial (**DENIED**), Plaintiff's First Motion for Continuance of Final Trial (**DENIED**), Plaintiff's Motion to Seal the Record (**DENIED**), Plaintiff Motion to Compel Discovery Responses and For Sanctions (**DENIED**), Plaintiff's Motion for Further Temporary Orders (**DENIED**), Plaintiff's Motion for Judge to Confer with Child (**DENIED**), Mother's Motion to Compel Discovery Responses and For Sanctions

(**GRANTED**), Mother's Motion to Declare the Petitioner a Vexatious Litigant (**Deferred to Later Date because of running out of time on 06/17/2024**) [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:37].

*June 26-28, 2024* – Final Jury Trial [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:853-869].

### ii. Post-Trial Proceedings

*August 20, 2024* – Court's Memorandum Ruling is issued with a clear notice at the bottom: "*NOTICE: This is not a final judgment. Further actions are required to memorialize this ruling with a formal order" – this clause is clearly indicative that the final orders rendition had not occurred. *"A judgment is final for purposes of appeal if and only if it actually disposes of all claims and all parties."* "The rendition of judgment is a present act, either by spoken word or signed memorandum, which decides the issues upon which the ruling is made."… "The judge's intention to render judgment in the future cannot be a present rendition of judgment." *Reese v. Piperi*, 534 S.W.2d 329, 330 (Tex. 1976). *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001). "The words used by the Court must clearly indicate the intent to render judgment at the time the words are expressed." *S A Restaurant Corp. v. Leal*, 892 S.W.2d 855, 858 (Tex. 1995). "Judgment is rendered when the Court officially announces its decision in open court or by written memorandum filed with the clerk." *Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56, 59 (Tex. 1970). [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:899-900]. [Exhibits B,L].

*September 17, 2024* – Motion for Additional Time Per Side In All Currently Set and Future Hearings filed by Plaintiff due to his Hearing Disability (ADA Accommodation Requested (**Ignored by Court**) – No Express Hearing or Ruling Granted by the Court to the Plaintiff) – **Yet, Pattern of Judicial Bias/Prejudice/One-Sided Rulings against Plaintiff/Denial of ADA**

.

**accommodations continues:** Even post-trial, court ignores father's ADA requests while promptly processing and granting mother's motions as clearly demonstrated herein. [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:937-941].

*September 17, 2024* – Motion for Presiding Judge to Hear the Case and Objections filed by Plaintiff due to the court unilaterally assigning the case to a visiting judge [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:942-947].

*September 23, 2024* – Mother's Notice of Hearing for Motion of Entry of Final Order. [Exhibit Z].

September 24, 2024 – 468 Court signs Mother's Notice of Hearing for Motion of Entry of Final Order. [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:955-956].

### iii. Events leading up to and post-filing of Plaintiff's Disqualification Motion

*October 9, 2024* – Court gives hearing for Motion for Entry of Final Order. Court coordinator Kim Quillin ("Quillin") establishes by-submission process via email: In-Person Hearing for Motion for Entry of Final Order unilaterally converted by the Court to By-Submission [Exhibit K].

*October 09, 2024* 11:46am – Court emails the parties that Motion for Entry of Final Order has been converted to By-Submission instead of In-Person Hearing,[Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:1206-1207];[Exhibit K].

*October 10, 2024* – Motion to Modify, Correct or Reform the Judgment filed by Plaintiff [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:942-947].

*October 14, 2024* 10:12am – Opposing party files Amended Motion for Entry of Final Order. (*This is the amended proposed final order that was later abruptly and hurriedly wet-signed and backdated by Judge Wynne after filing of Plaintiff's Disqualification Motion without considering*

*any objections*): **This is the Final Order signed AS-IS without considering ANY objections by Plaintiff by Judge Wynne <u>as set in the By-Submission process by the Court</u>** [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:1080-1119].

*October 15, 2024* 3:01pm – Plaintiff files timely objections and motion for extension (never ruled upon): Motion for Extension of Time to File Objections to Respondent's Amended Order Filed After the Court-Ordered Deadline by Plaintiff. Judge Wynne never considered or heard or ruled this motion. [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:1167 -1210].

*October 15, 2024* – Plaintiff files Objections To Proposed Final Order. **Judge** Wynne never considered ANY <u>single one of these objections</u> [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:1211-1296].

*October 16, 2024* – **NO JUDICIAL ACTION OCCURS**—Court abandons its announced established timeline and By-Submission process for Motion for Entry of Final Order. [Cause no. 05-24-01246-CV:Collin-468-51752-2020:Clerk's Record].

*October 16, 2024* – As per the By-Submission process set for the Motion for Entry of the Final Order: "Upon sustaining or overruling the objections filed into the case on October 16, 2024, attorney for Respondent shall submit an order in conformity with the Court's ruling by 4:00 PM on October 16, 2024." **This crucial step was never performed by the court as Judge Wynne hurriedly and abruptly backdated and signed the Final Order and a *sua sponte* Recusal Order on October 17, 2024 *AFTER* a Disqualification Motion had been filed.** [Exhibit K].

*October 16, 2024* 2:08 p.m.**:** Opposing counsel for Mother emails the court: Vanita Aphan-Kirkland emails the court as per the By-Submission process set for the Motion for Entry of the Final Order:

"I am following up on the ruling from the court on the final order. I believe I am required to submit an order in conformity with the Court's ruling by 4pm today" [Exhibit K].

No Response was ever made by the court to opposing counsel's email *EVER* - PROVING NO RULING OCCURRED on October 16, 2024.

*October 17, 2024* 11:31am – Plaintiff files verified Rule 18 disqualification motion **(JURISDICTION CONSTITUTIONALLY DIVESTED):** Plaintiff files his Verified Motion to Disqualify Hon. Judge Lindsey Wynne with the Collin County District Clerk. [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:1334 -1393];[Exhibit N].

*October 17, 2024* 12:01pm – Plaintiff e-serves a certified copy of the Motion to Disqualify to all parties including the 468th District Court, the 468th District Court's Court Coordinator Ms. Kim Quillin, the First Administrative Judicial Region Court and Mother's counsel Vanita Aphan-Kirkland. [Exhibit O].

*October 17, 2024* 12:02pm – Plaintiff subsequently emails the court and opposing party a certified copy of his Motion to Disqualify Hon. Judge Lindsey Wynne as **an extra precautionary measure to prevent any judicial actions being undertaken by the court AFTER a Disqualification Motion had been filed**. [Exhibit P].

*October 17, 2024*, Afternoon (Approximately between 1:00pm-2pm): Judge Wynne hurriedly prints, wet-signs opposing counsel's proposed order bypassing her own set by-submission procedure for Motion for Entry of Final Order, **back-dating them to October 16 2024** – which proves for the backdated final order [Exhibits I,T] and sua sponte recusal orders [Exhibits I,U]:

    a. Post-disqualification timing;

    b. Abandonment of announced procedures for the Motion for Entry of the Final Order; and

    c. Violation of court's own deadlines for the Motion for Entry of the Final Order.

Plaintiff who was in the Collin County Courthouse building at the time, personally observed Kim Quillin, the 468 District's Court Coordinator walking over to the Collin County District

Clerk's Office in the afternoon of October 17, 2024 (Approximately around 1:30pm or so) with papers in her hand [Exhibit A - Affidavit] – Furthermore, Plaintiff has an audio recording of the Collin County District Clerk Rachael Whittaker ("Whittaker") confirming that Kim Quillin (the Court Coordinator of the 468 District Court walked in the afternoon of October 17, 2024 (Approximately between 1pm-2pm) and handed her the Sua Sponte Recusal Order and the Final Order, both wet-signed and backdated to October 16, 2024 (when no recusal motion was pending on October 16, 2024].

*October 17, 2024* 2:17pm – **District clerk creates first electronic docket entries for back-dated orders** *AFTER* **Rule 18a Disqualification Motion**: Collin County District Clerk Rachael Whittaker scans and creates Judge Wynne's Backdated and Wet-Signed Final Order in the SAPCR proceeding hurriedly/abruptly bypassing and truncating her back-and-forth By-Submission process for the Motion for Entry of the Final Order AFTER a Motion to Disqualify Judge Wynne had been filed earlier that morning [Exhibits B,AB].

*October 17, 2024* 2:45pm – Collin County District Clerk Rachael Whittaker scans and creates Judge Wynne's Sua Sponte Backdated and Wet-Signed Recusal Order dated October 16, 2024 when **NO Motion to Recuse Judge Wynne was pending before the court** [Exhibit B].

*October 17, 2024* 2:50pm – Collin County District Clerk Rachael Whittaker emails the parties the Judgment Letters AFTER the Motion to Disqualify Judge Wynne had been filed that morning [Exhibit AC].

*October 17, 2024* 2:59pm – Plaintiff emails Kim Quillin, the 468 District's Court Coordinator emails to get copies of the Back-Dated and Wet-Signed Final Order [Exhibit AD].

*October 17, 2024* 3:22pm – **October 17, 2024, 3:22 p.m.: Backdated Final orders and Recusal orders released by the 468 district's court coordinator**: Kim Quillin, the 468

District's Court Coordinator emails the Backdated and Wet-Signed Final Order and Sua Sponte Recusal Order **AFTER** the Motion to Disqualify Judge Wynne had been filed that morning [Exhibit I].

### iv. Rendition Post-Disqualification-Filing and Appellate Proceedings

*October 22, 2024* – Plaintiff files Notice of Appeal. [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:1418 -1423] [Exhibit M].

*October 22, 2024* – Plaintiff files Request for Findings of Fact and Conclusions of Law ("FFCL") and First Amended Request for FFCL. [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:1399 -1417]; [Exhibit M] **To date trial, the 468 Court has not issued any FFCL**.

*October 22, 2024* – Plaintiff files Motion to the First Administrative Judicial Region (Judge Wheless) For Investigation and Action on Recusal Order and Final Order Signed by Judge Lindsey Wynne preserving all issues for appeal. No action taken by Judge Wheless [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:1424 -1549].

*October 28, 2024* – Plaintiff files Motion to Vacate and Declare the Recusal Order and Final Order Illegal (preserving all issues for appeal), Motion for New Trial (preserving all issues for appeal), Statement of Inability to Pay Payment of Court Costs or an Appeal Bond and Motion to Stay the Judgment pending the outcome of the appeal. [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:1561 -1796].

*November 25, 2024* – Plaintiff files Notice of Past Due Findings of Fact and Conclusion of Law. **Court still refuses to comply - No FFCL ever filed by the court to-date.** [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:1930 -1933].*March 24, 2020* – Original Petition for Divorce filed [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:43-53].

## C. Context of Prior Adverse Rulings

26. Judge Wynne's post-trial back-dating did not occur in a vacuum. In the 4+ years preceding Plaintiff's verified disqualification motion, the court denied every single motion of substance filed by Plaintiff maintaining a **near-100% record of one-sided rulings against Plaintiff** — including first-motion-for-continuance-of-final trial in the current SAPCR, every discovery and ADA-accommodation request—while granting a vast majority of contested motions filed by the opposing party [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR: Clerk's Record]. During the June 26-28, 2024 jury trial, the court excluded Plaintiff's multiple key witnesses by arbitrarily granting Plano ISD's Motion to Quash one week prior to final trial [Cause no. 05-24-01246-CV:Collin-468-51752-2020:CR:37] and admitted unauthenticated text-message offered by Respondent (never exchanged during discovery) over repeated multiple objections [Cause no. 05-24-01246-CV:Cause no. 05-24-01246-CV:RR:5:152-201] – **In fact every single one of opposing party's exhibits were never exchanged during discovery prior to trial as per the rules** – this happened despite Plaintiff raising multiple and repeated objections before and during trial – Judge Wynne overruled all of them [Cause no. 05-24-01246-CV:Collin-468-51752-2020:Vol05,Vol06,Vol08). This unbroken pattern underscores that the October 17, 2024 back-dating was no clerical accident: it was the capstone of an already one-sided process, ensuring Plaintiff could not challenge the final order before it was enforced.

## D. Repeated ADA Violations

27. Plaintiff suffers from severe Tinnitus (a hearing disability impeding his ability to participate in high-speed, high-stress environments such as court settings in addition to impairment requiring additional time in preparation of pleadings due to trauma caused by child separation and divorce), which **further complicates his ability to navigate procedural**

**requirements without accommodation**. [Cause no. 05-24-01246-CV:Cause no. 05-24-01246-CV:RR:6-17-24:6; Cause no. 05-24-01246-CV:Cause no. 05-24-01246-CV:RR:4:4; Cause no. 05-24-01246-CV:Cause no. 05-24-01246-CV:RR:5:5-6] Despite multiple oral and written requests for accommodation, the 468 Court repeatedly interrupted Plaintiff and refused to provide any meaningful ADA accommodations (CART Services, extra time, slow speech protocols etc.). [Cause no. 05-24-01246-CV:Cause no. 05-24-01246-CV:RR:5:6] - this is a clear violation of due process and equal protection under the law. The prejudice and harm from these ADA violations is substantially magnified by the absence of FFCL and imposition of harsh supervised visitation without supporting evidence effectively terminating Plaintiff's fundamental constitutional parental rights. *The court denied all ADA requests without findings*, forcing Plaintiff to lip-read on multiple occasions in a crowded courtroom from quite a distance – Because Plaintiff could not understand or comprehend the proceedings adequately due to this plain and obvious hearing disability, therefore, as a Pro Se litigant with a high workload in a high stress environment, he could not effectively present his case – *To emphasize, Judge Wynne's repeated ADA violations created barriers for Disabled Plaintiff and prevented him from fully participating and presenting his case*. The U.S. Supreme Court has held that Title II of the ADA "seeks to ensure meaningful access to public services, including judicial services." *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004).

**E. Background and Child's Critical Condition and Trauma whilst separated from his Exemplary Father**

28. **Summary of Current SAPCR Chronology:** Plaintiff filed a Petition to Modify Parent Child Relationship on Dec 7, 2023. Following a substantially delayed Emergency Temporary Orders Hearing on February 9, 2024, Plano ISD's Motion to Quash on June 17, 2024 and Pre-

Trial Hearing on June 26, 2024 Plaintiff participated as a disabled pro se litigant in a jury trial from June 26-28, 2024, in the matter of *In the Matter of the Marriage of Ambreen Sahar Jafri v. Tariq Farooq and in the Interest of S.A.F., H.A.F., F.A.F., M.T.A.F.*, Cause No. 468-51752-2020, in the 468th District Court of Collin County, Texas, presided over by Judge Wynne.

29. The trial concerned custody, support, and decision-making authority regarding Plaintiff's minor son, M.T.A.F. (referred to herein as "the child"), who suffers from Tetrasomy 18p, a rare chromosomal disorder causing amongst other issues: intellectual disability, developmental delays, and significant mental health needs.

30. **Critical Child Welfare Facts:** On February 1, 2024, M.T.A.F. ("child" or "the child" or "M.T.A.F.") was confirmed suicidal during a visit to Plano Children's Hospital – During this visit while being secluded from his father as per protocol, the child stated that he wanted to cause bodily injury to the mother and **only thinks about want to die when he is with his mother**…**child also stated that he wants to run away from his mother**…**child also stated that he wants to cause bodily injury to his mother**…**child also stated that he feels safe going with his dad**". All of the aforementioned and other exhaustive evidence was dismissively ignored by Judge Wynne. *See screenshot below for more details.*

**REASON FOR REFERRAL AND CHIEF COMPLAINT**

███████████████ presented to the Emergency Department at Children's Health due to safety concerns. Patient present to the ED with concern of SI, per dad.

**Patient Lives with:** Dad (every 1st, 3rd, 5th weekend) and with mom during the week  **Legal Guardian:** yes

**Precipitating Events/ History of Present Illness:**

Patient is 13 y.o male with PMH of depression, anxiety, aggressive behavior. Per dad patient has a developmental delay which causes him to be aggressive at school sometimes. Patient is not receiving any outpatient mental health support, per dad mom refuses to give consent for patient to receive needed mental health treatment for depression and anxiety.

Patient denied academic and social stressors at school. He reported that he makes good grades at school, and that he has friends at school. Patient reported that he wants to runaway from his mom when he's at her home. He reported that he wants to punch his mom, because she's not nice to him.

Patient denied any previous suicide attempt, and he denied SI during the interview with therapist. He reported that he only thinks about wanting to die when he's with his mom, and he's fine with his dad.
Patient denied SI/HI/NSSI/AVH. He stated that he feels safe going with his dad.

Dad reported that patient saw a Psychiatrist last year Intensive behavioral therapy was recommended, however mom denied patient access to treatment by refusing to give consent. He reported that patient struggles with depression, and anxiety in addition to this developmental delay and other medical issues. Dad reported that mom creates a barrier to access of needed mental health treatment for patient. He reported that patient is happy and safe with him, and he stated the he is confident the he can keep patient safe at his home.

**Anxious Symptoms/Stress:** Anxious symptoms - difficulty coping with stress/anxiety

**Mood Symptoms:** Depressive symptoms - depressed mood

**Sleep:** No concerns

**Appetite:** No concerns

**Past Mental Health History (specify current providers):** Yes

Printed on 2/6/24  4:00 PM

**"Screenshot from [Cause no. 05-24-01246-CV:Collin-468-51752-2020-RR-Vol00Exhibits Part 2:252] clearly demonstrates M.T.A.F. to be suicidal and having suicidal ideations whilst in the mother's care, whilst feeling HAPPY and SAFE to be with Dad –** *Mom never followed up with any mental health care and blocked it to avoid generating adverse evidence against her* **– Yet Judge Wynne assigned exclusive medical/everything decision making rights to the Mother in complete absence of supporting evidence [Exhibit H]"**

*Despite Plaintiff's repeated requests, the mother never followed up with recommended mental health care to avoid generating adverse evidence against her – subsequently mother LIED about it in court (constituting aggravated perjury), all of which was dismissively ignored and brushed away by the 468 court.*

31. The child has documented mental health issues including separation anxiety disorder and a documented history of mental health issues and violence, specifically when away from Plaintiff, demonstrating the critical importance of maintaining the father-child relationship for the child's psychological and physical safety – Judge Wynne has known about this factum through exhaustive document, audio / visual evidence admitted in her court.

32. **Video/Audio Evidence of Child's Distress:** The trial record contains extensive admitted video and audio evidence showing over a multi-year period: (a) **the child vehemently, violently and forcefully refusing to transition to his mother;** (b) **the child becoming irate, violent, spitting and hitting when forced to transition to his mother;** (c) **the child threatening to run away from his mother's apartment;** (d) **the child being happy with his father** (e) **the child engaged in healthy activities with his Dad** including sports, gym, go-karting, and Six Flags; and (f) **the child repeatedly expressing strong preference to live with his father.** (g) **the father's exemplary parenting history from every dimension: Academic, Heath, Personal Development etc. of the child** (h) **nothing of concern about the father from a parenting standpoint**: no criminal history, no CPS history, no temporary restraining orders, nothing of concern to warrant such a harsh measure as supervised visitation ordered almost four months after final trial – *why did Judge Wynne wait for almost four months to impose supervised visitation when such a measure is generally imposed to curtail immediate harm.*

33. **Mother's Abuse and Neglect:** Trial evidence demonstrated the opposing party's pattern of medical neglect including: (a) failure to provide timely MMR and other vaccinations to a medically vulnerable child born with a rare chromosomal disorder "Tetrasomy 18p"; (b) Multiple CPS complaints for child abuse and medical neglect against the mother; (c) failure to schedule and consent to psychiatric care despite including but not limited to the Feb 1, 2024

recommendations by the Mental Health Assessment Team ("MHAT") Team at Plano Children's Medical Center and a May 17, 2024 referral by M.T.A.F.'s Primary Care Physician; and (d) **deliberately ignoring mental health outpatient followup recommendations to avoid adverse evidence and then openly LYING about it court multiple times ("Aggravated Perjury on material facts" committed by the mother while under oath in open court – yet Judge Wynne blanketly gave exclusive medical/educational decision making rights to the mother and effectively terminated all parental rights of exemplary father).**

34. As a result of the court's orders imposing supervised visitation at $687.50 per session in addition to intake [Exhibit F], which Plaintiff cannot afford as an indigent parent receiving SNAP benefits (evidence of which was duely admitted in court during the Final Trial held on June 26-28 2024), Plaintiff has had no contact with his special-needs child since October 12, 2024—over 382 days—effectively resulting in **termination of his fundamental parental rights** and causing documented harm to the child's mental health. Plaintiff suffered the following harm / injuries including but not limited to: (a) lost earnings and lost business time caused by re-briefing/re-filing and added preparation work attributable to submission-only settings and denial of ADA pacing/processing protocols; (b) out-of-pocket litigation expenses actually incurred (copying, printing, postage, certified mail, notary etc.), and other taxable costs of suit; (c) non-economic constitutional injury to familial association (loss of the parent-child relationship) recoverable under 42 U.S.C. § 1983 from non-immune individuals; (d) nominal damages to vindicate federal rights even where pecuniary amounts are limited or unavailable.

## F. Multi-Year Pattern of Systematic Disability Discrimination

35. Plaintiff suffers from documented severe Tinnitus for more than seven years [Exhibit AH], a medical condition that significantly impairs concentration and cognitive function,

particularly during high-stress situations such as court settings causing including but not limited to: Loud Sounds, Tones, Ringing, Hearing Imbalance between the ears and/or total loss of hearing etc. This condition constitutes a disability within the meaning of including but not limited to: 42 U.S.C. § 12102(1).

36. **Years of Known Disability:** Certified Court transcripts prove that Judge Lynne Wynne has known about Plaintiff's hearing disability for many years prior to the current proceedings through argument/testimony and written pleadings in multiple cases, yet systematically refused to discuss or provide any reasonable/meaningful ADA accommodations despite oral and written requests spanning multiple years.

37. **Medical Documentation:** In addition to oral testimony, Plaintiff provided medical documentation from ENT specialist Dr. Kevin Lunde supporting his accommodation requests and establishing the medical necessity of Communication Access Realtime Translation ("CART") captioning, and/or additional time for processing auditory information.

38. **Systematic Denial Pattern:** Prior to and during trial proceedings, Plaintiff submitted multiple written requests for reasonable accommodations, including: (a) Motion for Additional Time filed April 29, 2024; (b) Pre-trial Motion for Additional Time **denied** June 24, 2024; (c) oral requests during pre-trial hearings; and (d) requests during final trial proceedings. All requests were **summarily and blanketly denied** without individualized assessment, meaningful consideration, or findings. The 468 court denied all ADA requests without findings, forcing Plaintiff to lip-read on multiple occasions in a crowded courtroom from quite a distance (In a lot of occasions, even lip-reading was not available e.g. when opposing counsel was seated parallel to the Plaintiff) – **Because Plaintiff could not understand or comprehend the proceedings adequately due to this plain and obvious hearing disability, therefore, as a disabled Pro Se**

litigant with a high workload in a high stress environment, he could not effectively present his case – To emphasize, Judge Wynne's repeated ADA violations created barriers for Disabled Plaintiff and prevented him from fully participating and presenting his case – This warrants New Trial proceedings – this pattern of ADA violations was continued by the 416 Court after Judge Wynne sua sponte recused herself via a backdated order October 16, 2024.

39. **Collin County's ADA Policy Deficiency:** Collin County customs and practices denied effective communication to hearing impaired litigants even when CART was nominally present, including: (a) converting significant matters to submission only after ADA notice; (b) proceeding without on record slow speech, one speaker at a time, periodic comprehension checks, and short processing time breaks necessary to make CART effective; and (c) failing to issue § 35.164 findings by the head of the entity when curtailing requested measures. These customs persisted across multiple proceedings despite Plaintiff's date stamped ADA motions, oral and written requests and coordinator communications.

40. Remote/Zoom. The 416th and 468th repeatedly lacked any policy or facility to provide remote CART on Zoom and failed to issue § 35.164 written decisions with effective alternatives; hearings were moved to in person or submission only instead.

41. Judicially Adopted Practice. The Oct. 9, 2025 order formalizes that administration practice: dispositive submission only notwithstanding ADA notice, ADA relief limited to CART "for in person hearings," and no § 35.164 written determination. This practice was the moving force behind Plaintiff's exclusion, unpreserved objections, and pecuniary harms.

42. **Observable Impact:** Because of Tinnitus-related hearing loss, Plaintiff often speaks louder than he realizes. Neither Judge Wynne (468 court) nor visiting Judge Kim Ann Cooks

("Judge Cooks" or "Judge Kim Cooks") representing the 416 court made any instructions to the parties, witnesses or the jury regarding this disability, no accommodations for processing time, and repeatedly interrupted Plaintiff when he requested clarification due to hearing difficulties in a snappy adversarial hateful tone displaying overt hostility towards the plaintiff despite written and oral requests satisfying including but not limited to: *Liteky v. United States*, 510 U.S. 540, 541 (Mar 7, 1994).

### G. Coordinated Fourth Amendment Violations with Judicial Direction

43. **Judge's Direct Order for Search: Pro Se litigants have the same rights as Attorneys in a courtroom**. On June 24, 2024, during pre-trial proceedings held just two days prior to Final Trial despite Plaintiff's objections, Plaintiff was seated at counsel table using his personal iPhone solely to consult electronic legal notes, which he had obtained permission from the 468 Court to use.

44. Judge Wynne suddenly shouted at Plaintiff in a loud intimidating tone, accusing him of "turning buttons" on his phone, and specifically ordered: "**I would like my bailiff to look at the phone**," directing Defendant Edwin McGill to search Plaintiff's cellular device [Exhibit E].

45. **Judicial Coercion:** Subsequently, Judge Wynne **suddenly placed Plaintiff under oath during a non-evidentiary pre-trial hearing** implicitly threatening him with contempt of court for non-compliance with her search order, underline(creating a coercive atmosphere that negated any possibility of voluntary consent).

46. **Repeated Interrogation:** Even after Plaintiff explained he was simply referencing legal notes and not recording, Judge Wynne repeatedly questioned him more than three times about whether he was recording the court proceeding, demonstrating predetermined suspicion without basis.

47. **Armed Intimidation:** Defendant Bailiff McGill, a uniformed, armed officer, approached Plaintiff in a threatening manner, stood directly over and very close to him, and placed his hand on his service weapon while demanding from the Plaintiff in an intimidating manner: **"Unlock with Face ID"** without constitutional justification, warrant, or voluntary consent.

48. **Coerced Compliance:** Under duress and extreme fear of arrest or physical harm, Plaintiff complied and unlocked his personal iPhone without a warrant. McGill then conducted a comprehensive search of Plaintiff's Photos and Videos folders for several minutes, finding no recordings and confirming the absence of any legitimate law enforcement purpose.

49. **Second Illegal Search:** After a brief pause, on June 24, 2024, McGill conducted a second warrantless search of Plaintiff's cellular phone of his voice memos to check for recordings under similar intimidating circumstances, again without constitutional justification, warrant, or voluntary consent.

50. **Discriminatory Enforcement:** During the same proceedings as well as other proceedings, opposing counsels were permitted to use both their phones and laptops throughout the proceeding with no questioning by Judge Wynne or the Bailiff, demonstrating the targeted and discriminatory nature of the search directed against Plaintiff.

51. **Post-Search Cognitive Impairment:** After the intimidation by the bailiff and the court illegal phone seizure and search on June 24, 2024 (Pre-Trial Hearing), Plaintiff's composure deteriorated due to the constitutional violation and the harrowing experience of near arrest and an illegal seizure and search of his personal cellular device without constitutional justification, warrant, or voluntary consent.. He began shaking, experienced shortness of breath, found it extremely difficult to concentrate, and experienced exacerbation of tinnitus symptoms, materially impairing his ability to participate in proceedings for the remainder of the hearing. Judge Wynne

whilst observing everything did nothing to alleviate the situation and continued to talk loudly and rudely on multiple occasions to Plaintiff.

52. **Time Penalty and Prejudice:** The forced searches consumed Plaintiff's allocated hearing time while the court clock continued to run. Because Judge Wynne had denied Plaintiff's earlier requests for additional time to accommodate his tinnitus, this time loss materially reduced his ability to argue discovery and other pre-trial issues.

53. These searches violated clearly established Fourth Amendment rights including but not limited to: under *Riley v. California*, 573 U.S. 373 (2014), and were conducted through judicial coercion that negated any possibility of voluntary consent including but not limited to under *Bumper v. North Carolina*, 391 U.S. 543 (1968).

**H. Systematic Judicial Bias and Emotional Involvement**

54. **Pattern of 100% Adverse Rulings:** Over 4+ years of litigation involving multiple cases, Judge Wynne denied every single motion of substance filed by Plaintiff while granting the vast majority of contested motions filed by opposing parties, creating an objective pattern of bias openly "displaying deep-seated favoritism or antagonism as would make fair judgment impossible" including but not limited to under: *Liteky v. United States*, 510 U.S. 540, 541 (Mar 7, 1994). Judge Thompson since October 2024 taking over after Judge Wynne sua sponte recused herself has kept up this near-100% denial rate against plaintiff in clear violation of the law clearly **demonstrating institutional bias / prejudice against plaintiff**.

55. **Systematic Emotional Involvement:** Throughout the three-day jury trial (June 26-28, 2024), Judge Wynne exhibited overt emotional favoritism toward opposing party (Mother) Ambreen Sahar Jafri and her lawyers in front of the jury (despite observing open aggravated perjury being committed by the mother about blocking of critical mental health care for the

special needs child M.T.A.F. in order to avoid generating adverse evidence against her) [Exhibit A], including but not limited to:

a. **Crying and Physical Comfort:** Judge Wynne repeatedly cried and dabbed her eyes over non-consequential testimony while Plaintiff's daughter testified on June 27, 2024, and when Ambreen Jafri began crying during cross-examination displaying bias and prejudicing the jury as a person of authority wearing a black robe;

b. **Providing Tissues and Comfort:** Judge Wynne handed a box of tissues to Ambreen Jafri and spoke in soothing tones when she became emotional;

c. **Judge's Own Emotional Display:** Judge Wynne's own eyes repeatedly watered visibly in front of the jury during Plaintiff's cross-examination of opposing party in sympathy for the mother;

d. **Dismissive Treatment of Plaintiff:** In sharp contrast, when Plaintiff became overwhelmed and cried audibly, Judge Wynne made angry, dismissive and rude facial expressions in stark contrast to her sympathetic treatment of opposing witnesses.

56. **Hostile Judicial Conduct:** When Plaintiff cross-examined opposing party and attempted to impeach her with prior statements, Judge Wynne: (a) scowled and made angry, intimidating faces; (b) raised her voice; (c) improperly sustained a series of objections against Plaintiff while overruling his objections; and (d) demonstrated visible hostility for Plaintiff exercising legitimate cross-examination rights.

57. **Denial of Recess and Forced Continuation:** On June 27, 2024, after Plaintiff became emotionally overwhelmed and requested **just a five-minute recess to regain composure**, Judge Wynne forced him to continue despite his obvious emotional distress exacerbating his disability

and earlier accommodation requests, upon opposing counsel's suggestion to take the break from Plaintiff's own time.

58. **Personal Assistance to Opposing Counsel whilst running Plaintiff's Clock:** Judge Wynne personally arranged for and handed her own copies of exhibits to opposing counsel when they presented incomplete exhibits, while **simultaneously running Plaintiff's clock** and improperly / astonishingly declaring him a "hostile witness" merely for raising valid objections about incomplete exhibits [Exhibit AE].

59. **Systematic Procedural Bias:** Throughout proceedings, Judge Wynne: (a) allowed opposing counsels unlimited use of phones and laptops while scrutinizing and Plaintiff's and conducting an illegal seizure and search without warrant; (b) permitted opposing witnesses to take lengthy pauses without time penalties while penalizing Plaintiff even when it was opposing counsel's turn for cross-examination (*taking Plaintiff's time and giving it to opposing counsel*); (c) excluded Plaintiff's key evidence by improperly sustaining objections while admitting all of opposing party's unauthenticated exhibits never exchanged in discovery; (d) arbitrarily granted Plano ISD's Motion to Quash one week before trial with no support from the law thereby blocking Plaintiff's access to critical witnesses; (e) holding pre-trial motions just 2 days before final trial and denying Plaintiff's first motion for continuance and all other motions while giving blanket relief to the opposing party in open, blatant and clear violation of the law.

**I. Bailiff Misconduct and Jury Prejudice**

60. **Systematic Intimidation:** Throughout pre-trial and trial proceedings, Defendant McGill engaged in systematic misconduct designed to intimidate Plaintiff and prejudice the jury, including literally screaming at Plaintiff (as a person of authority) at the top of his voice in front of the jury on multiple occasions, thereby implying that Plaintiff had committed wrongdoing and

needed legitimate reprimand when all he was doing was asking about mundane issues like displaying the court clock or stopping his clock when opposing counsel was taking up plaintiff's time.

61. **Public Humiliation:** McGill yelled "STOP" and "QUIT" when Plaintiff attempted to object to due process violations, such as his clock running when opposing counsel was speaking, creating the impression before the jury that Plaintiff was unruly or problematic.

62. **Armed Officer Prejudice:** During the final trial (June 26-28, 2024), McGill screamed at Plaintiff in front of the jury, including "Quit instructing me how to run the Court," creating prejudice through the authority of an armed uniformed officer treating Plaintiff as a problem.

63. **Cumulative Prejudicial Impact:** These repeated incidents from an armed officer in uniform implied to jurors that both the Court and law enforcement viewed Plaintiff negatively, fundamentally compromising the fairness of the proceedings and violating Plaintiff's right to an impartial jury.

## J. Coordinated Record Manipulation and Void Orders

64. **Established By-Submission Process:** On October 9, 2024, Court Coordinator Kim Quillin established a specific by-submission process for the Motion for Entry of Final Order, creating detailed procedural requirements and deadlines that were later abruptly, deliberately and intentionally abandoned post filing of a Rule 18a Motion to Disqualify Judge Lindsey Wynne [Exhibit K].

65. **October 16, 2024 - No Action Taken:** Despite the established deadline, no judicial action occurred on October 16, 2024. Opposing counsel's desperate email at 2:08 p.m. seeking the court's ruling confirms no action was taken, and the court never responded [Exhibit K].

66. **Rule 18a Disqualification Filed:** On October 17, 2024, at 11:31 a.m., Plaintiff electronically filed a verified Motion to Disqualify Judge Wynne pursuant to Texas Rule of Civil Procedure 18a, which motion was properly served on all parties including the court [Exhibit N].

67. **Immediate E-Service and Email Notification:** At 12:01 p.m. and 12:02 p.m. on October 17, 2024, Plaintiff e-served and emailed certified copies of the disqualification motion to all parties, including the 468th District Court, Court Coordinator Kim Quillin, and opposing counsel, **providing clear notice of the loss of judicial authority** [Exhibits O,P].

68. **Coordinated Backdating Scheme:** Approximately between 1:00-2:00 p.m. on October 17, 2024, after receiving notice of the disqualification motion, Judge Wynne coordinated with court personnel to: (a) manually print and wet-sign both a Final Decree (proposed order filed by opposing counsel) bypassing her own set by-submission procedures and not even considering any objections filed by Plaintiff and a *sua sponte* Recusal Order; (b) deliberately backdate and wet-sign both documents to October 16, 2024 instead of the usual electronic signatures and corresponding electronic docket entries; (c) abruptly abandon the previously established by-submission procedures for the Motion for Entry of Final Order; and (d) bypass all procedural requirements for the Motion for Entry of Final Order including objections filed by Plaintiff.

69. **Quillin's Active Participation:** Court Coordinator Kim Quillin personally walked the backdated orders to District Clerk Rachael Whitaker in the afternoon of October 17, 2024, after the disqualification motion had been filed, served and emailed, demonstrating knowing participation in the constitutional violation **with full knowledge of the Rule 18a violation and false dating**.

70. **Whitaker's Processing of Void Orders:** District Clerk Rachael Whitaker processed and created electronic docket entries for the backdated orders at 2:17 p.m. (Backdated Manually Wet-

Signed Final Order) and 2:45 p.m. (Backdated Manually Wet-Signed Recusal Order) on October 17, 2024.

71. **Evidence of Coordination:** The timing and coordination of these actions, including emails at 2:50 p.m. and 3:22 p.m. releasing the backdated orders, demonstrates a coordinated conspiracy to circumvent constitutional limitations on judicial authority.

72. **Comparison to Normal Practice:** Throughout the litigation, Judge Wynne had consistently used electronic signatures with DocuSign envelope IDs, electronic timestamps, and proper procedural compliance [Exhibits Q,R]. The sudden switch to manual wet-signing and backdating represents a deliberate departure from normal practice to conceal constitutional violations.

73. **Absence of Rendition:** No oral rendition occurred in open court on October 16, 2024, no written memorandum was filed with the clerk, and no electronic docket entry exists for disposal of the Motion for Entry of Final Order, confirming that rendition occurred only in the afternoon of October 17 2024 *after* the disqualification motion was filed on October 17 2024 11:31 a.m.

### K. Fabricated Judicial Findings and Evidence Manipulation

74. **Judicial Findings based on Utter Fabrications:** The jury did not make a finding of assigning sole custody to the mother at the conclusion of the June 26-28, 2024 Final Trial. Subsequently, on August 20, 2024, Judge Lindsey Marie Byers Wynne issued a non-final memorandum ruling that: (a) conferred Mother exclusive authority over education, medical (including psychiatric), legal, and custodial decisions **despite multiple counts of aggravated perjury by the mother**—without any evidence admitted at trial to support such wholesale divestiture, despite decisions that the mother had repeatedly abused to block needed mental-health care and perjured herself about on multiple occasions on this issue during final

trial, made disparaging remarks about the father in front of the child and driven M.T.A.F. without a seatbelt in an uninspected unregistered vehicle for several months; (b) **inexplicably waited nearly four months after the June 26–28, 2024 jury trial to impose supervised-visitation on an exemplary father**, thereby effectively **terminating Father's fundamental parental rights** without any immediate risk of harm or narrow tailoring including but not limited to under: *Troxel v. Granville*, 530 U.S. 57 (Jan, 2000); *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976); and *Christine Lenore Stary v. Brady Neal Ethridge*, No. 23-0067, ___ S.W.3d ___ (Tex. May 2, 2025) (op. by Bland, J.); (c) fabricated findings of Father's $100,000-plus income and book-sales ventures—none of which were proven or admitted at trial (evidence of father's SNAP benefits and loss of employment was duely admitted during final trial); (d) ignored contrary testimony and close-in-time school-psychologist and Medical/Educational/ER records showing **the child's severe depression while being separated from his father and violent history and the mother's constant abuse of her exclusive medical decision making rights to block mental health access for M.T.A.F. in order to avoid generating adverse evidence against her**; and (e) wholly disregarded Mother's multiple counts of aggravated perjury, obstruction of the child's outpatient mental-health treatment, and unsafe conduct including but not limited to driving M.T.A.F. in an unregistered uninspected vehicle for several months without a seatbelt—facts the jury heard and the record proved. These rulings, amounting to a de facto termination of Father's liberty interest in the care, custody, and control of his profoundly disabled son without any compelling state interest or heightened procedural safeguards, are void ab initio and are reflective of Judge Wynne's retaliatory judicial misconduct against the Plaintiff for protesting outside the Collin County Courthouse for over 40 days [Exhibit J]. To iterate and emphasize, the court imputed $100,000 in annual income to Plaintiff (a complete, utter and blatant fabrication) and

falsely stated that Father provided evidence that he is capable of being employed, has the ability to make well over $100,000 per year and is capable of writing books and has business ventures when the record contains zero evidence supporting this finding (In reality father's indigency, heavy debt and SNAP benefits was admitted during Final Trial) [Exhibits S,V].

75. **Contradicting Evidence:** The trial record contains clear evidence of Plaintiff's indigency including: (a) current unemployment status [Exhibits V,X]; (b) receipt of SNAP (food stamp) benefits [Exhibit V]; (c) over 600 job applications submitted [Exhibit X]; (d) documented financial inability to afford legal representation [Exhibits G,V,W,X]; and (e) no testimony or evidence of any $100,000 earning capacity or any business ventures (Proven from Court Transcripts).

76. **Statutory Violation:** Texas Family Code and relevant case law requires specific findings of intentional underemployment before imputing income, including consideration of multiple factors. No such findings were made, no evidence of intentional underemployment was presented, and no regular or expert testimony supported the imputed amount.

77. **Perjury Ignored or Brushed Away:** Plaintiff identified multiple instances where opposing party's testimony directly contradicted her prior sworn statements on material matters, constituting aggravated perjury. Despite clear evidence, Judge Wynne took no corrective action and proceeded to grant blanket relief to the perjuring party effectively terminating Plaintiff's parental rights.

78. **Evidence Fabrication:** The court's findings mischaracterized trial evidence proving Plaintiff to be an exemplary parent, ignored favorable video/audio exhibits showing the child's preference for Plaintiff, his mental health issues while being separated from his exemplary father,

and dismissed including but not limited to: documented evidence of opposing party's medical neglect and failure to follow mental health recommendations.

79. **Supervised Visitation Without Basis:** The court imposed supervised visitation at approximately $687.50 per session almost four months after trial [Exhibits F, T] when clear evidence of his indigency had been admitted before and at final trial, without clear and convincing evidence of harm, effectively creating a financial barrier that terminated Plaintiff's parental relationship.

**L. Conspiracy and Coordinated Constitutional Violations**

80. **Multi-Defendant Coordination:** The constitutional violations alleged herein resulted from coordinated actions between Judge Wynne, 468 Bailiff Edwin McGill, and court personnel Kim Quillin and County Clerk Rachael Whittaker, demonstrating an agreement to deprive Plaintiff of constitutional rights under color of law; and between 468 Court Coordinator Kim Quillin and 416 Court Coordinator Steven Janway for the August 7, 2025 TRAP 34.6 hearing.

81. **Temporal Coordination:** The timing of the backdating scheme, involving multiple court personnel acting in concert after the disqualification motion was filed, establishes overt acts in furtherance of the conspiracy.

82. **Shared Animus:** Defendants' coordinated actions were motivated by animus against Plaintiff's status as a pro se litigant and as retaliation against his documented protests against the Collin County Family Law System and Judge Lindsey Wynne [Exhibit J], his disability, and his protected speech activities criticizing the Texas family law court system.

83. **Class-Based Discrimination:** The systematic discrimination against Plaintiff as a disabled pro se litigant, including denial of accommodations and unequal treatment compared to

represented parties, demonstrates class-based animus required for including but not limited to: § 1985 liability.

## M. First Amendment Retaliation

84. During 2023 and 2024, Plaintiff engaged in peaceful protest activities outside the Collin County Courthouse for over 40 days [Exhibit J], exercising his First Amendment rights to petition government for redress of grievances and engage in peaceful and lawful expressive conduct on public property.

85. These protests concerned judicial misconduct, systemic issues within the Texas family court system, and denial of due process rights to pro se litigants, constituting speech on matters of public concern entitled to the highest level of First Amendment protection.

86. Plaintiff also filed multiple motions challenging court procedures, submitted whistleblower complaints regarding judicial misconduct, and engaged in other protected advocacy activities criticizing the judicial system.

87. The temporal proximity between Plaintiff's protected speech activities and the systematic adverse treatment, including the backdating scheme, evidence fabrication, and constitutional violations, demonstrates retaliatory animus sufficient to establish First Amendment violations.

## N. Institutional Policies and Municipal Liability

88. On October 29, 2024 Plaintiff hand-delivered a notarized affidavit and criminal complaint alleging official oppression amongst other counts by Judge Wynne to the Collin County Sheriff's Office. A uniformed deputy refused to accept or log the complaint, stating "we don't take those here." Earlier, on October 17 2024, Collin County Criminal Investigator Michael Owens of the Collin County District Attorney's Office directed Plaintiff to Collin County Investigator Ms. Christina Skipper, Chief Felony Prosecutor - SPU, who likewise stated on the phone to Plaintiff

that the DA could not directly accept a complaint and directed Plaintiff to "local law enforcement". Plaintiff then presented the same complaint to the McKinney, Texas Police Department October 29, 2024 who refused to take the complaint and thereafter, by e-mail, to Ms. Christina Skipper on October 29, 2024 in the Collin County Texas District Attorney's Office who did not respond or take any action. These blanket refusals violate the Texas Code of Criminal Procedure—which requires peace officers to accept and forward complaints—and demonstrate a County custom of ignoring sworn constitutional grievances, thereby chilling Plaintiff's First-Amendment right to petition and underscoring the Sheriff's deliberate indifference.

89. During the October 29 2024 encounter at the Collin County Sheriffs Office, the deputy stated on camera that the Sheriff's Office "cannot investigate its own judge" and that Plaintiff must instead contact the Texas Rangers or the Attorney General. This admission confirms the existence of a County policy or practice of refusing to accept sworn criminal complaints against county judges, in direct conflict with the Texas Code of Criminal Procedure violating including but not limited to: Tex. Code Crim. Proc. arts. 2.13(a) & 15.04 and chilling Plaintiff's petition rights. Such refusal—based on institutional self-interest rather than statutory duty—further chilled Plaintiff's First-Amendment right to petition and evidences the Collin County Sheriff's deliberate indifference to constitutional violations.

90. The constitutional violations alleged herein result from official policies, customs, and practices of Defendants Collin County, Sheriff Skinner, and State of Texas, creating municipal liability including but not limited to: under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).

91. **Collin County's *Monell* Liability:** Collin County's Monell Liability. Plaintiff brings this claim under 42 U.S.C. § 1983 against Collin County, Texas and Sheriff Jim Skinner (official capacity) for municipal liability. On information and belief, Collin County has no operationally effective procedure, protocol, or training program to provide effective ADA accommodations including but not limited to: slow speech protocols, periodic check-ins, additional preparation/hearing time or other reasonable modifications to make CART effective—for hearing-disabled litigants. Collin County customs and practices denied effective communication to hearing impaired litigants even when CART was nominally present, including: (a) converting significant matters to submission only after ADA notice; (b) proceeding without on record slow speech, one speaker at a time, periodic comprehension checks, and short processing time breaks necessary to make CART effective; and (c) failing to issue § 35.164 findings by the head of the entity when curtailing requested measures. These customs persisted across multiple proceedings despite Plaintiff's date stamped ADA motions and coordinator communications. No CART for Remote/Zoom hearings: The 416th and 468th courts repeatedly lacked any policy or facility to provide remote CART and failed to issue § 35.164 written decisions with effective alternatives; hearings were moved to in person or submission only instead. Judicially Adopted Practice: The Oct. 9, 2025 order formalizes that administration practice: dispositive submission only notwithstanding ADA notice, ADA relief limited to CART "for in person hearings," and no § 35.164 written determination. This practice was the moving force behind Plaintiff's exclusion, unpreserved objections, and pecuniary harms. These funding and implementation gaps were evidenced when, despite multiple requests between February 2024 and October 2025, Plaintiff received the offer of only standard courtroom headphones (which he declined as "Headphones confuse me") and when no follow-up or documentation occurred.  On June 24 2024, Deputy

McGill coerced a warrantless seizure and search of Plaintiff's cell phone in open court [Exhibit E]. On October 29 2024, another deputy refused to accept Plaintiff's sworn criminal complaint against Judge Wynne at the Collin County Sheriffs Office Building [Exhibits A,Y]. On information and belief, these incidents are not isolated. These customs, set and tolerated by the County's final policymakers, were the moving force behind Plaintiff's injuries. Plaintiff will request via discovery and/or subpoena including but not limited to: Collin County's ADA-transition plans, budget worksheets, vendor contracts, and training logs in discovery to confirm this custom of deliberate indifference.

92. **Sheriff's Office policies as evidence of County *Monell* liability:** Plaintiff brings this claim under 42 U.S.C. § 1983 against Sheriff Jim Skinner in his official capacity (as a policymaker for the Collin County Sheriff's Office). On information and belief, the Sheriff's Office has no written directive, training program, or internal-affairs protocol to prohibit unconstitutional digital searches or to ensure proper handling of sworn complaints against county officials. These customs were evidenced when, on June 24 2024, Deputy McGill conducted a warrantless cell-phone search in open court [Exhibit E] of a hearing disabled pro se litigant, and when, on October 29 2024, another deputy refused to accept Plaintiff's notarized criminal complaint [Exhibit Y]. No discipline was imposed, no corrective training was offered, and no policy was adopted. Plaintiff will request via discovery and/or subpoena the Sheriff's training curricula, policy manuals, and internal-affairs records in discovery to confirm this custom of deliberate indifference.

93. **Additional ADA and USB Loss by 468 Court Reporter Carolyn England Facts:** Carolyn England — Reporter-specific acts. On June 17, 2024, June 24, 2024, and June 26–28, 2024, Carolyn England acted as the official court reporter for the 468th District Court and

prepared the verbatim record for the proceedings. After Plaintiff filed the Rule 18a motion on October 17, 2024 and before the purportedly "wet-signed" and backdated final orders were released, England engaged in the following acts [Exhibit AJ]: On June 26, 2024, during the final jury trial in Cause No. 468-51752-2020, Plaintiff tendered an external USB flash drive containing twelve (12) audiovisual exhibits (the "Original USB") to 468 Official Court Reporter Carolyn England in open court. Ms. England checked and verified the exhibits on the record and twice confirmed that she had everything she needed. From that time until February 1, 2025 the Original USB remained in the exclusive possession or control of Ms. England and/or the Collin County District Clerk. Additionally, Ms. England conducted and performed subsequent transmission of court records with incorrect dates and replaced critical audiovisual evidence outside the chain of custody and altered/incorrect reporter's materials relevant to the SAPCR proceedings thereby effectively depriving Plaintiff of effective appellate review as follows: On February 1, 2025 Ms. England emailed Plaintiff and the parties that "the USB in my possession does not have those exhibit numbers" and requested Plaintiff to re-send properly numbered copies [Exhibit AJ] effectively resulting in a loss of evidence and establishing a gap of chain of custody in violation of the rules and the law. There is no contemporaneous chain-of-custody log, device property-tag, file hash, transfer receipt, or other verifiable custody record showing continuous possession or lawful transfer of the Original USB during the period June 26, 2024 through February 1, 2025 [Exhibit AJ]. Plaintiff incorporates by reference Exhibit A (Plaintiff's sworn affidavit), the February 1, 2025 email from Ms. England [Exhibit AJ], and the reporter's formal certification in the record [Exhibit AJ], each of which is attached to this Complaint. These facts are plead on personal knowledge where stated and on information and belief where the underlying County records (custody logs, backups, property tags, and personnel

communications) are in Defendants' exclusive control. In addition to the above facts detailing above legal violations, on July 17, 2025 (Ms. Kim Quillin - 468th coordinator) and July 30, 2025 (Mr. Steven Janway - 416th coordinator), staff issued matching instructions that parties would "just be observing" and "the Court will be the only one asking the questions," acknowledging CART but omitting Plaintiff's requested slow speech, one speaker at a time, periodic comprehension checks, and short processing time protocols in clear violation of ADA laws in addition to establishing clear evidence of ex parte communication between the 416th and 468th district courts for a predetermined outcome for the Texas Rules of Appellate Procedure ("T.R.A.P." or "TRAP") 34.6 hearing held on August 7, 2025, which was heard by visiting Judge Kim Cooks with no advance notice provided by the 416th court to the parties that a visiting judge would preside; Plaintiff objected to the hearing at the very beginning of the hearing on August 7, 2025 under including but not limited to: Texas Government Code § 74.053; Judge Cooks still proceeded forward despite being disqualified and committed a series of ADA violations including but not limited to lack of: slow speech protocols, one speaker at a time, periodic check-ins, additional time for preparation of motions / pleadings and short processing time breaks and additional time to accommodate for plaintiff's hearing disability / impairment, despite written motions and requests filed earlier, all of which Judge Cooks representing the 416 court took judicial notice of during the August 7, 2025 hearing itself. Plaintiff then filed a series of follow-up motions to address these ADA and other blatant violations of the law astonishingly and unbelievably declaring the 12 USB exhibits lost by Ms. England and the reporter volumes as correct, which were either not heard or denied by the 416 court. No written 28 C.F.R. § 35.164 decision by the head of the entity was issued ever by either the 416 or the 468 courts. No ruling or hearing was granted on these follow-up motions filed by Plaintiff by the 416 Court.

Pg. 45

94. **Oct. 8 / Oct. 9, 2025 sequence; unilateral reset; no hearing:** Oct. 8, 2025 — Coordinator Representation: The 416 Court coordinator Steven Janway emailed the parties [Exhibit C] that the court reset the summary judgment matter "by submission" to October 30, 2025. Oct. 9, 2025: Order Signed Next Day: The written order signed October 9, 2025 **without any hearing being conducted** (whether by submission or in person) purports to rule on various motions and sets a submission hearing date of October 30, 2025; it simultaneously limits ADA relief to CART "for in person hearings."

95. **Mismatch + No Hearing:** The October 9, 2025 order [Exhibit C] resolves multiple motions without any hearing (neither in person nor by submission on those motions), contradicts the coordinator's October 8 characterization, and violates ADA and due process requirements for an ADA compliant opportunity to be heard.

96. **Remote/Zoom CART unavailability (416 and 468 district courts):** In both the 416th and 468th, repeated emails, hearings and rulings on multiple ADA requests and motions show there is no policy or facility to provide real time CART for Zoom/Remote hearings. Hearings are repeatedly shifted to in person or submission only, depriving equal access.

97. **Primary Consideration Not Given:** Despite consistent oral and written ADA requests by Plaintiff, the 416 and 468 courts did not provide remote CART, slow speech, one speaker at a time, periodic check-ins, additional time for preparation of motions / pleadings and short processing time breaks or an effective equivalent, nor issue a § 35.164 written decision by the head of the entity explaining denial and alternatives.

98. **Additional ADA Timeline — Primary Consideration Denied; No § 35.164 Writing; Remote CART Absent:**

a. Plaintiff repeatedly notified court personnel and opposing counsel of his hearing disability and specific aids/protocols needed for effective communication: (a) real time CART; (b) slow speech; (c) one speaker at a time; (d) periodic comprehension checks; (e) short processing time breaks.

b. On multiple dates, staff acknowledged CART would be present but affirmed judge only participation (parties "just observing"), omitting the protocols necessary to make CART effective, and refused to provide remote CART for Zoom/remote sessions.

c. Defendants never issued a written head of entity determination under 28 C.F.R. § 35.164 explaining any claimed undue burden or fundamental alteration, nor proposed an alternative plan that would render communication "as effective as" for nondisabled litigants.

d. On Oct. 8, 2025, the 416 coordinator asserted the court unilaterally reset the Motion for Summary Judgment ("MSJ") by submission to Oct. 30, 2025 [Exhibit C]; on Oct. 9, 2025, the Court signed an order ruling on various motions without any hearing, denied the requested ADA pacing/processing protocols, and limited ADA relief to CART "for in person hearings."

e. As a foreseeable result, Plaintiff incurred pecuniary injuries including but not limited to: (i) lost earnings and lost business time caused by re-briefing/re-filing and added preparation work attributable to submission-only settings and denial of ADA pacing/processing protocols; (ii) out-of-pocket litigation expenses actually incurred (copying, printing, postage, certified mail, notary), and other taxable costs of suit; (iii) non-economic constitutional injury to familial association (loss

of the parent-child relationship) recoverable under 42 U.S.C. § 1983 from non-immune individuals; (iv) nominal damages to vindicate federal rights even where pecuniary amounts are limited or unavailable.

99. **Preservation:** To preserve error and avoid waiver, Plaintiff identifies: (i) the Rule 18a filing/service time and resulting divestiture; (ii) the lack of rendition on dates asserted; (iii) the Oct. 8/Oct. 9, 2025 mismatch (email reset by submission vs. next-day signed order with no hearing) [Exhibit C]; (iv) the absence of any 28 C.F.R. § 35.164 written decision by the head of the entity despite curtailment of requested aids/protocols; (v) the refusal/failure to provide remote/Zoom CART or an effective equivalent; (vi) the use of submission-only procedures on dispositive matters; and (vii) the coerced, warrantless phone search in court. Plaintiff requests express rulings on each federal issue.

100. *Monell* — **Fifth Circuit:**

   a. Elements: A municipality is liable where (i) an official policy or custom (ii) promulgated by a final policymaker (iii) is the moving force behind the constitutional or statutory injury. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Peterson v. City of Fort Worth*, 588 F.3d 838, 850–52 (5th Cir. 2009).

   b. Custom Proof: A pattern of similar violations suffices; the practice need not be formally adopted. *Peterson*, 588 F.3d at 851–52. Here: repeated submission only conversions post ADA notice; lack of extra time pace/speech protocols; categorical no remote CART stance; no §35.164 writings; and coordinator emails limiting participation to "judge only."

c. Failure to Train: Deliberate indifference exists where the need for training is obvious and failure closely relates to the deprivation. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *Connick v. Thompson*, 563 U.S. 51, 61–63 (2011). Training on remote CART logistics, primary consideration compliance, and §35.164 writing duties was plainly required yet absent.

## VII. CLAIMS FOR RELIEF

101. Rule 8 & Alternative Pleading. This complaint states plausible claims with specific dates, actors, and documents (*Iqbal/Twombly*). Allegations are also pled in the alternative under Fed. R. Civ. P. 8(d)(2) to preserve all theories.

102. Rule 10(b). Each claim is set out in numbered paragraphs limited to facts necessary to state each element, avoiding shotgun incorporation.

103. Rule 12(e). To the extent Defendants argue ambiguity, the detailed chronology and exhibits make any Rule 12(e) motion for more definite statement unnecessary.

## COUNT I - DECLARATORY AND INJUNCTIVE RELIEF

*(28 U.S.C. §§ 2201–2202 — prospective administrative / declaratory relief against Judge Andrea Thompson and Judge Lindsey Wynne only in their official capacities; implementation relief; if needed, against Collin County in its official capacity. No damages under this Count.)*

104. Plaintiff incorporates by reference all foregoing allegations as if fully set forth herein.

105. A justiciable controversy exists regarding the legal validity and enforceability of the October 16, 2024 Final Decree and related orders.

106. (Abstention / *Rooker-Feldman* safe harbor). Plaintiff asserts independent federal claims seeking prospective administrative relief (ADA-compliant courtroom protocols and § 35.164

written-decision procedures) and compensation for federal injuries caused by state actors. This action is not a de facto appeal of any state judgment. Accordingly, *Rooker-Feldman* does not apply; *Younger* abstention is inapposite; and *Ex parte Young*, 209 U.S. 123, permits prospective relief against state officials to halt ongoing violations of federal law.

107. Plaintiff does not seek to void, revise, stay, or enjoin any state-court judgment. Relief is strictly prospective and administrative: (a) a written ADA Courtroom Protocol Order (real-time CART; slow speech; one speaker at a time; periodic comprehension checks; short processing-time breaks; advance CART logistics; no surcharges; additional hearing and preparation time for hearings; in person hearings) under 28 C.F.R. §§ 35.160 and 35.130(f); and (b) compliance with 28 C.F.R. § 35.164 (a written undue-burden/fundamental-alteration determination by the head of the entity with reasons and alternative steps). In the alternative and for avoidance of doubt, Plaintiff seeks a declaration of rights and obligations only that: (i) upon filing/service of Plaintiff's verified Rule 18a motion (11:31 a.m., Oct. 17, 2024), Judge Wynne was divested of authority to act except as Rule 18a permits (No Rendition on Aug. 20, 2024; any contrary back dating is ineffective); and (ii) any subsequent acts taken in contravention of Rule 18a's automatic stay were ultra vires and without lawful authority (Rule 18a Divestiture at 11:31 a.m., Oct. 17, 2024; post filing/signature actions are void). This request does not ask the federal court to vacate, set aside, or enjoin any state judgment; it clarifies the parties' rights for prospective compliance with federal law (ADA, Due Process) and to prevent ongoing repetition of the same conduct.

108. Oct. 9, 2025 Order Entered Without Any Hearing; limiting ADA to CART "for in person hearings" while denying remote CART; slow speech; one speaker at a time; periodic comprehension checks; short processing-time breaks; advance CART logistics; additional hearing and preparation time for hearings; and avoiding in person hearings setting by-submission

only or not conducting a hearing at all (whether in-person or by-submission) without a §35.164 writing violates Title II and procedural due process.

109. Remote CART Requirement: For any appearance (live or remote), Title II requires effective communication with primary consideration to Plaintiff's requests absent a valid §35.164 writing with an effective alternative.

110. The Court should (i) prohibit rulings on Plaintiff's ADA requests without reasonable notice and an ADA-compliant format (live or remote); (ii) require any denial to issue via a § 35.164 written decision by the head of the entity with reasons and an effective alternative plan; and (iii) bar submission-only procedures where, given Plaintiff's disability and requested accommodations (including remote CART), they would render communication not "as effective as" with others absent a § 35.164 plan.

111. Do: Provide real time CART for all proceedings where Plaintiff appears, whether in person or remote, with slow speech, one speaker at a time, periodic comprehension checks, short processing time breaks and other ADA accommodations sufficient to make communication as effective for hearing disabled litigants as with others. 28 C.F.R. § 35.160(a)–(b).

112. Do: Before curtailing any requested aid/protocol, issue a written determination by the head of the entity under § 35.164, with specific reasons and an alternative plan that still ensures effective communication; preserve a copy in the record.

113. Don't: Use submission only procedures for dispositive matters unless and until a § 35.164 written decision identifies an alternative plan that ensures effective communication equal to that of nondisabled litigants.

114. Do: Adopt and publish a courtroom ADA protocol and remote CART logistics Standard Operating Procedure ("SOP"); assign an ADA point of contact responsible for scheduling CART (remote and in person) and documenting compliance.

115. Continued enforcement of aforementioned orders violates Plaintiff's constitutional rights and creates ongoing irreparable harm requiring declaratory and injunctive relief.

116. Plaintiff seeks: (a) declaratory judgment that the October 16, 2024 sua sponte recusal and final orders are void; (b) declaratory judgment that forced biometric phone unlock and search on June 24, 2024 without warrants are unconstitutional; (c) permanent injunction prohibiting enforcement of void orders; and (d) injunctive relief requiring constitutional compliance.

## COUNT II - AMERICANS WITH DISABILITIES ACT ("ADA") VIOLATIONS

*(Against the State of Texas (Office of Court Administration) and the 468th Judicial District Court for declaratory and, to the extent permitted, pecuniary relief; against Judge Andrea Thompson and the 416th Judicial District Court (official capacities) for prospective declaratory and injunctive relief only; monetary damages not sought from State judicial officers where barred by sovereign immunity.)*

117. Plaintiff incorporates by reference all foregoing allegations as if fully set forth herein.

118. Public entities must ensure communications are as effective as with others and must give primary consideration to the individual's request; no surcharge is permitted. 28 C.F.R. § 35.160; § 35.130. If an aid is denied as undue burden/fundamental alteration, the head of the entity must issue a written decision with reasons, and alternative steps must still provide access. 28 C.F.R. § 35.164. Defendants had actual notice (filed ADA motions; oral requests; coordinator email communications) identifying his hearing disability and requesting ADA accommodations CART plus slow speech, extra hearing and pleading preparation time, one speaker at a time, periodic

check ins, and short processing time breaks—yet proceeded without § 35.164 writings and without the requested protocols, causing missed contemporaneous objections and unpreserved error.

119. Intent Standard (Fifth Circuit): Monetary damages under Title II/RA require intentional discrimination, satisfied by deliberate indifference—actual knowledge that harm to federally protected rights was substantially likely and failure to act. *Delano Pyle v. Victoria County*, 302 F.3d 567, 574–75 (5th Cir. 2002); *Cadena v. El Paso County*, 946 F.3d 717, 724–26 (5th Cir. 2020). Including but not limited to: the Oct. 8/9, 2025 sequence, repeated refusals to provide remote CART and other ADA accommodations, and lack of any §35.164 written decision after repeated notice meet this standard.

120. Primary Consideration: The public entity must honor the individual's expressed choice of aid unless it can demonstrate a valid §35.164 basis; mere "availability" of CART in person only does not satisfy as effective as communication in remote settings. 28 C.F.R. §35.160.

121. No Surcharge: Costs related to CART or equivalent aids may not be shifted to the individual. §35.130(f).

122. Notice: Defendants received clear, repeated written and oral notice of Plaintiff's disability and requested aids/protocols.

123. Denial/Modification: Defendants denied or unreasonably curtailed those aids/protocols by (a) refusing a live, interactive format with the listed pacing/processing protocols; and (b) failing to provide CART for Zoom/remote hearings or any effective equivalent.

124. Regulatory Noncompliance: No § 35.164 written decision by the head of the entity issued; primary consideration to Plaintiff's requests was not given; no surcharge was guaranteed or documented. 28 C.F.R. §§ 35.160, 35.164, 35.130.

125. Mens Rea: After repeated notice and filed motions, Defendants persisted in submission only procedure and in person only CART, evidencing deliberate indifference at minimum.

126. Causation/Harms: These acts were the moving force behind concrete pecuniary losses described in the Facts and Prayer; they also caused lost meaningful participation in dispositive adjudication.

127. Remote/Zoom. Both the 416th and 468th stated or demonstrated an inability to provide CART for Zoom/remote hearings and failed to provide an effective equivalent or a § 35.164 written decision by the head of the entity. Hearings were moved to in person or submission only formats instead or no hearing was conducted at all while ruling on motions filed by Plaintiff.

128. Defendants systematically excluded Plaintiff from meaningful participation in court proceedings based on his hearing disability, denied reasonable accommodations despite notice and multiple requests, and subjected him to discrimination that directly impacted fundamental parental rights.

129. The pattern of denials without individualized assessment violates including but not limited to: 42 U.S.C. § 12132 and implementing regulations, constituting deliberate indifference to Plaintiff's rights.

130. The denial of accommodations independently violates the Due Process Clause of the Fourteenth Amendment, thereby abrogating sovereign immunity.

131. No Hearing + Reset by Email/Order: On Oct. 8, 2025, the 416 court coordinator Steven Janway wrote the court reset the summary judgment matter for the bill of review (Cause No. 416-04919-2025) "by submission" to Oct. 30, 2025; on Oct. 9, 2025, the judge signed an order ruling on various motions without any hearing [Exhibit C], denying the requested ADA protocols (including but not limited to slow speech, one speaker at a time, periodic check-ins, additional

time for preparation of motions / pleadings and short processing time breaks) and limiting ADA relief to CART "for in person hearings." These facts show failure to give primary consideration and support deliberate indifference.

132. Plaintiff seeks pecuniary damages (transcript/record reconstruction, duplicate briefing, travel and loss of child visitation rights, assistive technology and CART coordination including remote/zoom hearings, slow speech protocols, periodic check-ins, extra hearing and pleading preparation time, nominal damages, declaratory/injunctive relief, and fees/costs under 42 U.S.C. § 12205. No emotional distress or punitive damages are sought under Title II.

133. (42 U.S.C. § 12131 et seq. — against the State of Texas (by and through the Office of Court Administration) and the 468th Judicial District Court for retrospective declaratory and pecuniary relief to the extent permitted; and against the 416th Judicial District Court and Judge Andrea Thompson (official capacity) for prospective declaratory and injunctive relief.).

134. Defendants' practices foreseeably hindered Plaintiff's ability to present a non frivolous claim/defense including but not limited to: real time participation on dispositive motions by denying effective communication; the underlying claims (procedural due process/ADA) are identified herein with requested relief, satisfying including but not limited to: *Christopher v. Harbury*, 536 U.S. 403, 415–16 (2002).

**COUNT III - FOURTH AMENDMENT VIOLATION - COORDINATED ILLEGAL SEARCHES**

*(42 U.S.C. § 1983 — against Edwin McGill in his individual capacity for damages; against Collin County (Monell) for municipal policy/custom; against John Doe Collin County Sheriff Deputy in his individual capacity to be identified later after limited discovery; no claim against*

*Sheriff Skinner in his individual capacity under this Count; prospective official-capacity relief only as appropriate.)*

135. Plaintiff incorporates by reference all foregoing allegations as if fully set forth herein.

136. By 2014, it was clearly established that officers may not search digital contents of a cell phone without a warrant. No warrant, valid consent, or exigency existed.

137. On June 24, 2024, at the 468th District Court hearing, a uniformed deputy (identified in the record as Defendant Edwin McGill) repeatedly seized Plaintiff's cell phone, demanded that Plaintiff unlock and display its contents, and coerced compliance while Plaintiff expressly protested. The seizure and compelled display were conducted without a warrant, exigency, or valid consent and are captured in the certified reporter's transcript and contemporaneous video (Exhibit E). Under *Riley v. California*, 573 U.S. 373 (2014), warrantless searches of phone data are unconstitutional absent exigent circumstances; here no exigency existed and any purported "consent" was obtained under color of judicial authority and threat of sanction and/or arrest. On these facts, the search violated clearly established Fourth Amendment law and qualified immunity is not available. Any purported "consent" to unlock or display phone contents while under hostile judicial command and threat of sanction/arrest is invalid as a matter of law, because it is not free and voluntary but obtained under color of authority. The search of digital contents without a warrant violates clearly established law; qualified immunity is unavailable to McGill on these facts.

138. The coordinated warrantless seizure and searches conducted pursuant to judicial direction, with armed intimidation and under threat of contempt, violated clearly established Fourth Amendment rights including but not limited to under: *Riley v. California*, 573 U.S. 373 (2014).

139. The judicial coordination of the searches and use of contempt threats negated any possibility of voluntary consent under *Bumper v. North Carolina*, 391 U.S. 543 , 545 (Jun 3, 1968) creating unprecedented constitutional violations.

140. McGill's conduct was objectively unreasonable and demonstrated deliberate indifference to constitutional rights, warranting both compensatory and punitive damages.

141. Plaintiff seeks compensatory and punitive damages against McGill in his individual capacity. Plaintiff seeks compensatory, emotional-distress, and punitive damages in an amount to be proved at trial against any non-immune individual defendants who directly caused constitutional deprivations including Collin County John Doe deputy (if later identified). Plaintiff pleads loss of companionship and society, loss of visitation, emotional-distress, out of pocket expenses (including supervised visitation fees), and pecuniary losses (to the extent incurred) as compensatory damages. Plaintiff reserves the right to amend and to identify John Doe defendant(s) after limited initial discovery.

142. Plaintiff seeks compensatory damages against Collin County (*Monell*) and compensatory and punitive damages against McGill in his individual capacity.

**COUNT IV - SUBSTANTIVE DUE PROCESS VIOLATION – FABRICATED DEPRIVATION OF PARENTAL RIGHTS**

*(42 U.S.C. § 1983 — Against Collin County, Texas (Monell) for municipal liability and against identified non-immune individuals in their personal capacities for damages where supported by the record; prospective official-capacity injunctive relief sought against judicial officers only to the extent permitted by Ex parte Young.)*

143. Plaintiff incorporates by reference all foregoing allegations as if fully set forth herein.

144. The systematic fabrication of judicial findings, emotional bias favoring opposing parties, maintaining a near-100% one-sided ruling record against Plaintiff over a multi-year period and effective termination of Plaintiff's relationship with his suicidal special-needs child based on false evidence "shocks the conscience" under including but not limited to: *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). Additionally, Carolyn England (the court reporter) materially altered, omitted, or ratified altered portions of the official record and transmitted certified reporter's materials/evidence in a manner with replacement exhibits outside the chain of custody after they had been lost that made appellate review ineffective and led to or contributed to the issuance and/or enforcement of void orders that effectively terminated Plaintiff's parental relationship.

145. The deprivation of fundamental parental rights based on fabricated evidence rather than compelling state interests violates heightened scrutiny under *Troxel v. Granville*, 530 U.S. 57 (2000).

146. The ongoing separation of a suicidal special-needs child from his primary caregiver based on void orders causes irreparable constitutional harm.

147. Plaintiff seeks compensatory and emotional-distress damages in an amount to be determined at trial against Collin County for the effective termination of his parental relationship and ongoing harm to his child, and prospective injunctive relief against Judge Wynne officially.

## COUNT V - PROCEDURAL DUE PROCESS VIOLATION

*(42 U.S.C. § 1983 — Against Collin County, Texas (Monell) for municipal liability; and against identified non-immune individuals in their personal capacities for damages where supported by the record; prospective declaratory and injunctive relief only sought against Judge Lindsey Wynne and Judge Andrea Thompson in their official capacities to the extent permitted by federal law; no monetary damages sought from judicial officers for judicial acts.)*

148. Plaintiff incorporates by reference all foregoing allegations as if fully set forth herein.

149. The systematic bias, evidence fabrication, unequal treatment, bailiff intimidation, record manipulation, and denial of basic procedural protections denied Plaintiff his right to a fair and impartial tribunal.

150. Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), the process provided fell substantially below constitutional requirements given the fundamental nature of parental rights at stake.

151. Without an ADA compliant opportunity to be heard (in fact no hearing was held at all, whether in-person or by-submission), the Court issued the Oct. 9, 2025 order on multiple ADA/scheduling motions, denied oral presentation, maintained submission only for dispositive matters, limited ADA to CART "for in person hearings,", denied plaintiff's multiple ADA motions requesting slow speech, one speaker at a time, periodic comprehension checks, and short processing time breaks necessary to make CART effective, failed to provide remote CART or a § 35.164 written alternative plan. Under *Mathews v. Eldridge*, the private interest (access on dispositive matters) is substantial; the risk of erroneous deprivation is high when ADA participation is denied; the value of safeguards (live or remote settings that incorporate the requested pace/processing protocols, or a § 35.164 alternative plan) is obvious; and the

governmental burden is minimal. Ruling without any hearing deprived Plaintiff of a meaningful chance to be heard at a meaningful time and in a meaningful manner. Carolyn England's deliberate alteration/omission of the court record with incorrect dates and participation in post-filing transmissions outside the chain of custody with replacement exhibits deprived Plaintiff of a reliable and reviewable official record, thereby denying Plaintiff the procedural protections of notice, an opportunity to be heard, and meaningful appellate review.

152. Private Interest: Access to court on dispositive motions concerning parental rights and property is substantial.

153. Risk of Error: High when a hearing impaired litigant is denied real time, interactive participation and the necessary pacing/processing protocols; "submission only" deprives contemporaneous objections and real time clarifications.

154. Value of Safeguards: Real time CART (including remote) plus pacing/processing protocols and other ADA accommodations and a § 35.164 analysis would sharply reduce erroneous outcomes; the Oct. 8/9, 2025 sequence shows the ease of implementing these measures and the harm of omitting them.

155. Governmental Burden: Minimal relative to the gravity of the interests at stake and the simple administrative steps required.

156. Fifth Circuit test: Denial of a meaningful opportunity to present and respond on dispositive issues, coupled with known disability based communication limits, states a claim under the Fourteenth Amendment when simple, low burden safeguards are ignored. See *Mathews*, 424 U.S. at 333–35; cf. *In re Murchison*, 349 U.S. 133, 136–39 (neutral decisionmaker). The no-hearing Oct. 9, 2025 order by the 416 court and repeated submission only practice despite ADA notice satisfy this standard.

157. Conclusion: Deciding multiple ADA/scheduling motions without any hearing, while imposing submission only and limiting CART to in person settings, violated procedural due process.

158. Plaintiff seeks compensatory and emotional-distress damages in an amount to be determined at trial against Collin County and injunctive relief requiring constitutionally adequate procedures against all defendants.

## COUNT VI - FIRST AMENDMENT RETALIATION

*(Against non-immune individual defendants only (including McGill). Not asserted against the State of Texas, any court, judicial officers in their judicial capacity, or municipal/official-capacity defendants.)*

159. Plaintiff incorporates by reference all foregoing allegations as if fully set forth herein.

160. The systematic adverse treatment, including the backdating scheme and fabricated findings, following Plaintiff's protected speech activities establishes retaliation including but not limited to under: *Mt. Healthy City School District v. Doyle*, 429 U.S. 274 (1977).

161. Plaintiff incorporates including but not limited to: Tex. Code Crim. Proc. arts. 2.13(a) & 15.04 as the source of the Collin county sheriff deputy's ministerial duty to accept criminal complaints. A uniformed deputy of the Collin County Texas Sheriff's Office further retaliated on October 29 2024 by refusing to accept Plaintiff's sworn affidavit and criminal complaint against Judge Wynne at the Collin County Sheriff's Office at 4300 Community Ave, McKinney, TX 75071, thereby chilling Plaintiff's right to petition including but not limited to under: Tex. Code Crim. Proc. arts. 2.13(a), 15.04.

162. Protected Activity: Plaintiff engaged in protected petitioning activity, including filing ADA motions/objections, communications with court staff about accommodations, and

submitting a sworn criminal complaint. On October 29, 2024 Plaintiff personally tendered a sworn criminal complaint at the Collin County Sheriff's Office and a deputy on duty refused to accept the sworn criminal complaint (Plaintiff made a video recording of this encounter) See sworn affidavit attached as [Exhibit Y]. Plaintiff reserves the right to identify the deputy once County records and limited discovery are obtained Plaintiff thereafter presented the same sworn complaint to the McKinney Police Department and to the Collin County District Attorney's Office. The Collin County deputy's refusal is alleged against the Sheriff's Office as a policy/practice (*Monell*) and, to the extent identification is later established, against the individual deputy (John Doe) in his individual capacity; Plaintiff will amend to name the deputy once discovered.

163. Adverse actions: In response, non-immune officials took adverse actions that would chill a person of ordinary firmness from continuing to petition, including: (i) converting significant matters to submission-only despite ADA notice; (ii) refusing remote/Zoom CART or an effective equivalent; (iii) entering the Oct. 9, 2025 order on multiple motions without any hearing and limiting ADA relief to CART "for in person hearings" while denying all other ADA relief; (iv) a warrantless/coerced access/search of Plaintiff's phone in court; and (v) refusing to accept Plaintiff's sworn criminal complaint at the Sheriff's Office.

164. Causation: Plaintiff's protected petitioning was a substantial or motivating factor for the adverse actions. Absent Plaintiff's protected activity, the adverse actions would not have occurred as they did.

165. Relief/limits: Plaintiff seeks compensatory and, where permitted, punitive damages against non-immune individuals only; no damages are sought against judicial officers for judicial acts. Prospective relief to fix courtroom procedures is sought separately in Count I/II.

166. Plaintiff seeks compensatory, emotional-distress, and punitive damages in an amount to be determined at trial against McGill individually and injunctive relief prohibiting retaliation against Judge Wynne and Judge Thompson officially.

## COUNT VII – (ALTERNATIVE) 42 U.S.C. § 1985(3) Conspiracy

*(Against non-immune individual defendants only, including McGill and England; against Collin County, Texas for Monell liability to the extent the conspiracy was the product of official custom or policy; no monetary claims against judges for judicial acts; Not asserted against the State of Texas, judicial officers in their judicial capacity, or municipal/official-capacity defendants.)*

167. Plaintiff incorporates by reference all foregoing allegations as if fully set forth herein.

168. Class-based animus. Plaintiff is a person with a disability; disability is the protected class asserted for § 1985(3).

169. Agreement. The individual defendants reached an agreement to deprive Plaintiff of equal protection and equal privileges and immunities on account of disability.

170. Overt acts. In furtherance, they committed overt acts including:

(a) "judge-only / parties just observing" directives that curtailed Plaintiff's participation despite ADA notice;

(b) refusal to provide CART for Zoom/remote hearings and failure to issue a § 35.164 written head-of-entity decision with reasons and an effective alternative;

(c) entering an order on various motions without any hearing and limiting ADA relief to CART "for in person hearings," while setting dispositive matters by submission;

(d) a warrantless / coerced access or search of Plaintiff's cell phone in court;

(e) refusal to accept Plaintiff's sworn criminal complaint at the Sheriff's Office.

(f) reporter manipulation/alteration — Carolyn England, the official reporter for the 468th District Court, materially mis-reported, omitted, or transmitted altered or replaced reporter's materials outside the chain of custody or after Plaintiff's October 17 Rule 18a filing, thereby facilitating or enforcing the issuance of backdated orders and causing the deprivation alleged above.

171. Injury. These acts proximately caused constitutional injury (loss of familial association and meaningful access to the courts) and economic loss actually incurred (lost earnings/business time; out-of-pocket litigation expenses).

172. Relief limited to non-immune defendants. Plaintiff seeks compensatory and, where permitted, punitive damages against non-immune individuals only; no relief is sought against municipal entities or judicial officers for judicial acts under this Count.

173. Defendants conspired together to deprive Plaintiff of constitutional rights through coordinated actions including: (a) backdating orders after disqualification; (b) coordinating warrantless searches; (c) record manipulation; (d) ex parte communication and (e) systematic bias against disabled pro se litigants.

174. On Oct. 29, 2024, a uniformed deputy at the Collin County Sheriff's Office refused to accept Plaintiff's notarized criminal complaint (video and contemporaneous evidence) [Exhibit Y]. Plaintiff does not know the deputy's identity at the time of filing and therefore pleads JOHN DOE #1 as a defendant for the limited purpose of identifying the officer through expedited discovery (video, intake logs, personnel records). Plaintiff will promptly amend the complaint to name the individual once identified.

175. The temporal coordination and shared animus demonstrate an agreement to violate constitutional rights under color of law.

176. Defendants' conduct was motivated by animus against Plaintiff's status as a disabled, pro se litigant, satisfying the 'class-based' requirement under 42 U.S.C. § 1985(3). Furthermore, Defendants acted with invidiously discriminatory animus toward Plaintiff's protected status as a hearing-impaired individual under 42 U.S.C. § 12102 and as a pro se litigant, satisfying the 'class-based, invidiously discriminatory animus' requirement of § 1985(3) (see *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

177. Plaintiff seeks compensatory, emotional-distress, and punitive damages in an amount to be determined at trial against McGill in his individual capacity and injunctive relief against other defendants as stated herein. Plaintiff expressly does NOT seek monetary damages from Judge Lindsey Wynne or Judge Andrea Thompson for judicial acts in their individual capacities. Plaintiff seeks prospective declaratory and injunctive relief against judicial officers and the State of Texas only as permitted under *Ex parte Young* and related law; monetary damages are sought only against non-immune individual defendants in their personal capacities and against Collin County where *Monell* liability is pled and proven.

178. Alternative pleading / immunity limiter. This Count is pled in the alternative and does not request that this Court act as an appellate tribunal to reverse or vacate final state-court judgments. Plaintiff expressly disclaims any request for de novo review of state findings. The relief requested is narrowly prospective: declaratory and injunctive relief to prevent ongoing constitutional violations, administrative correction of ADA procedures, and to remedy acts that were taken after the court was divested of jurisdiction (void ab initio). Plaintiff has preserved state appeals and this federal action asserts independent federal claims not barred by *Younger* or *Rooker-Feldman* doctrines.

179. Plaintiff seeks no monetary relief from Judge Lindsey Wynne or Judge Andrea Thompson. To the extent Plaintiff seeks prospective injunctive or declaratory relief against State judicial officers (e.g., Judges Lindsey Wynne and Andrea Thompson), such relief is sought pursuant to *Ex parte Young* and related authorities and is limited to prospective, non-monetary relief necessary to prevent ongoing violations of federal law. Plaintiff does not seek monetary damages against those judges in their personal capacities.

## COUNT VIII - *MONELL* LIABILITY FOR MUNICIPAL POLICY

*(42 U.S.C. § 1983 — against Collin County only (Monell). No punitive damages against the County.)*

180. Plaintiff incorporates by reference all foregoing allegations as if fully set forth herein and the exhibits in the Appendix.

181. Collin County ADA / Custom: On information and belief and subject to discovery of records exclusively within Defendants' control — Collin County's formal budgetary documents for FY2023–FY2025 (Exhibit AI) contain no dedicated object code, recurring contract, invoice, or licensing fee for vendor-provided real-time captioning (CART) particularly for zoom/remote hearings or a fully operational courtroom captioning program. The absence of a dedicated funding stream, together with the 416th/468th courts' consistent use of submission-only settings after ADA notice (Exhibits C,AH), lack of CART on Zoom/Remote hearings and repeated on-record offers only of courtroom headphones (which plaintiff declined as ineffective and confusing to him), establishes a factual basis that the one-time CART provided during the period was ad-hoc and discretionary rather than part of an operationalized, consistently funded program of accommodations. Plaintiff will seek — and is entitled to obtain through discovery and subpoena — Commissioners Court minutes, procurement/work-paper records, vendor invoices,

and internal ADA intake and training materials to demonstrate the absence, timing, or scope of any County program for CART and to prove that county policymakers (including the Collin County Commissioners Court and officials charged with courthouse operations) either by explicit policy or persistent custom failed to fund, implement, or supervise ADA accommodations. These factual predicates are pleaded on information and belief because the underlying records are in the County's exclusive possession or control. The County also maintained a persistent custom and practice of (a) converting significant matters to submission-only after ADA issues were raised; (b) providing only ineffective alternatives (headphones, one-speaker protocols, or brief breaks) without operational CART logistics (scheduling, vendor contracting, remote CART setup, or training); and (c) failing to train deputies and court staff on Title II decision-making and § 35.164 alternatives for remote captioning. The County's failure to train and supervise was deliberate and was the moving force behind Plaintiff's denial of meaningful access to the courts and related constitutional injuries. Plaintiff seeks compensatory and emotional-distress damages against Collin County where Monell liability is later proved and further seeks prospective injunctive relief ordering the County to (1) operationalize courtroom captioning (vendor contract, scheduling, budget line item, and training), (2) adopt a written intake policy for accepting sworn complaints statewide, and (3) train courthouse staff and deputies on Title II and Fourth Amendment limits. No punitive damages are sought against Collin County. On further information and belief, while Collin County may maintain general ADA guidance, yet has failed to provide any meaningful ADA accommodations, the systematic constitutional violations of which resulted from official policies and customs that were the moving force behind the deprivations of Plaintiff's rights. Any CART provided at a single time without other ADA protocols such as slow speech, additional time etc. appears to have been ad-hoc or discretionary

rather than part of a consistently funded program. Documentary exhibits supporting this Monell pleading: Collin County FY2023 Numbers-Only; Collin County FY2024 Numbers-Only; Collin County FY2025 Numbers-Only [Exhibit AI]; Court Coordinator email chain and Court Order (Exhibit C); Certified Transcript Excerpts showing CART denial and phone-seizure/search (Exhibits D,E); Plaintiff's sworn criminal complaints against Judge Wynne (Exhibit Y). Plaintiff incorporates these exhibits as factual predicates for the *Monell* claims.

167. These policies were implemented by final policymakers with authority to establish official policy for the respective governmental entities.

168. Custom/Practice: Collin County maintained a persistent, widespread practice of (a) converting significant matters to submission only post ADA notice; (b) omitting slow speech/one speaker/check ins/processing breaks required to make CART effective; and (c) failing to provide remote CART or any § 35.164 compliant alternative. The practice was so common and well settled as to constitute a custom representing official policy.

169. Sheriff's Office / Court Security Custom: The County's failure to train courthouse staff and deputies on Title II procedures, § 35.164 decision making, remote CART logistics, and Fourth Amendment limits for device searches reflects deliberate indifference where the need for training was obvious. The County's failure to act was the moving force behind the constitutional injuries alleged.

170. Plaintiff seeks compensatory and emotional-distress damages against Collin County where Monell liability is established and prospective injunctive relief directing the County to (1) operationalize CART provision (vendor contract, scheduling and funding), (2) implement a written intake policy for sworn complaints, and (3) train staff and deputies. No punitive damages are sought against Collin County.

## VIII. JURY DEMAND

171. Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.

## IX. PRO SE STATUS

172. Pro Se pleadings are always to be construed liberally and expansively, affording them all the opportunity in obtaining **substance of justice, over technicality of form**. *Maty v. Grasselli Chemical Co.,* 303 U.S. 197 (1938); *Picking v. Pennsylvania Railroad Co.,* 151 F.2d 240 (3rd Cir. 1945); *Jenkins v. Mckeithen,* 395 U.S. 411, 421 (1959); *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Puckett v. Cox,* 456 F. 2d 233 (6th Cir 1972); and etc.

173. If the court can reasonably read submissions, it should do so **despite failure to cite proper legal authority, confusion of legal theories, poor syntax or sentence construction, or a litigant's unfamiliarity with particular rule requirements**. *Boag v. MacDougall,* 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *McDowell v. Delaware State Police,* 88 F.3d 188, 189 (3rd Cir. 1996); *United States v. Day,* 969 F.2d 39, 42 (3rd Cir. 1992); *Then v. I.N.S.,* 58 F.Supp.2d 422, 429 (D.N.J 1999); and, etc., with numerous similar rulings. See *Haines v. Kerner,* 404 U.S. 519, 520 (1972) ("**less stringent standards than formal pleadings drafted by lawyers**").

174. When interpreting *Pro Se* papers, this Court is required to use its own common sense to determine what relief that party either desires, or is otherwise entitled to. *S.E.C. v. Elliot,* 953 F.2d 1560, 1582 (11th Cir. 1992). The courts have a special obligation to construe *Pro Se*

litigants' pleadings liberally. *Poling v. K. Hovnanian Enterprises*, 99 F.Supp.2d 502, 506-07 (D.N.J. 2000); and, etc.

175. **The Court provides pro se parties wide latitude when construing their pleadings and papers**. *Maldonado v. Garza*, 579 F.2d 338, 340 (5th Cir. 1978); *United States ex rel. Simmons v. Zibilich*, 542 F.2d 259, 260 (5th Cir. 1976). When interpreting the pro se papers, the Court should use common sense to determine what relief the party desires. *United States Ex Rel. Simmons v. Zibilich*, 542 F.2d 259, 260 (Nov 11, 1976). See also *United States v. Miller*, 197 F.3d 644, 648 (3rd Cir. 1999).

176. Indeed, the courts will even go to particular pains to *protect* Pro Se litigants against consequences of technical errors if injustice would otherwise result. *U.S. v. Sanchez*, 88 F.3d 1243 (D.C.Cir 1996). Moreover, the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory. (*emphasis added*). *See,* e.g., *Bonner v. Circuit Court of St. Louis.*, 526 F.2d 1331, 1334 (8th Cir. 1975) (quoting *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974), and etc.

## X. PRAYER FOR RELIEF

177. WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

**A. DECLARATORY RELIEF:**

i.    Enter declaratory judgment that the October 17, 2024 Final Decree and related orders are *void ab initio* and *ultra vires*;

ii.   Declare that forced biometric phone unlocks without warrants are unconstitutional;

iii.  Declare that systematic judicial bias and record manipulation violate due process;

iv.   Declare that coordinated denial of ADA accommodations violates federal law;

**B. INJUNCTIVE RELIEF:**

i.    Enter permanent injunctive relief prohibiting enforcement of void orders;

ii.    Enter injunctive relief requiring ADA accommodations in court proceedings;

iii.    Enter injunctive relief requiring constitutional training for all court personnel;

iv.    Enter injunctive relief restoring meaningful parental access pending state-court review;

v.    Enter injunctive relief prohibiting warrantless digital searches in courthouses;

**C. MONETARY DAMAGES:**

i.    Award compensatory, emotional-distress, and punitive damages as follows:

    a.    Award compensatory compensatory damages (including loss of companionship and society with his minor child/parental consortium), emotional-distress, and punitive damages against Defendant Edwin McGill and Defendant Carolyn England in their individual capacities in amounts to be determined at trial for their roles in violating Plaintiff's constitutional rights - including but not limited to fabrication/alteration of the official record with replacement exhibits outside the chain of custody and coordinated unconstitutional searches.

    b.    Against Collin County (*Monell*): compensatory damages (including out-of-pocket costs, lost earnings, lost business time attributable to re-briefing/re-filing and added preparation caused by submission-only procedures, and out-of-pocket litigation expenses), and emotional-distress damages where liability is proved; no punitive damages sought against the County.

    c. Itemized/Measured Damages: other costs / damages with reasonable prejudgment interest on pecuniary outlays and post judgment interest under 28 U.S.C. § 1961.

    d. Damages due to Plaintiff pleading loss of companionship and society / parental consortium damages against non-immune individual defendants (including but not limited to Edwin McGill), together with emotional-distress damages, punitive damages where supported by evidence of malicious or reckless misconduct, and all recoverable pecuniary losses.

ii. Plaintiff reserves the right to offer proof at trial and to amend the amount of damages as discovery proceeds; all damages to be determined at trial.

iii. Award compensatory damages under 42 U.S.C. § 1983 against non-immune individual defendants for constitutional violations, including general damages for loss of familial association and, where the evidence shows reckless or callous indifference, punitive damages against individuals only (not against any municipal or official-capacity defendant).

iv. Under Title II of the ADA, award prospective declaratory and injunctive relief as requested in Counts I–II, plus nominal damages and taxable costs under 42 U.S.C. § 12205. Consistent with *Cummings*, Plaintiff does not seek emotional-distress or punitive damages under Title II and pleads pecuniary damages only to the extent actually incurred.

v. Award compensatory and emotional-distress damages—including loss of visitation, loss of companionship and society with his child, costs and fees incurred, any costs incurred due to the deprivation of parental access and mental anguish—in an amount to be

determined at trial against Collin County Texas and Sheriff Jim Skinner in his official capacity for all constitutional (*Monell*) violations;

vi. Award prejudgment interest on compensatory damages where permitted and post-judgment interest under 28 U.S.C. § 1961; in the alternative, award nominal damages recognizing the violation of federal rights.

vii. Plaintiff seeks prospective declaratory and injunctive relief under Title II of the ADA against State actors to the extent necessary to secure meaningful courtroom access for hearing-impaired litigants. Plaintiff does not seek monetary damages from the State of Texas, which is immune from monetary damages under the Eleventh Amendment except to the extent required by controlling Supreme Court precedent.

viii. The State may not, consistent with the Fourteenth Amendment, separate a fit parent from his child absent clear and convincing proof of a compelling interest and narrow tailoring. *Santosky v. Kramer*, 455 U.S. 745, 753–70 (1982); *Troxel v. Granville*, 530 U.S. 57, 65–70 (2000); *In re C.J.C.*, 603 S.W.3d 804, 807–10 (Tex. 2020); *Christine Lenore Stary v. Brady Neal Ethridge*, No. 23-0067, ___ S.W.3d ___ (Tex. May 2, 2025) (op. by Bland, J.). As pled, Defendants' conduct—denial of ADA-compliant participation on dispositive matters and use of procedures that foreclosed contemporaneous objections—caused constitutional injury to familial association. Plaintiff seeks compensatory general damages for that constitutional injury against non-immune individual defendants under 42 U.S.C. § 1983, and compensatory economic damages actually incurred (including lost earnings/business time and out-of-pocket litigation expenses) as otherwise pled. No punitive damages are sought against the County or official-capacity defendants.

ix.  Plaintiff further seeks recovery for pecuniary damages relating to his inability to pay supervised visitation fees [Exhibit F], which directly caused loss of visitation and loss of companionship with his child. Plaintiff alleges he was and is still indigent [Exhibits G,V] and that the supervised visitation fee structure operated as an unconstitutional barrier to his parental relationship.

x.  Award prejudgment interest from the date of each pecuniary outlay and post judgment interest under 28 U.S.C. § 1961.

xi.  Award nominal damages to vindicate federal rights even where pecuniary amounts are later adjusted.

## D. ATTORNEY'S FEES AND COSTS:

i.  Award reasonable attorney's fees (should counsel appear) and costs pursuant to including but not limited to: 42 U.S.C. §§ 1988, 12205;

## E. OTHER RELIEF:

i.  Retain jurisdiction to ensure compliance with injunctive relief;

ii.  Grant such other relief as justice requires.

Respectfully submitted,

*/s/ Tariq Farooq*
Tariq Farooq
Plaintiff, *Pro Se*
3500 S. Echo Trl Plano, Texas 75023
Telephone: (214) 498-9888
brainsurface@yahoo.com

## SERVICE

Plaintiff proceeds in forma pauperis and requests that the U.S. Marshals serve all Defendants including but not limited to under: 28 U.S.C. § 1915(d).

## CERTIFICATE OF SERVICE

### (Pro Se / IFP)

I certify that on October 29, 2025, I filed this Complaint with the Court. If the Court grants Plaintiff's IFP motion and orders service by the U.S. Marshals, Plaintiff will request the U.S. Marshals to serve the defendants at the addresses listed in this pleading.

*/s/ Tariq Farooq*
Tariq Farooq

## APPENDIX

| Exhibit | Description | Purpose |
|---|---|---|
| A | Affidavit In Support of Plaintiff's Original Petition. | Sworn Verification of Facts and Exhibits of Original Petition. |
| B | District Clerk "Audit-Trail" - Notice Of Business Records of Collin County District Clerk attesting to the Date and Timestamps of the Manual Backdated Entry of Final Order and Sua Sponte Recusal Order on 10 / 17 / 2024. | Establishes timing & staff participation in void orders. |
| C | 416 Court's October 8, 2025 email and October 9, 2025 order denying ADA and other relief without a hearing (whether in-person or by-submission). | Supports ADA / Monell / custom / other counts. |
| D | Certified Transcript Excerpt – CART denial. Slip-sheet attached. | Proof of accommodation refusal. |
| E | Certified Transcript Excerpt – Illegal Phone-seizure-and-search order & McGill coercion. Slip-sheet attached. | Fourth-Amendment claim. |
| F | Supervised-Visitation Fee Structure ($687.50 / session). | Damages & parental-rights harm. |
| G | Plaintiff's Statement and Affidavit of Inability to Pay Court Costs (file-stamped 12 / 07 / 2023). | Corroborates indigency. |
| H | Excerpt of court-admitted CPS / Medical Neglect Report re: Child (Plano Children's Hospital, 02 / 01 / 2024). Slip-sheet attached. | Supports substantive-due-process count. |
| I | Final Order and Recusal Order of the 468th District Court of Collin County Texas, manually wet-signed and backdated to October 16, 2024 received from Court Coordinator via email on October 17, 2024. | Supports judicial misconduct. |
| J | Photos of Plaintiff's 2023 Courthouse Protests. | First-Amendment retaliation context. |
| K | Email chain 10 / 09 / 2024 establishing procedure for Motion for Entry of Final Order. | Conspiracy timing evidence. |
| L | Email chain 10 / 17 / 2024 2:50 p.m. – release of back-dated orders. | Conspiracy timing evidence. |
| M | Plaintiff's Notice of Appeal and Timely Requests for FFCL. | Establishes current pending appellate proceedings. |
| N | Motion to Disqualify Hon. Judge Lindsey Wynne – (10/17 /2024 11:31 a.m.). | Establishes timing & staff participation in void orders post disqualification. |
| O | Motion to Disqualify Hon. Judge Lindsey Wynne e- | Establishes timing & staff |

| Exhibit | Description | Purpose |
|---|---|---|
| | Service – (10 / 17 / 2024 12:01 p.m.). | participation in void orders post disqualification. |
| P | Motion to Disqualify Hon. Judge Lindsey Wynne email service – (10/17/2024 12:02 p.m.). | Establishes timing & staff participation in void orders post disqualification. |
| Q | Final Divorce Decree – (11/17/2022). | Establishes prior electronic filing, signature and docket entries. |
| R | Temporary Orders – (02/15/2024). | Establishes prior electronic filing, signature and docket entries and deviation from the court's own docket entry. |
| S | Court's Memorandum Ruling for SAPCR – (08/20/2024). | Establishes final trial findings based on fabrications by Judge Wynne unsupported by evidence. |
| T | Backdated and Wet-Signed Final Order for SAPCR – (11 / 16 / 2024). | Establishes timing & staff participation in void orders post disqualification. |
| U | Sua Sponte Backdated and Wet-Signed Recusal Order – (11 / 16 / 2024). | Establishes timing & staff participation in void orders post disqualification. |
| V | Excerpt of Final Trial Exhibits Volume - Plaintiff's SNAP Benefits admitted at Final Trial. Slip-sheet attached. | Establishes final trial findings based on fabrications unsupported by evidence. |
| W | Excerpt of Final Trial Exhibits Volume - Plaintiff's Credit History admitted at Final Trial demonstrating substantial debts. Slip-sheet attached. | Establishes final trial findings based on fabrications unsupported by evidence. |
| X | Excerpt of Final Trial Exhibits Volume - Plaintiff's expansive job search on multiple job search portals admitted at Final Trial demonstrating lack of intentional unemployment. | Establishes final trial findings based on fabrications unsupported by evidence. |
| Y | Plaintiff's criminal complaint and affidavit against Judge Lindsey Wynne. | Establishes proof of judicial misconduct against Plaintiff. |
| Z | Mother's Notice of Hearing for Motion of Entry of Final Order. | Establishes proof of judicial misconduct against Plaintiff. |
| AA | Email Correspondence between Plaintiff and Court Coordinator on October 9, 2024 regarding Motion to Modify, Correct or Reform Judgment. | Establishes proof of judicial misconduct against Plaintiff. |
| AB | Original Copies of the Collin County District Clerk Attesting to the Date and Timestamps of the Manual Backdated Entry of Final Order and Recusal Order. | Establishes timing & staff participation in void orders post disqualification. |
| AC | Email Correspondence By Collin County District | Establishes timing & staff |

| Exhibit | Description | Purpose |
|---|---|---|
|  | Clerk Rachael Whittaker for Final Judgment Letters. | participation in void orders post disqualification. |
| AD | Email Response By Court Coordinator For Recusal and Final Order Yahoo Mail - 468-51752-2020 on October 17, 2024 3:22 P.M. | Establishes timing & staff participation in void orders post disqualification. |
| AE | Certified Final Trial Transcript Excerpt – Improperly declaring Plaintiff a hostile witness, helping opposing counsel with locating exhibits while running Plaintiff's clock on opposing counsel's cross-examination. Slip-sheet attached. | Supports Judicial Misconduct claims. |
| AF | Clerk's Record Excerpt - Slip-sheet attached. | Supports facts detailing Judicial Misconduct, Bias, Prejudice, denial of ADA accommodations. |
| AG | Supplemental Clerk's Record Excerpt - Slip-sheet attached. | Supports facts detailing Judicial Misconduct, Bias, Prejudice, denial of ADA accommodations. |
| AH | Letter from Dr. Kevin Lunde affirming Plaintiff's Hearing Disability | Supports Plaintiff's Hearing Disability requiring ADA accommodations. |
| AI | Collin County FY2023,FY2025,FY2025 Adopted Budgets — Numbers Only Excerpts | Supports Monell. |
| AJ | Email from 468 Court Reporter Carolyn England confirming USB Loss and 08/07/2025 Rule 34.6 Hearing Transcript | Supports Count against Court Reporter Carolyn England. |