# Exhibit N

## Plaintiff's Motion to Disqualify Hon. Judge Lindsey Wynne – 10/17/2024 11:31 a.m.

(Establishes Timing & Staff Participation in Void Orders Post Disqualification)

NO. 468-51752-2020

| | | |
|---|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF | § § § | IN THE DISTRICT COURT |
| AMBREEN SAHAR JAFRI<br>AND<br>TARIQ FAROOQ | § § § § | 468 JUDICIAL DISTRICT |
| AND IN THE INTEREST OF<br>H.A.F., F.A.F., AND MT.A.F.,<br>CHILDREN | § § § § | COLLIN COUNTY, TEXAS |

## PETITIONER'S MOTION TO DISQUALIFY JUDGE LINDSEY WYNNE

NOW COMES Petitioner, TARIQ FAROOQ ("Petitioner" or "FAROOQ" or "Father"), and files this "MOTION TO DISQUALIFY JUDGE LINDSEY WYNNE" and in support thereof, respectfully shows the Court the following:

### I.    FACTUAL BACKGROUND

1.    That, Petitioner, TARIQ FAROOQ is the biological father of the four children in this divorce matter.

2.    That, Petitioner, TARIQ FAROOQ does not have any other children from any other relationship other than the four children from the relationship for this divorce matter.

3.    That, there is only one child under the age of eighteen in this matter: "M.T.A.F". The other three children/girls are ALL above the age of eighteen and are not the subject of this lawsuit.

4.    That, the parties biological special needs child ("M.T.A.F") suffers from a highly rare chromosomal condition right from birth termed as "Tetrasomy 18p" which is a chromosomal condition that affects many parts of the body. This condition usually causes feeding difficulties

in infancy, delayed development, intellectual disability that can be severe, changes in muscle tone, distinctive facial features, mental health issues including but not limited to abrupt changes in mood potentially resulting in violent outbursts and other birth defects.

5.      An original petition for Divorce was filed by the wife in this case on March 24, 2020.

6.      After a bench trial, the 468th District Court of Collin County, TX rendered the Final Judgment in this divorce matter (Case No. 468-51752-2020) on August 25, 2022.

7.      The Final Divorce Decree was signed by the Honorable Judge Lindsey Wynne on November 17, 2022.

8.      Petitioner filed a "Petition to Modify Parent Child Relationship" on December 07, 2023 with this court based on loss of employment and the mother's constant abuse of the special needs child by acting as a barrier to providing him with urgently needed mental health care; this was in addition to M.T.A.F. being in a severe state of emotional distress while being separated from his father as a solid legal basis for filing the Petition to Modify Parent Child Relationship by the Petitioner. This extreme mental and emotional distress of the special needs child has been invoked and exacerbated by Judge Wynne's repeated pattern of biased, prejudiced and one-sided rulings against the Father.

9.      A Final Jury Trial for the Motion to Modify Parent Child Relationship was held in this matter on June 26, 2024 through June 28, 2024.

10.     Petitioner has already requested in multiple pleadings that additional time be given to both parties for set Motions, considering that Petitioner Tariq Farooq has severe Tinnitus, nerve damage in his right ear which has resulted in a severe loss of hearing in addition to "Ringing in the Ears", "Hammer Like sounds", "Single Low or High Tone like sounds" which affect his ability to effectively hear and understand the various proceedings happening in the court thereby

impeding his ability to effectively represent himself Pro Se in court – therefore Petitioner Tariq Farooq needs more time to hear and understand what is being said in court – this constitutes a genuine medical disability under the Americans with Disabilities Act (ADA). In sworn testimony FAROOQ stated that headphones further confuse him – he needs extra time to compensate for his Tinnutis and hearing disability. All of these valid ADA accommodations have been arbitrarily denied by Judge Wynne.

11.    In the light of the above, Petitioner once again requests that extra time be given per side as a reasonable accommodation under the Americans with Disabilities Act (ADA) for the aforementioned legal reasons in all currently set and future hearings in this matter.

## II.    ARGUMENT AND AUTHORITIES

12.    The 468th District Court of Collin County, TX has a long and established history and pattern of judicial bias, judicial misconduct, official oppression, abuse of office and a clear history of perpetual one-side rulings against Petitioner TARIQ FAROOQ in complete violation of the judicial canons and the facts/evidence introduced in open court including but not limited to the following actions; for all of which TARIQ FAROOQ possesses irrefutable, undeniable, clear and convincing evidence beyond a reasonable doubt:

### Brief Summary of Systemic Judicial Judical Misconduct, Judicial Bias and Abuse of Office by the Honorable Judge Lindsey Wynne against TARIQ FAROOQ

#### a. *Coercion and Abuse of Office (April 21, 2021):*

During a **First Motion for Continuance** hearing on April 21, 2021, Judge Wynne coerced TARIQ FAROOQ into agreeing to sell his house, which was protected as his **separate property** under a **Post-Marital Agreement (PMA)**. This coercion occurred under duress when no discovery had been completed as his attorney had just joined the case a few days prior; Judge Wynne threatened to proceed with the final trial unless FAROOQ complied and agreed to sell the house in complete violation of his due process rights. This prejudicial and coercive behavior constitutes an egregious abuse of judicial power and raises serious questions about her impartiality in executing her ministerial duties as a District Court Judge.

**Legal Basis:** This action violates **Canon 3B(2) of the Texas Code of Judicial Conduct**, which requires judges to act impartially and without coercion. Relevant Case Law is cited below:

**Liteky v. United States, 510 U.S. 540 (1994):**

This case established that judicial bias occurs when a judge's actions display favoritism or prejudice. It emphasizes that personal bias or hostility can arise from a judge's conduct during court proceedings, and such bias undermines judicial impartiality. Judge Wynne's coercion, forcing FAROOQ to sell his separate property protected by a **Post-Marital Agreement (PMA)**, represents prejudice, bias and lack of impartiality.

**Canales v. State, 98 S.W.3d 690 (Tex. Crim. App. 2003):**

This case reaffirmed that judges must ensure fairness and refrain from coercing parties into making decisions under duress. Judge Wynne's forceful coercion of FAROOQ to sell his PMA-protected house (his separate property) violates the principles of fairness established in this case.

**In re Bell Helicopter Textron, Inc., 87 S.W.3d 139 (Tex. App.—Fort Worth 2002):**

A judge's abuse of discretion arises when decisions are made without supporting evidence or sound legal principles. Wynne's coercion, lacking legal support and forcing FAROOQ into an unwanted property sale, represents clear abuse of discretion.

### b. *Unlawful Freezing of Bank Accounts (August 25, 2022):*

In her **final trial ruling** on **August 25, 2022**, Judge Wynne ordered FAROOQ's bank accounts to be **frozen** without *any legal justification or any request from the opposing party*. This unlawful action prevented TARIQ FAROOQ from accessing funds essential for his life, raising serious concerns about her motives.

**Legal Basis**: This conduct violates **Article 16, Section 28 of the Texas Constitution**, which prohibits the unlawful deprivation of property without due process. Relevant Case Law is cited below:

**Fuentes v. Shevin, 407 U.S. 67 (1972):**

The U.S. Supreme Court held that individuals are entitled to notice and an opportunity to be heard before their property is seized. The freezing of FAROOQ's bank accounts without legal justification or proper notice violates the due process protections established in **Fuentes**.

**Riley v. California, 573 U.S. 373 (2014):**

The court ruled that law enforcement must obtain a warrant to search personal property, emphasizing that protections against unreasonable seizures apply even in non-criminal contexts. The principle that a warrant is needed for seizure extends to FAROOQ's bank accounts, which were frozen without due process.

## Sniadach v. Family Finance Corp., 395 U.S. 337 (1969):

The Supreme Court emphasized that property cannot be taken or withheld without proper legal process. This case supports the argument that freezing FAROOQ's bank accounts without a valid order violated his due process rights. This U.S. Supreme Court case is foundational in the area of due process protections against the seizure of assets. It held that prejudgment garnishment or freezing of assets without prior notice or a hearing violates due process rights, unless the seizure is based on an immediate legal justification, such as fraud or other exceptional circumstances. Judge Wynne froze FAROOQ's bank accounts without any opposing party asking for this and without any valid legal grounds related to the facts of the case.

## Connecticut v. Doehr, 501 U.S. 1 (1991):

The bank account assets freeze ordered by Judge Wynne mirrors the unconstitutional actions in **Doehr**, where the U.S. Supreme Court found that property cannot be seized without a valid hearing or legal justification. This clearly demonstrates Judge Wynne's actions were arbitrary and violated well-established procedural protections for property rights.

### c. *Repeated Hostile Courtroom Behavior and Biased Rulings by Judge Wynne (All throughout the pendency of the case since 2020):*

Including but not limited to during a **Motion to Compel Discovery** and several **Pre-Trial Motions** hearings, Judge Wynne repeatedly yelled and screamed at TARIQ FAROOQ at the top of her voice for making simple courtroom arguments and raising legitimate objections to opposing counsel's actions; Judge Wynne has repeatedly made visible gestures signaling CLEARLY VISIBLE HATE AND SCORN for FAROOQ including but not limited to facial expressions and her tone of voice. In just one example during the Motion to Compel Discovery Hearing on October 18, 2021, despite introducing voluminous evidence showing compliance with discovery requests, Judge Wynne blanketly and arbitrarily denied ALL of FAROOQ's motions including but not limited to October 18, 2021 and June 24, 2024 (Including FAROOQ's Motion to Compel Discovery against his ex-wife) while granting opposing counsel's requests (Including a Motion to Compel Discovery against FAROOQ), displaying clear favoritism, judicial bias and judicial misconduct. Additionally, Judge Wynne blanketly denied all relief to FAROOQ in the Emergency Temporary Orders hearing on February 02, 2024 despite introduced evidence of the child being depressed in the mother's care, confirmed risk of suicide by the Plano Childrens Hospital MHAT Team, the mother's repeated denial of consent to get mental

health care of the child and evidence of the mother's abuse towards the child by transporting him in unregistered uninspected vehicle without a seatbelt.

**Legal Basis:** This behavior violates **Canon 3B(4)**, which mandates judges to be patient, dignified, and courteous in their treatment of litigants. Relevant Case Law is cited below:

### Liteky v. United States, 510 U.S. 540 (1994):

This case reaffirmed that judicial behavior demonstrating bias or hostility can lead to disqualification if it shows a lack of impartiality. Judge Wynne's hostile behavior in the courtroom, including yelling and screaming at FAROOQ for raising legitimate objections, constitutes clear judicial bias and violates the standards outlined in **Liteky**. Judge Wynne repeatedly refused to recuse herself in multiple Motions for Recusal filed against her by FAROOQ.

### Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009):

A judge must recuse themselves when there is a significant risk of actual bias. Wynne's hostile behavior creates a reasonable perception of bias, making her actions unjustified under **Caperton**, which clearly rises way above and beyond the standard of *"appearance of bias"*.

### State v. Cox, 843 S.W.2d 147 (Tex. App.—Austin 1992):

Judges must refrain from using language or tone that can be perceived as hostility or bias. Judge Wynne's conduct of yelling and screaming at the top of her voice for simply voicing legitimate legal arguments and objections by FAROOQ clearly violates the judicial impartiality required by law.

### *d. Blocking and Suppression of Critical Evidence during Final Divorce Trial: Violation of Due Process (Including but not limited to May 3, 2022 & August 25, 2022 & June 24-26, 2024):*

Throughout the **final trial** of his divorce (May 2, 2022 and August 25, 2022) and final trial of the Motion to Modify Parent Child Relationship (June 24-26, 2024), Judge Wynne suppressed critical evidence, including but not limited to FAROOQ's **testimony, medical bills** and **testimony from creditors**. This suppression obstructed his right to a fair trial and demonstrates Judge Wynne's intentional willingness to manipulate judicial processes to favor one party (the wife) over another (FAROOQ). Relevant Case Law is cited below:

**Legal Basis:** Judge Wynne's actions contravene **Canon 3B(8)**, which mandates that judges ensure the right to be heard according to law.



**Brady v. Maryland, 373 U.S. 83 (1963):**

The U.S. Supreme Court held that the prosecution must disclose evidence that is favorable to the accused and material to guilt or punishment. Suppression of such evidence, whether intentional or not, violates the defendant's due process rights. The principle established in **Brady** applies broadly in both civil and criminal cases when material evidence is intentionally or negligently suppressed or blocked by any party. Judge Wynne repeatedly blocked and suppressed critical evidence and key witnesses in FAROOQ's case which violates the **Brady** doctrine, which requires full disclosure of material evidence.

**Strickler v. Greene, 527 U.S. 263 (1999):**

This case reaffirmed the **Brady** rule, emphasizing that suppression of material evidence that could have affected the outcome of a trial violates due process, regardless of whether the suppression was intentional; During the course of the last 4+ years of litigation in this case, Judge Wynne has repeatedly and intentionally blocked the admission of properly introduced evidence by FAROOQ which materially affected FAROOQ's case outcome; this constitutes suppression of critical evidence under the **Strickler** doctrine.

**Kyles v. Whitley, 514 U.S. 419 (1995):**

The Supreme Court held that the cumulative effect of suppressed evidence can violate due process even if each piece of evidence individually does not. The court ruled that the prosecution *or any party controlling evidence* must disclose all material favorable to the defense. Judge Wynne repeatedly suppressed multiple pieces of evidence and witnesses by granting Plano ISD's frivolous Motion to Quash on June 17, 2024 (thereby blocking critical testimony from Ms. Valerie Albright the Plano ISD Psychologist and Ms. Amy Biko, the parties special needs child "M.T.A.F.'s Special Ed. Teacher) and denying a First Motion for Continuance heard on June 24, 2024 due to critical expert witnesses being unavailable (thereby blocking testimony from Dr. Muhammad O. Majeed, M.T.A.F.'s Pediatrician and Ms. Joanne Davis, Psychiatry Clinical Therapist, Mental Health Assessment Team at Plano Childrens Hospital); the **Kyles** ruling applies in this case. A pattern of suppression of cumulative evidence by Judge Wynne that would have substantially changed the outcome constitutes clear judicial misconduct, systemic abuse of discretion, abuse of office and official oppression.

**In re Oliver, 333 U.S. 257 (1948):**

The Supreme Court held that every party in a judicial proceeding is entitled to a public trial and a fair opportunity to present their case. Suppression or withholding of evidence violates these due process rights. Blocking key evidence denies a party the opportunity to present their case fully, violating the **In re Oliver** doctrine. Judge Wynne's repeated blocking of FAROOQ's properly introduced evidence at the Final

Trial on June 24-26, 2024 rulings prevented FAROOQ from introducing critical evidence which amounts to suppression of critical evidence and witnesses.

**United States v. Bagley, 473 U.S. 667 (1985):**

The Court held that suppression of evidence is unconstitutional if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. The aforementioned blocked witnesses and suppressed evidence in FAROOQ's case would clearly have reasonably and substantially affected the outcome; **Bagley** provides strong precedent that this suppression by Judge Wynne clearly violated FAROOQ's due process rights.

**In re Marriage of C.A.S., 405 S.W.3d 373 (Tex. App.—Dallas 2013):**

In a family law context, this Texas appellate court reaffirmed that evidence suppression or blocking by a judge can lead to reversal if it prevents a party from fully presenting their case; Judge Wynne repeatedly suppressed key evidence in FAROOQ's family law case, the **In re Marriage of C.A.S.** ruling supports the claim that this suppression constitutes serious judicial misconduct.

**Elkins v. Superior Court, 41 Cal. 4th 1337 (2007):**

The California Supreme Court held that litigants in family law proceedings must have the opportunity to present evidence and testimony. Judicial rules or actions that unreasonably restrict evidence presentation violate due process. Judge Wynne imposed unreasonable restrictions on FAROOQ's ability to present evidence, **Elkins** shows that such suppression violates the fundamental principles of due process.

**Holmes v. South Carolina, 547 U.S. 319 (2006):**

The U.S. Supreme Court held that rules preventing a defendant from presenting evidence in their defense violate the Constitution's guarantee of due process. Judge Wynne repeatedly blocked or suppressed key evidence in FAROOQ's case favorable to him; This parallels the unconstitutional practices denounced in **Holmes**.

**Chambers v. Mississippi, 410 U.S. 284 (1973):**

The Supreme Court ruled that a state's refusal to permit the defendant to present witnesses or introduce crucial evidence violated his right to due process. FAROOQ was repeatedly denied the opportunity to present witnesses or crucial evidence by Judge Wynne. This case shows that such actions constitute serious due process violations by Judge Wynne.

**Banks v. Dretke, 540 U.S. 668 (2004):**

This case reinforced that the suppression of material exculpatory evidence violates due process, even when it involves evidence that might not seem crucial on its own. Multiple pieces of critical evidence and witnesses favorable to FAROOQ were blocked or suppressed by Judge Wynne, the cumulative effect of which falls under **Banks** and constitutes a serious due process violation.

**Texas Rules of Evidence (TRE) Violations:**

*TRE Rule 401 – Relevance*

Evidence is relevant if it makes any fact more or less probable than it would be without the evidence. As outlined above, Judge Wynne repeatedly suppressed critical witnesses and relevant evidence, which is a clear violation of **Rule 401**, as it hindered the court from considering all facts pertinent to the case.

*TRE Rule 403 – Excluding Relevant Evidence*

A judge may only exclude relevant evidence if its probative value is substantially outweighed by unfair prejudice, confusing the issues, or misleading the jury. Judge Wynne excluded evidence without meeting this standard, she violated **Rule 403**, constituting an improper suppression of relevant evidence.

*TRE Rule 802 – Hearsay*

Hearsay evidence is generally inadmissible unless it falls under an exception. Relevant non-hearsay evidence admissible under an exception was blocked and suppressed by Judge Wynne, which is violation of **Rule 802**.

As is clearly demonstrated in this point, the **Brady, Strickler, Bagley,** and **Chambers** cases all establish that the **suppression of evidence**, especially when it is material and would affect the outcome of the case violates **due process** and constitute **judicial misconduct. Judge Wynne** repeatedly blocked key witnesses and evidence favorable to FAROOQ; these rulings and actions show that her actions are clearly unlawful and constitute and egregious abuse of authority.

*e. Unjust Division of Assets and Arbitrary/Biased Ruling for Child Custody in the Final Divorce Trial (Signed on November 17, 2022):*

On November 17, 2022, Judge Wynne signed a ruling awarding the wife the entire proceeds of the house that had been forcefully sold for approximately $400,000 marital home (Reference: Point a. above) while granting TARIQ FAROOQ defunct LLCs burdened with hundreds of thousands of dollars in debt and foreclosed overseas properties; Judge Wynne arbitrarily and unjustly equated this division as being an equal distribution of assets in the marital estate division; *Judge Wynne falsely claimed that credible evidence had been admitted into evidence to this point when in actuality no evidence had been admitted that proved this arbitrary division of*

*the martial estate*. Additionally, Judge Wynne arbitrarily placed FAROOQ on a Standard Possession Order (SPO) **thereby significantly reducing the time spent by M.T.A.F. with his father (the one person and parent on the planet that he shares a super-strong bond with – a bond that is exponentially greater by orders of magnitude to any other relationship that the special needs child has)**; both parties had been 50/50 parents with equal time for the children with no change in circumstances for 34+ months. Additionally, Judge Wynne granted exclusive passport holding, medical and educational decision making rights of the special needs child to the mother who has since repeatedly abused these rights to consistently act as a barrier against providing urgently needed mental and medical health care to the child – this constitutes serious child abuse by the mother. This ruling was in complete violation of the PMA, the best interest of the child standard, facts and evidence introduced in the case, case law and common law leaving FAROOQ in a dire financial and parental predicament; the special needs child suffers from severe separation anxiety disorder (while being away from his father) and is in deep state of emotional distress being away from his father causing him severe and irreparable harm to his mental health as a direct consequence of Judge Wynne's arbitrary and illegal actions – this factum is thoroughly documented in hundreds of audios and video evidence collected by the Father; Judge Wynne in a furtherance of her egregious and arbitrary rulings has now blocked the father from collection of such audio/video evidence in complete violation of the law in her memorandum ruling issued on August 20, 2024.

**Legal Basis**: This ruling showcases a blatant disregard for the law and ethical judicial conduct by Judge Wynne, violating **Canon 3B(2)**. Relevant Case Law is cited below:

### Liteky v. United States, *510 U.S. 540 (1994)*

> The U.S. Supreme Court emphasized that judges must be impartial and avoid favoritism or bias. Judicial bias can manifest through personal animosity or prejudice towards a party, resulting in unfair rulings. This case sets a precedent for claiming that a judge's biased rulings can lead to a reversal of decisions and calls for recusal.

### Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009):

> The Supreme Court held that due process requires recusal of judges where there is a significant risk of actual bias. The case involved a judge who failed to recuse himself despite substantial campaign contributions from a party involved in the litigation. Judge Wynne repeatedly exhibited bias as a pattern of illegal behavior against FAROOQ which he believes are in direct and open retaliation to his legitimate protests against her.

### United States v. Hasting, 461 U.S. 499 (1983):

> The Court ruled that a judge's improper comments during trial could lead to the conclusion that the proceedings were fundamentally unfair, violating due process. Multiple inappropriate remarks and conduct by Judge Wynne clearly indicates bias and unfair towards FAROOQ.

**In re McBryde, 117 F.3d 208 (5th Cir. 1997):**

This case discusses the abuse of discretion in judicial conduct and how patterns of arbitrary behavior can lead to disciplinary action against a judge. Judge Wynne's repeated actions demonstrate a pattern of arbitrary, biased and prejudiced rulings against FAROOQ. **McBryde** provides a framework for outlining Judge Wynne's improper judicial conduct.

**Eisenstadt v. Baird, 405 U.S. 438 (1972):**

The Court ruled that government actions that create a disparity in treatment based on arbitrary distinctions violate equal protection under the law. Judge Wynne's rulings within a government capacity clearly created unfair disparities for FAROOQ which is a clear demonstration of her arbitrary, punitive and retaliatory decision-making.

**In re T.G., 105 S.W.3d 930 (Tex. App.—Waco 2003):**

The court emphasized that judges must maintain a fair and impartial demeanor. Any actions that demonstrate bias may lead to judicial misconduct findings. This case supports FAROOQ's assertion that biased rulings by Judge Wynne indicate severe judicial misconduct. Judge Wynne was repeatedly making intimidating faces to FAROOQ in the Final Jury Trial of the Motion to Modify Parent Child Relationship held on June 24-26, 2024, when he was engaged in legitimate cross-examination of his ex-wife as a witness; These actions by Judge Wynne along with allowance of improper evidence by opposing counsel clearly prejudiced the Jury against FAROOQ. Judge Wynne was also crying and dabbing her eyes when FAROOQ's ex-wife and daughters (adverse witnesses to FAROOQ) were testifying against him – this testimony contained multiple counts of shifting stories and proven aggravated perjury by the mother of the children (*The multiple proven counts of aggravated perjury constitutes intrinsic fraud upon the court by the ex-wife*). Additionally, Judge Wynne allowed improper testimony and evidence, for which no proper foundation had been laid by opposing counsel despite FAROOQ's objections and which predated the date of filing of the Motion to Modify Parent Child Relationship (filed on Dec 07, 2023) by many years. These actions by Judge Wynne constitute clear judicial bias, judicial misconduct, official oppression and abuse of office by Judge Wynne against FAROOQ.

**Gonzalez v. State, 148 S.W.3d 702 (Tex. App.—Austin 2004):**

The court highlighted the necessity for judges to provide a fair opportunity for all parties to present their case. A failure to do so constitutes judicial misconduct. Judge Wynne repeatedly restricted FAROOQ's ability to present evidence and subsequently made arbitrary and biased rulings which supports FAROOQ's claims of unfair treatment by Judge Wynne.

**Bocquet v. Herring, 972 S.W.2d 19 (Tex. App.—Dallas 1998):**

> The Texas court ruled that judges must act impartially and any biased behavior or arbitrary rulings could constitute grounds for appeal. This case reinforces the importance of impartiality and provides a basis for challenging Judge Wynne's arbitrary rulings.

**Ex parte O'Connor, 128 S.W.3d 679 (Tex. App.—Austin 2004):**

> The court stated that a trial judge's bias can affect the outcome of a case and result in a violation of due process. Judge Wynne's repeated bias clearly affected the outcome of FAROOQ's case against him.

**Johnson v. State, 256 S.W.3d 670 (Tex. App.—Houston 2008):**

> The court ruled that a judge's actions, if influenced by personal biases, violate the fairness requirements established by law. Judge Wynne's repeated pattern of biased decisions fall under this case law.

The cases listed in this point above provide a robust foundation for claims of **arbitrary** and **biased rulings** by Judge Wynne against FAROOQ which constitute Judicial Misconduct and Abuse of Office. They highlight the importance of judicial impartiality and due process. As is clearly shown above, **Judge Wynne's** actions reflect a pattern of prejudice, bias and/or arbitrary decision-making against FAROOQ at the expense of the well-being of a special needs child with Mental Health issues and violent tendencies/outbursts.

### f. Pre-Trial Motions Heard Just Two Days Before Final Trial (June 24, 2024):

On June 24, 2024, just **two days before the final trial**, Judge Wynne despite FAROOQ's objections held pre-trial motions that severely limited his ability to adequately prepare for the Final trial. Despite his requests for additional time due to the compressed schedule, expansive/voluminous evidence and his hearing disabilities, Judge Wynne arbitrarily denied ALL of his Pre-Trial Motions (*Every single one of them*) including a First Motion for Continuance, since multiple witnesses including expert witnesses were unavailable on June 26, 2024 and a Motion for Extra Time based on the volume of evidence and FAROOQ's Tinnutis and hearing disabilities, further prejudicing the outcome of the case. Relevant Case Law is cited below:

**Legal Basis**: This rushed schedule denied TARIQ FAROOQ a fair opportunity to prepare, violating **Canon 3B(8)**, which requires judges to ensure that parties are heard in a manner consistent with the law. Relevant Case Law is cited below:

**Goss v. Lopez, 419 U.S. 565 (1975):**

> The Supreme Court held that individuals are entitled to adequate time and notice to prepare for hearings. By scheduling pre-trial motions two days before the final trial,

Judge Wynne violated FAROOQ's rights to proper notice and preparation as outlined in **Goss**.

**Gonzalez v. State, 148 S.W.3d 702 (Tex. App.—Austin 2004):**

The court emphasized that a lack of time to prepare for a hearing can amount to a denial of due process. The limited time given to prepare for the Final Trial violates the due process standards set by **Gonzalez**.

### g. *Retaliatory, Arbitrary, Biased, Prejudiced and Punitive Rulings in Motion to Modify Parent-Child Relationship (December 2024 – Present Day):*

FAROOQ believes that Judge Wynne's perpetual actions of judicial bias, judicial misconduct, judicial abuse of office and official oppression are clear retaliation to FAROOQ's protests (spanning 42 days) outside the **Collin County Courthouse** against Judge Wynne's judicial misconduct, FAROOQ filed a motion to recuse her from his case on March 20, 2023 and March 27, 2024. FAROOQ referred to his protests in his Motion to Recusal in addition to clear bias against FAROOQ and favoritism for the ex-wife. Judge Wynne refused to recuse herself and instead referred FAROOQ's recusal motion to the First Administrative Judge who denied them, effectively rubber-stamping Judge Wynne's judicial misconduct. FAROOQ subsequently appealed this decision to the First District Court of Appeals, TX which was dismissed based on the fact that the Final Ruling had not been issued in this matter (Interlocutory Orders are not appealable in Texas). **In the** Motion to Modify the Parent-Child Relationship Final Trial held on June 24-26, 2024, Judge Wynne ignored **voluminous evidence** admitted in his favor and issued a highly punitive and retaliatory ruling that placed TARIQ FAROOQ on **supervised visitation** with his special needs child. The cost of each supervised visit is approximately $375, which FAROOQ cannot afford due to him being unemployed, living on welfare and his extremely dire financial situation all of which was introduced at final trial as irrefutable undeniable evidence. It was proven that the mother of the child committed aggravated perjury on multiple counts during the Final Jury Trial which constitutes intrinsic fraud upon the court; Judge Wynne ignored all of this critical evidence. Furthermore, Judge Wynne **imputed speculative earnings** to TARIQ FAROOQ despite his illegal termination from his employer as an internal whistleblower, his persistent efforts to seek further employment, his known financial hardships and debts of hundreds of thousands of dollars. Furthermore, Judge Wynne's memorandum ruling issued on August 20, 2024 is based on complete falsehoods and fabrications that are not supported by the facts or the evidence. This reflects a pattern of retaliatory behavior that further clearly demonstrates a pattern of **systemic judicial misconduct, abuse of office and judicial bias** by Judge Wynne against TARIQ FAROOQ: By issuing this arbitrary ruling, Judge Wynne has now effectively curtailed FAROOQ's ability to collect critical evidence documenting the natural organic behavior of a special needs child with mental health issues and violent tendencies/outbursts.

**Legal Basis**: Judge Wynne's punitive and retaliatory actions constitute an abuse of discretion and violate **Canon 3B(2)**, which mandates impartial rulings based on law and evidence. Additionally, such retaliation and punitive actions/rulings by Judge Wynne violates the ethical

standards of impartiality and integrity required of judges under **Canon 3B(5)**. Relevant Case Law is cited below:

**Troxel v. Granville, 530 U.S. 57 (2000):**

The court emphasized the importance of parental rights in child custody cases and ruled against arbitrary interference by courts. Judge Wynne's punitive ruling to impose costly supervised visitation in complete violation of the admitted evidence and case law egregiously violates FAROOQ's fundamental parental rights as established in **Troxel**.

**Lehr v. Robertson, 463 U.S. 248 (1983):**

Parental rights are a fundamental liberty interest, and courts must act in the best interests of the child while respecting these rights. Judge Wynne's memorandum ruling issued on August 20, 2024 placing restrictions on FAROOQ collecting video evidence documenting natural organic behavior of a special needs child *who is not entirely in control of his actions*, speculative imputation of earnings and punitive supervised visitation costs contradicts FAROOQ's parental rights and the best interest standard outlined in **Lehr**.

**Anderson v. City of Bessemer City, 470 U.S. 564 (1985):**

The U.S. Supreme Court held that a court's findings of fact must be supported by evidence, and if they are based on falsehoods or unsupported conclusions, they are clearly erroneous and must be overturned. Judge Wynne's memorandum ruling, which was based on falsehoods and fabrications and not supported by the evidence, constitutes judicial misconduct under **Anderson**, warranting a correction or reversal of her decision.

**United States v. United States Gypsum Co., 333 U.S. 364 (1948):**

The U.S. Supreme Court ruled that a trial court's factual findings are "clearly erroneous" when, although there is evidence to support them, the reviewing court is left with the definite and firm conviction that a mistake has been made. Judge Wynne's findings in the memorandum ruling, being based on falsehoods and fabrications rather than the evidence presented at trial, represent "clearly erroneous" findings as defined in **Gypsum**.

**McCoy v. Texas Instruments, Inc., 183 S.W.3d 548 (Tex. App.—Dallas 2006):**

This Texas appellate decision emphasized that a trial judge's rulings must be based on the evidence presented, and when a ruling reflects arbitrary findings or fabrication of facts, it constitutes an abuse of discretion. The memorandum ruling issued by Judge Wynne, containing fabricated and unsupported facts, demonstrates an intentional and egregious abuse of discretion under the standard set by **McCoy**.

**El Paso Natural Gas Co. v. Minco Oil & Gas Co., 8 S.W.3d 309 (Tex. 1999)**:

The Texas Supreme Court ruled that when a trial judge bases a decision on misrepresentation or erroneous facts, it is a clear abuse of discretion. Judge Wynne's ruling, filled with misrepresentations and errors, aligns with the standard for an abuse of discretion as established in **El Paso Natural Gas Co.**.

**Hutchinson v. Proxmire, 443 U.S. 111 (1979)**:

The Supreme Court recognized that when false or fabricated information is used in a legal setting, it can constitute defamation and judicial misconduct. Judge Wynne's reliance on falsehoods and fabrications in her ruling violates the legal principles of fairness and truthfulness, as recognized in **Hutchinson**.

**In re Marriage of C.A.S., 405 S.W.3d 373 (Tex. App.—Dallas 2013)**:

A court's factual findings must be based on the preponderance of the evidence, and failure to base rulings on factual evidence constitutes judicial error. The memorandum ruling issued by Judge Wynne, which was not based on the preponderance of evidence but rather on fabricated statements and conclusions, violates the standards for proper judicial findings as outlined in **In re Marriage of C.A.S.**.

**Flowers v. Flowers, 407 S.W.3d 452 (Tex. App.—Houston 2013)**:

Courts must make findings consistent with the evidence presented. Any deviation or falsehood in the court's ruling can lead to a reversal for being unsupported by the facts. Judge Wynne's reliance on falsehoods, fabrications, and unsupported conclusions not grounded in the facts is inconsistent with the legal standards set forth in **Flowers**, supporting FAROOQ's claims of judicial error and misconduct.

**h. _Arbitrary Seizure of FAROOQ's Cell Phone Without Warrant during Pre-Trial Motions (June 24, 2024)_:**

During the pre-trial motions heard on **June 24, 2024**, **TARIQ FAROOQ**, a **pro se litigant**, was allowed to use his cell phone to access his **legal notes, case files, the Texas Rules of Civil Procedure (TRCP), and relevant case law**, just as any attorney would be allowed to use legal materials in the courtroom. However, during the hearing, **Judge Wynne** abruptly arbitrarily

placed FAROOQ under oath, under the pretense of asking whether he was recording the hearing. Following this, the court's bailiff commandeered and temporarily seized FAROOQ's phone without a warrant and without FAROOQ's consent and forced him to use facial recognition to unlock it, all of which was done **without a seizure warrant** or lawful basis. This act by the court constituted an **illegal search and seizure** and violated FAROOQ's rights as a **pro se litigant** to access his own legal materials. The phone was used strictly for legal purposes, and there was no legitimate suspicion or legal justification for its confiscation and inspection.

**Legal Basis**: Judge Wynne's punitive and retaliatory actions constitute an abuse of discretion and violate **Canon 2A**, which mandates that a judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. **Judge Wynne** violated **Canon 2A** by authorizing an **illegal seizure** of the phone, undermining public confidence in the integrity of the judicial process. The judge must comply with constitutional protections, including the **Fourth Amendment**. Relevant Case Law is cited below:

**Riley v. California, 573 U.S. 373 (2014):**

> The U.S. Supreme Court held that searching the contents of a cell phone without a **warrant** is unconstitutional, even during an arrest. The Court ruled that cell phones contain vast amounts of personal data, and a warrant is required for searches. In the case of **FAROOQ**, the **seizure of the phone without a warrant** for the purpose of checking for recordings violated the **Fourth Amendment** right against unreasonable searches and seizures. This precedent firmly establishes that a warrant is required before a phone can be seized or searched.

**United States v. Jones, 565 U.S. 400 (2012):**

> The Court ruled that attaching a GPS device to a vehicle without a warrant constitutes an illegal search under the **Fourth Amendment**, as it is a form of government intrusion on private property. In **FAROOQ's** case, the **bailiff's physical seizure** of the phone, at **Judge Wynne's direction**, constitutes an unlawful government intrusion into **Farooq's personal property** without a warrant, violating the same principle as in **Jones**.

**Katz v. United States, 389 U.S. 347 (1967):**

> The Supreme Court held that the Fourth Amendment protects people, not places, and a warrant is required when there is a **reasonable expectation of privacy**. **FAROOQ** had a reasonable expectation of privacy over the contents of his phone. The **seizure without a warrant** violated his **reasonable expectation of privacy**, making the action unconstitutional under **Katz**.



**Byars v. United States, 273 U.S. 28 (1927):**

> The Court held that any government search or seizure without a **proper warrant** is an illegal invasion of a person's rights under the **Fourth Amendment**. The seizure of **Farooq's phone** without probable cause or a warrant clearly violates the constitutional protections established by **Byars**.

**New Jersey v. T.L.O., 469 U.S. 325 (1985):**

> The U.S. Supreme Court ruled that searches conducted by government officials (including school officials) are subject to the **Fourth Amendment**, and any search or seizure must be reasonable. In **FAROOQ's** case, the actions of **Judge Wynne** and the **bailiff** are governed by the **Fourth Amendment**. The seizure was unreasonable as it lacked both a **warrant** and **probable cause**, thus violating constitutional protections.

### i. _Deliberate and Repeated Failure to Consider Evidence of Child's Best Interests resulting in Serious IRREPARABLE HARM to the Special Needs Child:_

Throughout the proceedings, Judge Wynne failed to consider the significant evidence presented regarding the best interests and welfare of his special needs child, M.T.A.F; Her rulings have negatively impacted his child's emotional mental health, well-being and safety, reflecting a blatant disregard for the best interests of the child, which is a fundamental principle in family law. Judge Wynne's repeated and perpetual illegal actions have resulted in serious harm to FAROOQ's special needs child, M.T.A.F., who was born with **Tetrasomy 18p and _has a very very very strong bond with his father_** – the strongest bond on the planet for both of them. FAROOQ has repeatedly proved that he has always been a 100/100 father in every respect: education, health and emotional/learning/personal development and learning for his special needs child. _To summarize M.T.A.F. is HAPPY with his father and DEPRESSED to be away from him (Thorough evidence was admitted during Final Trial to this factum) – As a Family Law Judge, wouldn't you want a special needs child with mental health issues and a documented history of violence to be happy???_ FAROOQ believes that Judge Wynne's repeated pattern of punitive, biased and one-sided rulings is open and clear retaliation against FAROOQ's protests, including costly supervised visitations and imputed speculative earnings which, will severely damage his ability to maintain a relationship with his child and provide for his needs. Judge Wynne's refusal to consider the voluminous evidence presented regarding the special needs child's welfare has placed M.T.A.F. in a severe state of emotional distress. Judge Wynne has repeatedly granted the mother exclusive rights in every respect: educational, medical etc. Mother has repeatedly abused these rights to constantly act as a barrier for providing any kind of mental health care access to the special needs child; Judge Wynne has effectively enabled the mother by giving her exclusive medical and educational decision making rights to egregiously abuse M.T.A.F. who is severely disabled by Tetrasomy 18p.

**Legal Basis:** This failure to consider relevant evidence constitutes misconduct under **Canon 3B(2)** and effectively reflects judicial corruption, abuse of office and egregious judicial misconduct in Judge Wynne's decision-making process. Relevant Case Law is cited below:

**In re Marriage of Anderson, 103 S.W.3d 888 (Tex. App. 2003):**

> This case discussed the importance of evidence in family law matters, particularly concerning the best interests of the child. Judge Wynne's failure to consider voluminous evidence regarding the special needs child's welfare shows a clear misuse of her judicial and ministerial duty, egregiously undermining the child's best interests.

**In re Fuentes, 819 S.W.2d 806 (Tex. App. 1991):**

> This case emphasizes that judges must consider changes in circumstances in custody matters, particularly the welfare of children. Judge Wynne's failure to consider the significant evidence regarding the special needs child's welfare during critical rulings reflects a blatant disregard for established judicial principles.

**Williams v. State, 686 S.W.2d 353 (Tex. App. 1985):**

> This case involved issues of judicial bias and improper influence on the proceedings, emphasizing the need for a fair trial. The events leading up to, during and after the trial clearly highlight similar judicial bias and judicial misconduct by Judge Wynne. Moreover, Judge Wynne waited for almost 2 months after the Final Jury Trial held on June 24-26, 2024 to issue a Court's memorandum ruling thereby placing FAROOQ on supervised visitation for his special needs son; Supervised Visitations are drastic measures and are generally ordered to avoid immediate, unwanted and serious harm to the children – in this case, Judge Wynne's supervised visitation after almost 2 months clearly indicate that this ruling is punitive, retaliatory and not a reflection of the facts/evidence introduced during Final Trial.

### j. *Delay and Obstruction of Appeal Process by Blocking Access to Court Reporter Transcripts (September 2024 – Present Day):*

Judge Wynne has allowed unethical, frivolous and meritless objections by court reporters Robin Benton and Carolyn England without any formal motions or evidence to effectively block FAROOQ's access to **Court Reporter Transcripts**, which he needs for his appeal as an indigent litigant. Despite the lack of a formal Motion filed by the court reporters or even a scintilla of evidence presented by them, Judge Wynne has obstructed FAROOQ's right to a fair appeal by delaying and effectively blocking his transcripts by granting a hearing to absolutely frivolous objections filed by the aforementioned court reporters who seek to illegally shift the burden of proof to FAROOQ *when the burden clearly rests with them to prove that FAROOQ is not indigent.*

**Violation of Canon 3B(2):** By enabling the obstruction of FAROOQ's access to necessary court transcripts for his appeal, Judge Wynne is delaying and effectively denying his right to pursue a

meaningful appeal and violating his due process rights. Case Law for this is cited in the "Arguments and Authorities" section below.

### k. Improper Evidence by opposing counsel Repeatedly Allowed by Judge Wynne (Final Trial of Divorce on May 3, 2022 and August 25, 2022 and Final Jury Trial of Motion to Modify Parent Child Relationship on June 24-26, 2024):

**Judge Wynne** allowed **opposing counsel** to introduce **improper evidence** that had never been exchanged prior to discovery, violating the rules of civil procedure and fair process in the Final Jury Trial of Motion to Modify Parent Child Relationship on June 24-26, 2024 – these egregious actions effectively prejudiced the Jury against FAROOQ. The alleged evidence and testimony improperly admitted by Judge Wynne against FAROOQ's repeated objections in open court also egregiously predated the Motion to Modify Parent Child Relationship (which was filed on December 7, 2023) in some instances by many years. Admitting such evidence, which did not directly pertain to the time period relevant to the motion, further compounded the judicial misconduct by Judge Wynne. *Allowing such evidence violated the Texas Rules of Civil Procedure, as well as judicial standards of fairness, impartiality, and due process.*
**Legal Basis:** Judge Wynne's actions constitute an abuse of discretion and violate **Canon 2A**, which mandates that a judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Relevant Case Law and Authorities are cited below:

#### TRCP Rule 193.6 – Failure to Timely Respond or Supplement Discovery:

> **Rule 193.6** states that a party **may not introduce evidence** that was not disclosed during discovery unless there is **good cause** for the failure to timely supplement the discovery responses or it will not unfairly surprise or prejudice the other party. **Judge Wynne** violated **Rule 193.6** by allowing the introduction of evidence that was not exchanged prior to discovery. In fact, Judge Wynne was effectively acting as an attorney for the ex-wife by repeatedly subjecting him to contentious questions on DropBox – FAROOQ clearly demonstrated that the DropBox link provided by opposing counsel was expired and he was unable to access the discovery documents; FAROOQ repeatedly showed this to Judge Wynne which she ignored (*FAROOQ is not responsible for making sure that opposing counsel's discovery documents are not expired and work as they should – that is opposing counsel's responsibility*). There was no **good cause** shown for the failure to disclose this evidence by opposing counsel, nor was any explanation provided for the late submission right during the Final Jury Trial. This action resulted in unfair surprise and prejudice against FAROOQ, preventing him from properly defending himself against evidence he had no knowledge of; This TRCP violation demonstrates judicial misconduct by Judge Wynne for admitting evidence in violation of discovery rules.

**TRCP Rule 215 – Sanctions for Abuse of Discovery:**

**Rule 215** allows a court to impose sanctions when a party fails to comply with discovery rules. These sanctions include **excluding evidence** that was not properly disclosed during discovery. By not excluding the improperly disclosed evidence and failing to impose any **sanctions** on opposing counsel for not adhering to discovery rules, **Judge Wynne** disregarded **Rule 215.** This deprived FAROOQ of the protection the rule affords litigants who face surprise or prejudicial evidence during trial. The failure to enforce sanctions under **Rule 215** further demonstrates judicial misconduct and a lack of impartiality by Judge Wynne.

**Alvarado v. Farah Mfg. Co., 830 S.W.2d 911 (Tex. 1992):**

The Texas Supreme Court ruled that evidence not disclosed during discovery should be excluded unless the party offering the evidence can show **good cause** or that the failure to disclose was harmless. Judge Wynne allowed evidence that was never exchanged in discovery and for which no **good cause** was shown, violating the principles established in **Alvarado.** This case supports the exclusion of the improperly admitted evidence.

**State v. Wesbrook, 29 S.W.3d 103 (Tex. Crim. App. 2000):**

The court emphasized that evidence introduced at trial must be properly disclosed during the discovery phase. Any evidence that is not disclosed may result in unfair surprise and should be excluded. **Wesbrook** supports the argument that **Judge Wynne** should have excluded the improperly introduced evidence, as allowing it created unfair surprise and violated **discovery rules.**

**In re R.A.L., 291 S.W.3d 438 (Tex. App.—Texarkana 2009):**

This case discussed the exclusion of evidence that was not exchanged prior to trial in compliance with discovery obligations. The court held that failure to comply with discovery rules warrants exclusion of such evidence. **In re R.A.L.** directly applies to **Judge Wynne's** decision to admit evidence that was never exchanged during discovery. The ruling in this case illustrates how such evidence should have been excluded by Judge Wynne under Texas law to prevent unfair prejudice.

**Fort Brown Villas III Condominium Ass'n, Inc. v. Gillenwater, 285 S.W.3d 879 (Tex. 2009):**

The Texas Supreme Court reinforced that trial courts must not allow evidence that was not exchanged during discovery, especially when its admission would result in unfair surprise or prejudice to the opposing party. **Judge Wynne's** intentional decision to admit evidence not previously disclosed despite FAROOQ's objections

violated this precedent. **Gillenwater** supports the argument that improperly introduced evidence should be excluded to prevent unfair advantage.

### Ford Motor Co. v. Castillo, 444 S.W.3d 616 (Tex. 2014):

This case emphasizes that parties are entitled to rely on discovery disclosures, and trial courts must enforce compliance with discovery rules to prevent surprise and unfairness at trial. **Judge Wynne's** allowance of undisclosed evidence violated the reliance on fair discovery, as described in **Castillo**, leading to an imbalance in the proceedings and denying **Tariq Farooq** his due process rights.

### l. *Less/Unequal Time Allotted to FAROOQ during various hearings (February 02, 2024 – June 26, 2024):*

Judge Wynne consistently deprived **FAROOQ** of his allocated time during various hearings in the **Motion to Modify Parent-Child Relationship** proceedings. The judge used various tactics to run out Farooq's time, including asking irrelevant questions and allowing opposing counsel to take up his time. This pattern of behavior violated Farooq's due process rights and the principle of providing **equal time** to both parties. These violations were observed during multiple hearings, including the Emergency Temporary Orders Hearing on February 2, 2024, Pre-Trial Motions on June 24, 2024, and the Final Jury Trial from June 24-26, 2024.

**Legal Basis**: Judge Wynne's punitive and retaliatory actions constitute an abuse of discretion and violate Canon 2A in addition to violating Canon 3B(8): Failing to ensure that Farooq had an adequate opportunity to present his case; Canon 3B(4): Failing to treat Farooq with fairness and respect; Canon 3B(5): Displaying or allowing the appearance of bias. Canon 3B(2): Failing to uphold legal standards by disregarding procedural fairness. Canon 2A: Undermining public confidence in judicial impartiality. Relevant Case Law and authorities are cited below:

### In re Murchison, 349 U.S. 133 (1955):

The U.S. Supreme Court held that judges must ensure that all parties receive a **fair hearing**. Any conduct by the judge that undermines the fairness of the proceeding—such as bias, favoritism, or manipulation of time—violates due process. **Judge Wynne's** repeated actions of starving **Farooq** of his time, particularly by asking irrelevant questions and running down the clock while allowing opposing counsel to present arguments, violates the principle of a **fair hearing** under **Murchison**. The judge's behavior denied Farooq his right to present his case fully by starving him of his allotted time.

### Mathews v. Eldridge, 424 U.S. 319 (1976):

This case established the **three-factor balancing test** for procedural due process, including the individual's interest, the risk of erroneous deprivation of such interest through the procedures used, and the government's interest. The Court emphasized

the importance of procedural fairness, including the opportunity to present evidence. Denying **Farooq** equal time to present his case deprived him of his right to a **meaningful hearing**, a core requirement under **Mathews v. Eldridge**. Running down **Farooq's** time through irrelevant questioning and biased conduct increases the **risk of erroneous deprivation** of his parental rights.

**Sykes v. State, 285 S.W.3d 327 (Tex. App.—Fort Worth 2009):**

This Texas case reiterated that judges must allow parties a fair opportunity to present their cases without arbitrary restrictions or time limitations. A judge's role is to ensure equal treatment and that both parties have the opportunity to present their arguments fully. By allowing opposing counsel to take up **Farooq's** time, while asking irrelevant questions that further shortened his allocated time, **Judge Wynne** violated the principle set out in **Sykes**. The failure to provide both parties with equal opportunity to present their case constitutes judicial misconduct and a violation of due process.

**United States v. Cronic, 466 U.S. 648 (1984):**

The U.S. Supreme Court held that depriving a party of a **meaningful opportunity** to participate in legal proceedings, including limiting their time to present evidence or arguments, can result in a due process violation. **Cronic** supports that **Farooq** was denied his due process rights when **Judge Wynne** deprived him of the time necessary to present his arguments and defense adequately. This deprivation prevented **Farooq** from fully participating in the hearings and trial.

**Pirtle v. Gregory, 629 S.W.2d 919 (Tex. 1982):**

The Texas Supreme Court ruled that **procedural fairness** is essential in all legal proceedings, and both parties must be allowed to present their case. Any actions by the judge that create an **unequal balance** between the parties violates the rights of the disadvantaged party. **Judge Wynne's** actions in controlling the time allotted to **Farooq** violated the principle established in **Pirtle**. By allowing the opposing counsel to dominate the time and asking irrelevant questions that wasted **Farooq's** time, Judge Wynne created an **unequal balance**, violating procedural fairness.

**In re S.M.T., 241 S.W.3d 831 (Tex. App.—Beaumont 2007):**

This case held that courts must ensure equal treatment of both parties, especially in family law matters, where the stakes are high (e.g., child custody). Failure to provide equal time to present arguments or evidence can result in a reversal. In **FAROOQ's** case, the unequal allocation of time to present his case in the custody proceedings violates the principles set forth in **In re S.M.T.**. The judge's improper management of the hearing time prejudiced **Farooq's** ability to defend his parental rights, resulting in a violation of due process.

**Texas Rules of Civil Procedure (TRCP) Violated:**

### TRCP Rule 166 – Pretrial Conferences

Under **Rule 166**, the court must conduct pretrial conferences to ensure that cases are managed efficiently and fairly, including setting proper time allocations for hearings. **Judge Wynne** violated this rule by failing to manage time fairly during hearings. The judge allowed **Farooq's** time to be wasted through irrelevant questioning and gave opposing counsel more time than **Farooq**, violating the fairness principle in **Rule 166**.

### TRCP Rule 245 – Assignment of Cases for Trial

**Rule 245** requires that parties receive reasonable notice and time to prepare for trial, with each party being afforded equal opportunity to present their case. By depriving **Farooq** of equal time and allowing irrelevant questioning to eat up his time, **Judge Wynne** violated **Rule 245**, which mandates that both parties be given fair and reasonable opportunities to present their arguments.

## m. *Repeated Denial of ADA Accommodations (February 2024 – Present Day):*

FAROOQ requested **before and during additional time during the final trial** due to FAROOQ's hearing disability (tinnitus and severe hearing loss), which significantly impacts his ability to follow, respond and make the necessary objections during court proceedings. FAROOQ in a pre-trial motion on June 24, 2024 requested just an extra 5 hours for the Final Jury Trial held on June 24-26, 2024 due to the complexity of the case, the voluminous evidence and his Tinnutis and Hearing Disability. Judge Wynne repeatedly denied his request for **ADA accommodations** and offered him a headphone instead, which did not address his hearing disability. FAROOQ repeatedly advised Judge Wynne that headphones would further confuse him due to his asymmetric auditory processing due to Tinnutis (Ringing, Beeping, Hammer Like Sounds in FAROOQ's head) and Hearing Loss in his right ear. Despite FAROOQ repeatedly asking all parties to speak slowly and clearly in the microphones both opposing counsel and Judge Wynne on numerous occasions continued to speak rapidly, in low tones outside the microphones resulting in severe loss of understanding the court's proceedings for FAROOQ thereby making the Final Jury Trial one big ADA violation.

**Violation of Federal ADA Law**: Judge Wynne's denial of FAROOQ's request for reasonable accommodations for extra time violates **Title II of the Americans with Disabilities Act (ADA)**, which mandates accommodations for disabilities in public services, including court proceedings.

### Tennessee v. Lane, 541 U.S. 509 (2004):

The Supreme Court ruled that Title II of the Americans with Disabilities Act (ADA) applies to state courts, requiring them to provide reasonable accommodations for disabled individuals. FAROOQ believes that Judge Wynne abused her authority and retaliated against FAROOQ for his legitimate protests by blanketly denying relief for

his requested ADA accommodations for extra time due to his hearing disability; she violated FAROOQ's rights under the **ADA**, as established in **Tennessee v. Lane**.

***Pulliam v. Allen, 466 U.S. 522 (1984):***

The Supreme Court determined that judges could be subject to injunctive relief when their actions violate constitutional rights, including violations under the ADA or retaliation against a litigant. Judge Wynne's retaliatory actions and punitive rulings following FAROOQ's protests, violated his constitutional ADA rights; **Pulliam** supports the argument that FAROOQ could seek injunctive relief and hold her accountable for violating his rights.

### n. *Court gave a hearing to Respondent without ANY Motion for Entry filed – Egregious Violations of TRCP, Case Law, Federal Law, Judicial Canons by the Court:*

In yet another blatant abuse of discretion, judicial misconduct and egregious violations of TRCP, Case Law, Federal Law, Judicial Canons by the Court, the court gave an in-person formal hearing for a non-existent Motion for Entry on October 10, 2024. This hearing was later converted by the court to By-Submission which is still in process – *all of this was granted by the court with no formal motion filed the Respondent's Attorney within the 45 day period mandated by the court – in fact, Respondent filed this Motion for Entry of Final Order in Suit to Modify Parent Child Relationship AFTER the court gave a hearing and AFTER the 45 day period.*

### Violations of Texas Rules of Civil Procedure (TRCP)

### i. *TRCP Rule 21 – Filing and Serving Pleadings and Motions:*

- **Rule**: TRCP 21 requires that motions and pleadings be filed in writing, served on all parties, and properly docketed before the court can take any action.
- **Violation**: The court granted an **in-person formal hearing** and subsequently hearing-by-submission for a **non-existent motion**, which violates **TRCP 21**. Without a motion properly filed and served on both parties, the court does not have jurisdiction to act on it.
- **Case Law**: In **In re Hall**, 433 S.W.3d 203 (Tex. App.—Houston [14th Dist.] 2014), the court ruled that procedural fairness requires all parties to be served with a motion before any hearing can be conducted. Failing to serve or file the motion invalidates any subsequent actions.

### ii. *TRCP Rule 165a – Dismissal for Want of Prosecution:*

- **Rule**: Rule 165a authorizes dismissal for lack of prosecution, which includes failure to comply with court deadlines or filing requirements.
- **Violation**: Allowing the respondent to file a **Motion for Entry of Final Order** after the **45-day deadline** contradicts TRCP 165a. It also delays prosecution without due cause, undermining the procedural fairness of the case.

- **Case Law:** In **Villarreal v. San Antonio Truck & Equip.**, 994 S.W.2d 628 (Tex. 1999), the Texas Supreme Court held that a failure to adhere to deadlines constitutes lack of prosecution, which justifies dismissal or sanctions.

## Violations of Judicial Canons of Conduct

### iii. Violation of Canon 2 – Avoiding Impropriety and the Appearance of Impropriety in All Activities:

- **Rule:** Judges must avoid impropriety and the appearance of impropriety in all their activities, ensuring impartiality and fairness.
- **Violation:** Granting a oral hearing for a non-existent motion and then subseuqntly converting it to a submission-based process without a properly filed motion, and doing so after the deadline goes above and beyond *just an appearance of impropriety and potential bias* – this is clear proof that the court is providing procedural leeway to one party (the respondent) that is not equally available to the petitioner.
- **Case Law:** In re **Thoma**, 873 S.W.2d 477 (Tex. Rev. Trib. 1994), highlights that a judge must maintain fairness and impartiality. Any action that provides unwarranted advantage to one party violates this obligation.

### iv. Violation of Canon 3B(2) – Judges Must Require Lawyers to Abide by Procedural Rules:

- **Rule:** Judges have a responsibility to ensure that attorneys adhere to the rules of procedure and must avoid granting special privileges.
- **Violation:** By granting a oral hearing without a motion *and* subsequently allowing the respondent's attorney to proceed with a submission-based **motion for entry** after the court's **45-day deadline**, the judge failed to enforce compliance with procedural rules, thereby breaching this canon. The failure to enforce procedural deadlines is an abuse of discretion, as judges are obligated to ensure equal application of procedural rules.
- **Case Law:** In **In re Barr**, 13 S.W.3d 525 (Tex. Rev. Trib. 1999), the court noted that a judge's failure to require adherence to procedural rules constitutes an abuse of discretion and a violation of Canon 3.

## Violations of Federal Law
### v. Violations of Due Process:

The court committee the following violations of due process by granting a oral hearing without a motion *and* allowing the respondent's attorney to proceed with a submission-based **motion for entry** after the court's **45-day deadline**:



- **Rule: Under the** Due Process Clause of the Fourteenth Amendment, **both parties in a legal dispute are entitled to notice and a meaningful opportunity to be heard. Due process requires that all motions be properly filed, served, and considered according to established procedures.**
- **Violation:** The court proceeded with a hearing and later converted it to a submission process based on a **non-existent motion which was never filed or served**; this deprived the petitioner of due process. This is particularly relevant if the petitioner did not have adequate notice of the motion or an opportunity to challenge it.
- **Case Law:** In **Mullane v. Central Hanover Bank & Trust Co.**, 339 U.S. 306 (1950), the U.S. Supreme Court ruled that procedural fairness requires all parties to have notice and the opportunity to respond to any motions or proceedings that affect their rights. Proceeding without a properly filed motion violates this principle.

## Case Law Violations

### vi. Exceeding 45-Day Deadline:

- **Case Law: In re Houston Lighting & Power Co.**, 976 S.W.2d 671 (Tex. 1998), holds that courts must enforce their own deadlines unless good cause is shown for an extension. Granting leniency without good cause constitutes an abuse of discretion. The respondent failed to file the motion within 45 days, and without a request for an extension, the court's actions violate this principle.

### vii. Granting Relief Without ANY Motion filed:

- **Case Law:** In **Chavez v. Chavez**, 12 S.W.3d 563 (Tex. App.—San Antonio 1999, no pet.), the court held that a judge may not grant relief or conduct a hearing without a properly filed motion. The Chavez court overturned a ruling where a judge acted on a motion that was not properly before the court.
- **Violation:** Conducting a hearing and converting it to a submission process on a non-existent motion constitutes improper judicial action under the Chavez precedent.

### viii. Abuse of Discretion:

- **Case Law: Walker v. Packer**, 827 S.W.2d 833 (Tex. 1992), states that a trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or when it fails to follow guiding legal principles.
- **Violation:** Allowing a hearing without a proper motion and proceeding after a deadline without justification fits the definition of abuse of discretion as outlined in Walker.



### o. *Right to Oral Hearing Unilaterally Denied by the Court without any Consent of Either Party:*

**Right to Oral Hearing:** The court's unilateral decision to change the hearing to a submission-based format without the consent of both parties denies Petitioner the fundamental right to an oral hearing. Oral hearings are crucial in family law matters where the complexities of the case, such as child conservatorship, possession, and financial obligations require direct interaction with the Court to clarify factual disputes and legal arguments. A submission-based hearing limits the Court's ability to assess credibility and the weight of testimony.

**Relevant Case Law:**

a. **Matzen v. McLane, 659 S.W.2d 867, 870 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.):** A trial court's refusal to grant an oral hearing may constitute an abuse of discretion when there is a substantial need to clarify factual disputes or when the parties' arguments require more than written submissions.

b. **In re D.W., 249 S.W.3d 625, 631 (Tex. App.—Fort Worth 2008, pet. denied):** In family law cases, where the best interests of children and complex emotional issues are involved, oral hearings are generally preferred for the Court to assess credibility and gather relevant facts.

**TRCP:**

c. **TRCP 21(b):** "An application to the court for an order and notice of any hearing thereon which is not presented during a hearing shall be served upon all other parties not less than three days before the time specified for the hearing." The court's decision to proceed with a submission-based hearing deviates from the typical preference for oral hearings in matters of substantial importance.

Petitioner made requests to the Court to **reinstate the oral hearing** to allow for full presentation of evidence, clarification of issues, and the opportunity for both parties to be heard on the record. The oral hearing is essential for the Court to properly address the material issues and ensure fairness in the judicial process. However, this request was not answered by the court.

**Violation of Due Process Concerns:**

The change to a submission-based hearing raises significant **due process concerns**. Due process requires that both parties have the opportunity to be heard, present evidence, and engage in oral argument when there are substantive factual and legal disputes, as is the case here. A written submission-only format restricts the Petitioner's ability to fully present his case and respond to any mischaracterizations or inconsistencies in the Proposed Final Order submitted by Respondent.

**Relevant Case Law:**

a. **In re L.N.C., 573 S.W.3d 309, 314 (Tex. App.—Houston [14th Dist.] 2019, pet. denied):** The court emphasized that denying a party an oral hearing when substantive rights are at stake may violate due process rights, especially when the party has timely requested the opportunity to be heard.

b. **Perkins v. Groff, 936 S.W.2d 661, 667 (Tex. App.—Dallas 1996, writ denied):** The court held that the denial of an oral hearing where factual matters are in dispute is a violation of due process.

**TRCP:**

c. **TRCP 166a(c):** "The court shall grant a summary judgment hearing if requested by either party." Though this rule applies to summary judgment, it reflects the principle that hearings in contested matters are generally expected to be oral, especially when requested.

Petitioner requests that the Court **conduct an oral hearing** rather than proceeding on submission. This ensures that Petitioner's due process rights are respected, and all material disputes can be addressed comprehensively.

**Complexity of Issues:**

The issues at stake in this case—including child conservatorship, possession, child support, and permanent injunctions—are highly complex and require thorough examination. Oral hearings provide the Court with the opportunity to ask questions, clarify points of confusion, and directly engage with the parties and their counsel. A submission-based hearing does not afford the Court these opportunities, which are particularly necessary given the discrepancies between the Proposed Final Order and the Court's memorandum ruling.

**Relevant Case Law:**

a. **State v. Green, 896 S.W.2d 386, 387-88 (Tex. App.—Houston [1st Dist.] 1995, no writ):** The court noted that in complex matters where the facts are contested, oral hearings are crucial for the proper resolution of issues.

b. **In re K.M.B., 606 S.W.3d 889, 899 (Tex. App.—Fort Worth 2020, pet. denied):** In family law matters, courts have a heightened duty to ensure that all relevant facts are fully developed, which is difficult to achieve through written submissions alone.

**TRCP:**

c. **TRCP 245:** "The court shall set contested cases for trial with reasonable notice and shall allow sufficient time for the parties to prepare and present their arguments." The Court should allow for an oral hearing, especially in cases with complex issues requiring deeper factual and legal exploration.

Petitioner requested that the Court hold an **oral hearing** to allow for full presentation of the complex issues at hand, ensuring that the Court has a complete understanding of the facts and legal arguments. This request was not answered by the court.

### p. *Court unilaterally allowing the Respondent to file an Amended Order past the court imposed deadline of October 09, 2024 at 4:00pm and denying any extra time to Petitioner:*

The Court, through its Court Coordinator, Ms. Kim Quillin, instructed that Respondent's Counsel file the Motion to Enter with the proposed order by October 9, 2024. Petitioner was directed to file any objections to this proposed order by October 15, 2024, and the matter was set for submission on October 16, 2024 (*Please see Exhibits below*). Respondent's Counsel complied by filing the proposed order on October 9, 2024, as per the Court's instructions by filing a proposed order on October 9, 2024. However, on October 14, 2024 after the court's unilateral approval and despite the Petitioner's legitimate objections, Respondent's Counsel filed an Amended Proposed Order, altering the initial proposed *order after the court's deadline*. This constitutes the following legal violations by the court:

### A. Filing After the Court-Imposed Deadline Warrants an Automatic Extension

Petitioner's objections are to both the initial proposed order and the newly amended proposed order, and due to the voluminous size of the order, additional time is needed to analyze the changes and prepare objections as outlined below -- Petitioner filed a "PETITIONER'S MOTION FOR EXTENSION OF TIME TO FILE OBJECTIONS TO RESPONDENT'S AMENDED ORDER FILED AFTER THE COURT DEADLINE" encapsulating the following points (Petitioner sent repeated emails to Ms. Kim Quillin in this regard with no response from her as of the filing of this pleading with the court). This was not ruled upon by the court, neither did the court respond to Petitioner's emails regarding this issue.

### B. Voluminous Nature of the Order Requires Additional Time

i.   The initial proposed order and the amended proposed order are **voluminous**, containing complex provisions that must be carefully analyzed. **TRCP 166a(c)** provides that a party must be given adequate time to prepare responses or objections to substantive filings.

ii.  **Case Law:** In **Lehmann v. Har-Con Corp.**, 39 S.W.3d 191 (Tex. 2001), the Texas Supreme Court emphasized that voluminous filings, particularly in family law matters involving substantive rights, require sufficient time for parties to carefully review and object. Courts should accommodate requests for extensions in such cases to prevent prejudice.

iii. **Application:** Given the size and complexity of the amended proposed order, Petitioner requires additional time to analyze the changes and prepare well-informed objections. This is especially critical in family law cases where child custody and modification issues are involved.

## C. Objections to Amended Proposed Orders filed after the court's deadline

a. Petitioner's objections apply to **both the initial proposed order** filed on **October 9, 2024**, and the **amended proposed order** filed on **October 14, 2024**. Since the amended order introduces changes after the court's deadline, the amended order requires a fresh analysis due to its voluminous nature.

b. **Case Law:** In **Sosa v. Williams**, 936 S.W.2d 708 (Tex. App.—Waco 1996, no writ), the court emphasized that any amendments to a filing, particularly when substantial changes are made, warrant additional time for review and objection. Amending a filing after a court-imposed deadline without notice or leave of court prejudices the opposing party's ability to respond effectively.

c. **Application:** Petitioner's objections to the original proposed order remain, but the newly filed amended order introduces new material that was not available before the court's original deadline. As a result, Petitioner must be given sufficient time to review both the initial and amended filings to ensure that all objections are properly addressed.

## D. Filing After Deadline Constitutes Procedural Unfairness towards Petitioner

- **Due Process** under the **Fourteenth Amendment** requires that parties have fair notice and opportunity to be heard. The late filing of the amended proposed order, without any explanation or request for an extension, violates Petitioner's due process rights by unfairly burdening Petitioner to object without adequate time.

- **Case Law:** In **Mullane v. Central Hanover Bank & Trust Co.**, 339 U.S. 306 (1950), the U.S. Supreme Court held that due process requires that parties be given adequate notice and a meaningful opportunity to respond. When an amended filing is introduced after the deadline, the opposing party must be given the opportunity to object based on the new material.

- **Application:** Respondent's late filing of the amended proposed order violates Petitioner's right to procedural fairness and due process, necessitating an extension for Petitioner to properly respond to both the original and amended filings.

### Abuse of Office, Official Oppression, Judicial Misconduct, Factual Inaccuracies & Misrepresentations, Violations of Federal Law, Common Law, Case Law, TRCP and Texas Statutes by Judge Wynne in the Final Ruling Rendered on August 20, 2024

13.    On **June 24-26, 2024**, the Court held a jury trial to address the Motion to Modify the Parent-Child Relationship filed by the Father. After a significant delay of almost two months, the Court issued a memorandum ruling on **August 20, 2024**, which contains significant misrepresentations, factual inaccuracies, erroneous legal conclusions, and violations of federal law, common law, and the Texas Rules of Civil Procedure. The ruling also constitutes statutory violations that are not supported by the evidence presented at trial. The Court's actions infringe on Father's due process rights and contradict legal precedents as clearly outlined below. Furthermore, the ruling misrepresents facts/evidence, improperly excludes evidence, and creates barriers to Father's ability to provide proper care for his special needs child, M.T.A.F. Father

specifically contests the following inaccuracies and legal violations in the ruling and seeks correction to reflect the true evidence presented during the trial, including but not limited to the following points:

### A. Imputation of Earnings – Violation of Federal Due Process:

The Court erroneously imputed speculative earnings to Father despite irrefutable admitted evidence that:

a. Father was illegally terminated from his employment in November 2023 as a result of whistleblower retaliation, which was introduced into evidence.

b. Father remained unemployed from November 2023 through June 26, 2024, despite applying for over 700+ jobs, and was living in his brother's house, relying on public assistance, family/friends, including food stamps, due to financial hardship.

c. Evidence of significant debt was admitted into evidence but arbitrarily and blanketly ignored by Judge Wynne.

d. The Court imputed $100,000 in annual earnings to Father with no evidentiary support, violating Father's right to a ruling based on evidence and not speculation.

e. As admitted evidence clearly illustrated during trial, even after Father gets a job, it will take him 20+ years to pay off the hundreds of thousands of dollars that Judge Wynne assigned him as part of the unfair division of the marital estate: *"On November 17, 2022, Judge Wynne signed a ruling awarding the wife the entire proceeds of the house that had been forcefully sold for approximately $400,000 marital home while granting TARIQ FAROOQ defunct LLCs burdened with hundreds of thousands of dollars in debt and foreclosed overseas properties".*

### Legal Violations:

f. **Federal Law**: This imputation violates *Anderson v. City of Bessemer City*, 470 U.S. 564 (1985), which holds that factual findings must be based on substantial evidence, and findings based on speculation or falsehoods are "clearly erroneous."

g. **TRCP Violation**: The Court violated **TRCP Rule 301**, which mandates that judgments must conform to the evidence presented. The imputation of speculative earnings is a violation of this rule, as the ruling did not align with the factual evidence of Father's financial struggles.

h. **Texas Statutory Law**: Under **Texas Family Code § 154.062**, income must be calculated based on actual earnings, not speculative or imputed income without evidentiary support.

### B. Blocking and Suppression of Critical Evidence – Violation of Due Process:

The Court wrongfully suppressed key testimony from critical witnesses by arbitrarily denying FAROOQ's First Motion for Continuance and arbitrarily granted Plano ISD's Motion to Quash in the pre-trial motions heard on June 17, 2024 and June 24, 2024:

a. **Ms. Valerie Albright,** the Plano ISD psychologist, and **Ms. Amy Biko,** the child's Special Education Teacher, were blocked from testifying, despite her relevance to the child's well-being.

b. The Court denied a **Motion for Continuance** effectively denying FAROOQ the ability to secure the testimony of **Dr. Muhammad O. Majeed** and **Ms. Joanne Davis,** both essential witnesses regarding the child's mental health and were unavailable to testify on June 26, 2024 in the final trial.

**Legal Violations:**

c. **Federal Law:** The suppression of critical evidence violates *Brady v. Maryland,* 373 U.S. 83 (1963), which requires the disclosure and admission of material evidence. By blocking key testimony, the Court violated Father's federal due process rights.

d. **TRCP Violation:** Under **TRCP Rule 193.6,** evidence not disclosed in discovery may be excluded unless good cause is shown. By suppressing admissible evidence from Father's witnesses without justification, the Court violated this rule.

e. **Common Law:** Under the **Brady doctrine,** suppression of material evidence in any proceeding, whether civil or criminal, violates the principles of fair trial and due process.

### C. Factual Misrepresentation of the Child's Mental Health – Best Interest Standard Violation:

The Court ignored overwhelming evidence of the child's mental health issues, including severe separation anxiety and risk of self-harm and bodily injury to others when not in Father's care including but not limited to credible irrefutable testimony, documents and audio/video evidence introduced at trial:

a. Reports from **Plano Children's Hospital Mental Health Assessment Team (MHAT)** confirmed the child's risk of suicide and depression in addition to other mental health issues when separated from Father — No followup mental health care (which was duely recommended by the MHAT team at Plano Children's Hospital) was done by the mother despite repeated pleas by the father.

b. The special needs child super-strong bond with the father.

c. The father being 100/100 in every respect for the child: Education, Health, Real-World Learning, Emotional and Personal Development of the child.

d. M.T.A.F. repeatedly threatening to run away from the mother's apartment.

e. M.T.A.F. vehemently, violently and forcefully refusing to transition to the mother on almost every single occasion in the last 4+ years since separation.

f. M.T.A.F. being denied urgently needed mental health care by the mother.

g. M.T.A.F. being confined to the iPad like a junkie at his mother's apartment for hours on end even during school weekdays.

h. M.T.A.F. being a special needs child being driven around by the mother for months on end in an uninspected unregistered unsafe vehicle.

i. M.T.A.F. being in a severe state of emotional distress while being separated from his father which was repeatedly supported by credible testimony, video and document evidence.

j.  Despite this, the Court imposed punitive and retaliatory supervised visitation, exacerbating the child's mental health crisis and failing to act in the best interest of the child – *Father believes this was done as open and clear retaliation by Judge Wynne for his legitimate protests against her proven pattern of judicial misconduct and bias against him in the last 4+ years as clearly outlined in Point No. 12 above.*

**Legal Violations:**

k.  **Federal Law:** The imposition of supervised visitation without considering the child's best interests violates *Troxel v. Granville*, 530 U.S. 57 (2000), which protects parental rights and requires courts to act in the child's best interest.

l.  **Texas Family Code Violation:** Under **Texas Family Code § 153.002**, the best interest of the child is the primary consideration in custody and visitation matters. The Court's ruling failed to comply with this statute by ignoring critical evidence of the child's mental health.

**D. Misrepresentation Regarding Video Recordings of Child's Natural/Organic Behavior as severely disabled child with limited mental capacities:**

**Judge Wynne's Inaccurate Statements:** The Court's memorandum ruling erroneously asserts that Father was making video recordings of the child (who has Tetrasomy 18p) while making disparaging remarks about the mother. This statement is factually incorrect for several reasons including but not limited to:

a.  **Child's Mental Capacities:** The child's mental capacities are severely disabled due to Tetrasomy 18p. Father was recording the child's natural, organic behavior to document his condition and to provide evidence of his emotional and behavioral state clearly showing him in a deep state of emotional distress even at the very thought of being separated from his father, with whom he shares the strongest bond on the planet. In admitted videos, Father can be seen admonishing the child for making any negative comments about the mother, clearly demonstrating Father's intent to protect the child's mental health and not to disparage the mother; Judge Wynne ignored this factum completely and stated blatant misrepresentations in this regard in her memorandum ruling.

b.  **Aggravated Perjury committed by the Respondent/Ex-Wife on multiple counts:** *The mother of the child committed intrinsic fraud upon on the court by repeatedly LYING on multiple counts especially as it relates to the child's depression and other mental health issues, her blocking urgently needed mental health evaluations and follow-up care for the special needs child; All of this was blanketly and arbitrarily ignored by Judge Wynne in complete violation of well-established Legal Doctrine, Case Law, Common Law and the TRCP.*

c.  **Curtailing Evidence Collection:** Judge Wynne's memorandum ruling imposes a punitive restriction on Father, preventing him from making further recordings of his son's natural, organic behavior illustrating his depression, violence and mental health issues. This order effectively blocks Father from collecting crucial evidence that illustrates and support the best interests of his severely disabled child.

**Legal Violations:**

d. **Federal Law – Due Process Violation:** The prohibition on Father's ability to record his child's behavior violates his constitutional due process rights under the **Fifth and Fourteenth Amendments.** In *Holmes v. South Carolina*, 547 U.S. 319 (2006), the U.S. Supreme Court held that the exclusion of evidence critical to a party's case constitutes a due process violation. By preventing Father from gathering video evidence of his special needs child's behavior, the Court infringes on his right to present vital evidence in support of his case.

e. **Common Law – Best Evidence Rule:** Under the **Best Evidence Rule,** the admissibility of recordings is critical in cases involving a disabled child's condition. Preventing the collection of this evidence deprives Father of the opportunity to establish the child's needs and behavior, a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), which mandates the full disclosure and preservation of material evidence.

f. **TRCP Violations:** The ruling violates **TRCP Rule 193.6,** which emphasizes the preservation and admission of evidence. Judge Wynne's punitive order barring Father from collecting further video evidence directly contravenes this procedural requirement. Furthermore, under **TRCP Rule 201,** the Court is obligated to allow discovery processes (such as evidence collection) that are necessary to fully present the case.

g. **Texas Family Code Violation:** Under **Texas Family Code § 153.002,** the best interest of the child must guide all decisions related to custody and care. By blocking Father from documenting the child's natural behavior in Audios/Videos, the Court disregards the child's best interest, specifically the need for proper care and evidence of the child's mental health challenges.

## E. Misrepresentation Regarding Daughters' Testimony:

The ruling inaccurately gives weight to the contradictory and biased testimony of Father's daughters who have been severely alienated by the mother against the father; Judge Wynne claimed that Father made negative comments about the mother whilst blanketly ignoring all evidence produced by the father in this regard:

a. **Daughters' clear Bias against the Father and lack of Involvement:** The daughters have not lived with Father for many years due to extreme parental alienation by the mother against the father, especially prior to the filing date of the current motion to modify. Their testimony does not relate to the time period relevant to the Motion to Modify the Parent-Child Relationship and is therefore irrelevant and should have been excluded.

b. **Testimony of the Daughters:** Judge Wynne incorrectly relied on improper and biased testimony from the daughters, who claimed that Father was making negative remarks about the mother. However, the daughters had not lived with Father for many years prior to the filing of the current Motion to Modify the Parent-Child Relationship, thus invalidating the relevance of their testimony; Despite Father's objections, improper evidence by the daughters was allowed by Judge Wynne: Reliance on such tarnished evidence is a clear violation of the rules. Daughters contradicted their own testimony

during cross-examination by the father; this factum was once again arbitrarily ignored by Judge Wynne.

**Legal Violations:**

c. **TRCP Violation – Relevance of Evidence**: Under **TRCP Rule 401,** evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence. The testimony of the daughters does not meet this standard, as they had not lived with Father for years due to being severely alienated from the father by the mother. The Court's reliance on this irrelevant and improper testimony violates **TRCP Rule 403,** which allows the exclusion of evidence if its probative value is substantially outweighed by the danger of unfair prejudice.

d. **Federal Law:** The reliance on outdated and irrelevant testimony constitutes a violation of due process under the **Fourteenth Amendment,** as established in *Anderson v. City of Bessemer City,* 470 U.S. 564 (1985), which mandates that findings of fact must be supported by credible, relevant evidence.

e. **Common Law:** The improper admission of irrelevant testimony violates the principles of fairness and impartiality. In *Strickler v. Greene,* 527 U.S. 263 (1999), the U.S. Supreme Court emphasized that irrelevant evidence should not affect the outcome of a trial, particularly in matters affecting fundamental rights.

### F. Curtailing Father's Ability to Record the Child's Behavior – Obstruction of Evidence Collection:

In her punitive ruling, Judge Wynne has curtailed Father's ability to make recordings of his son's natural, organic behavior as a severely disabled child. This decision obstructs Father's ability to collect critical evidence that is essential for the ongoing care and understanding of his special needs child's condition.

**Legal Violations:**

- **Federal Law:** The restriction on Father's ability to collect video evidence violates **Title II of the Americans with Disabilities Act (ADA),** which requires courts to provide reasonable accommodations for parents of disabled children. In *Tennessee v. Lane,* 541 U.S. 509 (2004), the U.S. Supreme Court held that state courts must not impose barriers that prevent individuals from accessing the legal process. By restricting Father's ability to collect video evidence of his disabled child's behavior, the Court is creating an unreasonable barrier to his right to advocate for his child's needs.
- **Texas Family Code Violation:** Under Texas Family Code § 153.001, it is in the public interest to ensure that children receive proper care. Preventing Father from documenting his son's behavior, which is vital to understanding and illustrating his condition, contravenes this statutory obligation.
- **Common Law – Preservation of Evidence:** The restriction on collecting evidence violates the **Best Evidence Rule** under common law. In *Kyles v. Whitley,* 514 U.S. 419 (1995), the U.S. Supreme Court held that cumulative suppression of critical evidence

violates due process. By blocking Father from collecting evidence, the Court is impeding his ability to prove his case, amounting to a suppression of evidence.

## G. False Claim Regarding Unnecessary Emergency and Psychiatric Hospital Visits:

**Judge Wynne's Incorrect Statement:** Judge Wynne falsely claimed that Father unnecessarily took M.T.A.F. to the emergency room (ER) or a psychiatric hospital too many times. This assertion is patently false and not supported by the trial evidence:

a. **Actual Medical Record:** Father testified during trial that he took M.T.A.F. to the ER only **five times over 17 months**, and all of these visits were for confirmed viral infections. These actions were in accordance with M.T.A.F.'s medically vulnerable condition as a child with Tetrasomy 18p.
b. **Medical Care for Special Needs Child:** Judge Wynne's ruling effectively curtails Father from providing urgent medical care for his medically vulnerable son, creating a dangerous precedent that undermines the care of children with special needs.

**Legal Violations:**

c. **Federal Law – Due Process Violation**: By restricting Father's ability to provide necessary medical care, the Court violates Father's due process rights under the **Fifth and Fourteenth Amendments**. In *Parham v. J.R.*, 442 U.S. 584 (1979), the U.S. Supreme Court held that parents have a fundamental right to make decisions concerning the medical care of their children, especially in emergency situations. The Court's restriction on Father's ability to seek necessary care for his special needs son constitutes a violation of this right.
d. **Texas Family Code Violation**: Under **Texas Family Code § 151.001**, parents have the legal duty to provide for the medical care of their children. The Court's ruling undermines Father's statutory duty to ensure the health and safety of his child by restricting access to necessary medical care.
e. **TRCP Violation**: The Court violated **TRCP Rule 301**, which requires judgments to be based on evidence. The ruling against Father's medical decisions is unsupported by any credible evidence introduced during trial and is therefore erroneous.

## H. False Claim Regarding High-Impact Activities for Child with Bone Density Issues:

**Judge Wynne's Incorrect Statement:** Judge Wynne falsely claimed that Father engages M.T.A.F. in high-impact activities, despite the child's bone density issues. This statement is refuted by irrefutable evidence introduced at trial, which proves the contrary.

a. **Evidence at Trial:** The evidence introduced at trial clearly refuted the claim that Father involved M.T.A.F. in inappropriate physical activities. The allegations were based on false testimony that opposing counsel knowingly introduced during the trial, despite having access to evidence proving the claims false. Moreover, this was rebutted by the Father in his testimony during Final Trial.

**Legal Violations:**

b. **Common Law – Perjury and Fraud upon the Court**: Knowingly introducing false testimony constitutes fraud upon the court, as established in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944). This decision makes it clear that judgments obtained based on perjured testimony or deliberate misrepresentation can be set aside to protect the integrity of the judicial process.

c. **TRCP Violation**: Under **TRCP Rule 193.6**, the introduction of perjured or false evidence without reasonable basis violates procedural rules and should be excluded. By allowing this false testimony to affect the outcome, the Court committed an error of law.

d. **Texas Statutory Law**: Under **Texas Family Code § 153.002**, courts must make rulings in the best interest of the child. The Court's acceptance of false statements regarding high-impact activities contradicts the best interest of the child, especially considering the child's medical vulnerabilities.

### I. False Claim Regarding Father's Business Ventures and Book Writing:

**Judge Wynne's Incorrect Statement:** The ruling falsely claims that Father has business ventures, including writing books, despite no evidence introduced at trial to support this assertion.

a. **No Evidence Introduced**: During the trial, no evidence was presented that supports the assertion that Father is engaged in business ventures or writing books. Father has not authored any books in 9 years – moreoever, his previous books, which on average could take years to write only yielded in minimal/negligible royalty proceeds not seen in many years prior to the current legal action. This false claim by Judge Wynne is a misrepresentation of the facts and is not based on any credible testimony or documentation.

**Legal Violations:**

b. **Federal Law – Due Process Violation**: The inclusion of facts not supported by the evidence violates Father's due process rights under the **Fourteenth Amendment**. In *United States v. United States Gypsum Co.*, 333 U.S. 364 (1948), the U.S. Supreme Court held that findings of fact must be based on substantial, credible evidence. The Court's false claims about Father's business ventures or alleged book-writing ventures violate this principle.

c. **TRCP Violation**: **TRCP Rule 301** mandates that a judgment must conform to the pleadings and the evidence. The Court's reliance on non-existent facts regarding Father's business ventures or alleged book-writing ventures represents a violation of this rule, as no evidence was introduced to support such a finding.



## J. Exclusive Medical, Psychiatric, and Educational Decision-Making Rights Awarded to Mother:

**Judge Wynne's Ruling:** Judge Wynne granted the mother exclusive medical, psychiatric, and educational decision-making rights, despite the introduction of irrefutable evidence that the mother consistently acted as a barrier to providing necessary mental/medical health care for the child.

i. **Evidence of Mother's Obstruction:** During the trial, credible evidence was introduced showing that the mother prevented the child from receiving urgently needed mental health care for his depression and severe separation anxiety disorder while being away from his father. Despite this, Judge Wynne awarded the mother exclusive control over critical decisions related to the child's medical and mental well-being.

**Legal Violations:**

ii. **Federal Law – Due Process Violation:** The ruling violates Father's fundamental parental rights under the **Fourteenth Amendment** as established in *Troxel v. Granville*, 530 U.S. 57 (2000), which holds that parents have a constitutional right to make decisions concerning the care, custody, and control of their children. The decision to award exclusive decision-making authority to the mother without considering her obstruction of the child's care violates Father's due process rights.

iii. **Texas Family Code Violation:** Under **Texas Family Code § 153.001**, it is in the public interest for parents to share equally in the rights and duties of raising their children. The Court's ruling grants excessive and unwarranted control to the mother, despite evidence of her failure to act in the child's best interest.

iv. **TRCP Violation:** The ruling violates **TRCP Rule 301**, as it fails to align with the evidence presented during the trial, which clearly demonstrated that the mother acted as a barrier to the child's mental health care.

## *JUDICIAL MISCONDUCT AND ABUSE OF DISCRETION*

## K. Bias and Hostility – Violation of Canon 3B(4):

As outlined in Point Number 12 above, The presiding judge displayed visible hostility and bias toward Father, including but not limited to (*More detailed points are outlined in Point No. 12 above*):

a. Raising her voice and showing visible signs of disdain towards the Father during Father's legitimate cross-examination of adverse witnesses.

b. Crying over false/inconsequential/irrelevant testimony by the ex-wife and the daughters testimony thereby prejudicing the jury against the father.

c. Declaring Father as a hostile witness when he was simply objecting to incomplete evidence being introduced by opposing counsel.

d. Giving father's allotted time to opposing counsel in clear violation of the rules.

e. Repeatedly blocking and suppressing proper evidence introduced by Father with properly laid foundation.

f. Allowing the introduction of improperly admitted evidence from opposing counsel, which despite Father's objections was admitted without any proper foundation and clearly predated the Motion to Modify filing in some instances by several years, prejudicing the jury against Father.

**Legal Violations:**

g. **Common Law:** Under *Liteky v. United States*, 510 U.S. 540 (1994), judicial bias that demonstrates prejudice or favoritism can invalidate rulings. The judge's conduct violated the principles of impartiality and fairness required by Canon 3B(4) of the Texas Code of Judicial Conduct.

h. **TRCP Violation:** TRCP Rule 166 requires trial proceedings to be conducted fairly and impartially, and the judge's conduct toward Father constituted an abuse of discretion.

## L. Denial of ADA Accommodations – Violation of Federal ADA Law:

The Court denied Father's reasonable requests for additional time and proper ADA accommodations for his documented hearing disability (tinnitus).

a. The Court offered headphones which would actually worsen Father's condition by confusing him (Father testified to this point); despite Father's repeated requests for more appropriate accommodations such as extended time for trial preparation, objections, evidence and testimony.

**Legal Violations:**

b. **Federal ADA Law:** The denial of proper accommodations violated Father's rights under **Title II of the Americans with Disabilities Act (ADA)**, as established in *Tennessee v. Lane*, 541 U.S. 509 (2004), which requires courts to provide reasonable accommodations to disabled individuals.

c. **TRCP Violation:** The Court's failure to accommodate Father's disability violated **TRCP Rule 245**, which requires reasonable time and accommodations for all parties to prepare and present their case fairly.

*VIOLATIONS OF FEDERAL LAW, COMMON LAW, TRCP, AND TEXAS STATUTES BY JUDGE WYNNE IN HER COURT'S MEMORANDUM RULING ISSUED ON AUGUST 20, 2024*

## M. Violation of Federal Due Process Rights:

The suppression of evidence and imputation of speculative earnings violated Father's due process rights under the **Fifth and Fourteenth Amendments**, which protect against arbitrary governmental actions.

## N. Common Law Violations:

Suppression of evidence and failure to accommodate disabilities under the ADA violates well-established common law principles regarding fair trials and judicial impartiality.

### O. Violation of Texas Rules of Civil Procedure:
The imputation of speculative income, suppression of witnesses, and improper conduct during trial violated the following TRCP provisions:

  a. **Rule 193.6**: Suppression of disclosed evidence.
  b. **Rule 301**: Judgments must conform to the evidence.
  c. **Rule 245**: Failure to provide adequate time and accommodations.

### P. Violation of Texas Family Code:

Judge Wynne's ruling egregiously violated **Texas Family Code §§ 153.002 and 154.062**, disregarding both the best interest of the child and the proper calculation of income.

### Legal Grounds For Immediate Disqualification of Judge Wynne

14. As is clearly demonstrated above, Judge Wynne has a repeated, perpetual and , open/clear and demonstrated history/pattern of bias against TARIQ FAROOQ and favoritism towards the Respondent/Wife in this case spanning 4+ years at the expense of TARIQ FAROOQ and at the expense of the well-being of a special needs child. This point is further elaborated below:

### A. Legal Standards for Disqualification:

Under Texas law, judicial disqualification and recusal are governed by the **Texas Constitution, Article V, Section 11**, and the **Texas Rules of Civil Procedure, Rule 18b**. A judge must be disqualified if they are biased, if they have an interest in the case, or if their impartiality might reasonably be questioned.

As is clearly shown in the aforementioned points and attested in the attached notarized affidavit, Judge Wynne has exhibited clear and ongoing judicial bias against the Petitioner throughout the pendency of this case. The following key legal precedents underscore the need for her immediate disqualification:

  a. **Liteky v. United States**, 510 U.S. 540 (1994): Judicial bias occurs when a judge displays favoritism or prejudice during court proceedings. Judge Wynne's repeated instances of hostility, including yelling at the Petitioner, refusing to allow him to fully present his case, and ruling consistently against him, demonstrate an undeniable lack of impartiality.
  b. **Caperton v. A.T. Massey Coal Co.**, 556 U.S. 868 (2009): The appearance of bias is sufficient to warrant disqualification. Judge Wynne's ongoing rulings against the Petitioner, despite the overwhelming evidence in his favor, have created a significant risk of actual bias, demanding her recusal.
  c. **Anderson v. City of Bessemer City**, 470 U.S. 564 (1985): A court's findings of fact must be supported by substantial evidence. When decisions are based on speculative or

false claims, they are clearly erroneous. Judge Wynne's rulings—such as imputation of speculative earnings and unjust asset division—were not based on evidence, but on biased assumptions and must be overturned.

### B. Judicial Bias and Lack of Impartiality:

Judicial impartiality is the cornerstone of a fair legal system. As outlined in **Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)**, due process demands disqualification where there is a "serious risk of actual bias." In this case, Judge Wynne's pattern of rulings, her hostile courtroom demeanor, and her refusal to grant accommodations for the Petitioner's disability demonstrate clear judicial bias that violates Petitioner's due process rights under both state and federal law.

Furthermore, the Texas Supreme Court in **In re Union Pacific Resources Co., 969 S.W.2d 427 (Tex. 1998)** held that a judge must recuse themselves if their impartiality can be reasonably questioned. The multiple hostile interactions and unfair treatment of the Petitioner meet this standard, making disqualification mandatory.

### C. Repeated, Intentional and Deliberate Failure to Provide ADA Accommodations:

Title II of the **Americans with Disabilities Act (ADA)** applies to court proceedings, as the U.S. Supreme Court confirmed in **Tennessee v. Lane, 541 U.S. 509 (2004)**. The refusal of Judge Wynne to accommodate Petitioner's hearing and tinnutis disability by denying reasonable requests for additional time and refusing to slow down proceedings despite clear medical needs constitutes a violation of federal law. This failure to accommodate further supports the argument that Judge Wynne is biased and disqualified from hearing this case under **Canon 3B(4)** of the **Texas Code of Judicial Conduct**, which requires judges to treat all parties with patience, dignity, and courtesy.

### D. Repeated Pattern of Hostile Courtroom Behavior towards Petitioner:

Judicial hostility undermines fairness, as held in **Liteky v. United States, 510 U.S. 540 (1994)**. Throughout the proceedings, Judge Wynne has exhibited hostile behavior towards the Petitioner, including shouting, visible expressions of scorn, and dismissive comments. Such behavior not only violates Canon 3B(4) but also **Canon 3B(5)**, which prohibits judges from manifesting bias based on disability or personal characteristics. This consistent hostility has created an atmosphere of bias that makes a fair trial impossible.

In **In re Murchison, 349 U.S. 133 (1955)**, the Supreme Court held that judges must maintain neutrality in all proceedings. When a judge behaves in a hostile manner or demonstrates favoritism, as alleged here, it constitutes grounds for disqualification under both federal and state standards.



### E. Repeated and Perpetual Pattern of One-Sided and Unjust Rulings and Abuse of Discretion:

Judge Wynne has clearly demonstrated a perpetual pattern of arbitrary and retaliatory rulings that reflect bias and abuse of discretion especially against FAROOQ for protesting outside the Collin County Courthouse for 42 days. As in **Walker v. Packer, 827 S.W.2d 833 (Tex. 1992)**, a judge abuses their discretion when their rulings are arbitrary and unsupported by the facts or law. The imputation of speculative earnings without evidence, the suppression of critical evidence, and the punitive measures against the Petitioner - such as supervised visitations are clear examples of punitive and retaliatory judicial overreach that raise serious questions about impartiality.

### F. Procedural Violations and Suppression of Evidence:

Throughout the pendency of the case, Judge Wynne has violated procedural fairness, suppressing and blocking critical evidence for the Petitioner and improperly favoring the opposing party. The following legal principles apply:

1. **Brady v. Maryland**, 373 U.S. 83 (1963): The suppression of material evidence violates due process. Judge Wynne repeatedly blocked key evidence that would have favored the Petitioner, including testimony from crucial witnesses such as Plano ISD's psychologist and medical professionals. The suppression of such evidence unfairly prejudiced the Petitioner's case.
2. **Fuentes v. Shevin**, 407 U.S. 67 (1972): A party cannot be deprived of property or other rights without due process. Judge Wynne's freezing of the Petitioner's bank accounts without legal justification or proper notice constitutes a clear violation of this precedent, raising questions about the fairness of her rulings.
3. **Mathews v. Eldridge**, 424 U.S. 319 (1976): Procedural fairness requires that all parties be given a meaningful opportunity to present their case. The repeated denial of adequate time for the Petitioner to present evidence, and the failure to accommodate his hearing disability under the ADA, demonstrate a failure to ensure procedural fairness.

### G. Violations of the Americans with Disabilities Act (ADA):

The Petitioner suffers from severe tinnitus and hearing loss, which affects his ability to effectively participate in court proceedings. Despite multiple requests, Judge Wynne has denied reasonable accommodations, in violation of federal ADA law:

1. **Tennessee v. Lane**, 541 U.S. 509 (2004): Title II of the ADA applies to state courts, requiring them to provide reasonable accommodations to individuals with disabilities. Judge Wynne's refusal to grant extra time as an accommodation, along with other refusals, violated the Petitioner's rights under the ADA.
2. **Pulliam v. Allen**, 466 U.S. 522 (1984): Judges can be held accountable when their actions violate constitutional rights, including ADA protections. The retaliatory actions and refusal to accommodate the Petitioner's hearing disability warrant past and injunctive relief against Judge Wynne.

## H. Failure to Recuse Despite Multiple Motions:

The repeated refusal of Judge Wynne to recuse herself despite legitimate motions based on clear evidence of bias further demonstrates her unwillingness to provide a fair trial. **Canon 3B(1)** of the Texas Code of Judicial Conduct mandates that a judge should disqualify themselves in any proceeding where their impartiality might reasonably be questioned. The Texas appellate courts have held in **In re T.G., 105 S.W.3d 930 (Tex. App.—Waco 2003)** that such a refusal can constitute judicial misconduct when combined with other indicators of bias.

### A repeated and perpetual pattern of Judicial Misconduct, Prejudice and Bias by Judge Wynne Cannot Be Addressed Solely by Appeal - Disqualification is Required to Address Judicial Misconduct, Not Just Unfavorable Rulings

15.    As has happened before, it is anticipated that the First Administrative Judicial Region's Judge *may* improperly suggest that the proper avenue for addressing the issues in this motion is through the appellate process. However, this argument overlooks a key distinction: **judicial misconduct and bias are not correctable by appeal alone**. The appellate process is designed to review legal errors, not to remedy the **structural unfairness** caused by a biased and prejudiced judge causing a repeated pattern of one-sided rulings against a party in complete violation of the facts and the law as clearly shown below:

a. In **Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)**, the U.S. Supreme Court explicitly recognized that **bias and impartiality concerns** must be dealt with through **disqualification** and not merely through appeal. If the judge's decisions are influenced by bias, an appeal will only address the surface-level errors without remedying the **underlying prejudice** that taints the entire trial. **Disqualification** is necessary to safeguard the due process rights of the parties involved and to maintain public confidence in the judicial system.

b. In FAROOQ's case, the clear pattern including but not limited to **one-sided rulings, hostile courtroom behavior, punitive/retaliatory rulings** and the refusal to provide **reasonable ADA accommodations** demonstrate open and clear judicial bias, not just legal errors. The judicial actions here go beyond isolated rulings and reflect a **deep-seated antagonism** towards the petitioner, which is irreparable by an appellate review of individual rulings.

c. **Judicial Bias and Hostility Must Be Addressed Immediately to Protect Due Process Rights:** The **due process violations** resulting from judicial bias require immediate correction through disqualification rather than waiting for appellate review. In **Liteky v. United States, 510 U.S. 540 (1994)**, the Supreme Court

noted that judicial bias that arises from **personal animosity or favoritism** undermines the very foundation of a fair trial. The law requires that such bias be remedied through immediate disqualification, as it **compromises the fairness of the proceedings** from the start.

d.  Judge Wynne's repeated actions (clearly outlined in the aforementioned points) **including but not limited to screaming/yelling at the petitioner for simply voicing his objections, crying on inconsequential perjurious testimony by the ex-wife thereby prejudicing the jury, blocking properly introduced evidence by the petitioner in front of the jury, allowing improper evidence by opposing party without any proper foundation despite petitioner's objections and a repeated pattern of perpetually denying petitioner's motions without justification effectively blocking critical testimony favorable to the Petitioner/Father, and issuing punitive orders based on misrepresentations not even introduced at trial and speculative earnings** demonstrate a level of bias that cannot be corrected on appeal. Each ruling is part of a **broader pattern of misconduct**, and appealing these rulings would be an inadequate remedy for the pervasive bias that influenced the trial as a whole.

e.  **Appeal Cannot Remedy Structural Unfairness in the Proceedings**: While appeals are appropriate for addressing errors of law, they are **insufficient** for addressing **systemic unfairness** caused by judicial bias. The **Texas Supreme Court in In re Union Pacific Resources Co., 969 S.W.2d 427 (Tex. 1998)** held that disqualification is the appropriate remedy when the impartiality of a judge is **reasonably questioned**. This case confirms that judicial misconduct and bias are matters of **fundamental fairness** that should be resolved immediately through disqualification, not through post-trial review.

f.  In Tariq Farooq's case, Judge Wynne's **repeated, deliberate and intentional refusal to accommodate a documented disability** under the Americans with Disabilities Act (ADA) is not simply a procedural error; it is a violation of **federal law** that creates an unfair disadvantage for the petitioner. Such misconduct not only violates **due process** but also undermines the integrity of the judicial process, making it unsuitable for resolution through an appeal alone.

g.  Additionally, the **repeated imputation of speculative earnings** without evidence and the **unlawful freezing of assets** go beyond rulings that could be corrected on

appeal. These actions reflect **judicial overreach and bias**, both of which require immediate rectification through disqualification.

h. **Disqualification Protects the Integrity of the Judicial Process**: The judiciary must not only be fair but must also **appear to be fair**. In **Johnson v. State, 169 S.W.3d 223 (Tex. Crim. App. 2005)**, the Texas courts recognized that **public confidence in the judicial system** is undermined when a judge's impartiality is reasonably questioned. Allowing Judge Wynne's bias to persist through to the appellate stage would harm the public's trust in the fairness of the trial and appellate processes.

i. **Appeals cannot restore confidence** in a judicial process that has been tainted by bias from the outset. By granting disqualification, the court ensures that all parties receive a fair and impartial trial, free from the appearance of favoritism or hostility.

16. Petitioner TARIQ FAROOQ requests including but not limited to that:
   a. Judge Lindsey Wynne be immediately disqualified from presiding over this case due to demonstrated judicial bias, procedural violations, and ADA violations:
   b. That all orders and rulings made by Judge Wynne, including the asset division, child custody decisions, and imputation of income in the last 4+ years be vacated due to her clear and open bias and improper judicial conduct during the proceedings:
   c. That the case be reassigned to a new judge to ensure a fair and impartial reconsideration of all matters, including child custody, asset division, and all pending motions.
   d. And that the Court grant any other relief it deems just and equitable in light of the facts and violations outlined.

<u>**Request for Oral Hearing**</u>

17. Given the seriousness of the allegations of judicial bias, misconduct, and due process violations outlined in this motion, **Petitioner Tariq Farooq respectfully requests an oral hearing** on this matter. An oral hearing is necessary to allow the Court to fully assess the extensive factual background, the pattern of judicial hostility, misconduct, bias and the violations of the Petitioner's constitutional rights under the Americans with Disabilities Act (ADA) and the Due Process Clause of the Fourteenth Amendment.

An oral hearing would also allow the Court to address any concerns or questions about the sufficiency of the evidence, ensure that all issues are properly heard, and provide both parties with the opportunity to fully present their arguments. This is particularly important given the gravity of the issues at stake, including the impartiality of the trial and the integrity of the judicial process. Case Law for an oral hearing is cited below:

a. **To Properly Address Factual Disputes**: Courts have recognized the importance of oral hearings when factual disputes or credibility determinations are central to the case. In **Matzen v. McLane, 659 S.W.2d 867, 870 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.)**, the court held that **a trial court's refusal to grant an oral hearing can constitute an abuse of discretion** when there are substantial factual disputes. In this case, the allegations of hostility and misconduct by Judge Wynne require in-person examination to fully appreciate the scope of the violations.

b. **Due Process Considerations**: The denial of an oral hearing where fundamental rights are at stake, such as the right to a fair and impartial judge, can violate due process. In **Perkins v. Groff, 936 S.W.2d 661, 667 (Tex. App.—Dallas 1996, writ denied)**, the court held that **due process requires an oral hearing when material factual issues must be resolved**. Here, the issues of bias, the denial of ADA accommodations, and judicial misconduct are not merely legal disputes - they involve factual determinations that can only be fully evaluated through an oral hearing.

c. **Best Interests of Justice and Judicial Integrity**: The Texas Supreme Court has emphasized that oral hearings are essential where the credibility of parties or the integrity of the judicial process is at issue. In **In re K.M.B., 606 S.W.3d 889, 899 (Tex. App.—Fort Worth 2020, pet. denied)**, the court emphasized the importance of oral hearings in cases involving complex factual matters. Given the nature of the serious claims against Judge Wynne, an oral hearing would allow the Court to ensure that all aspects of the alleged bias and misconduct are thoroughly examined.



### III.   CONCLUSION AND RELIEF REQUESTED FROM THE COURT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*IN CONCLUSION, A SPECIAL NEEDS CHILD BORN WITH TETRASOMY 18P WITH SEVERE DISABILITIES, LIMITED MENTAL CAPACITIES AND A DOCUMENTED HISTORY OF VIOLENCE AND MENTAL HEALTH ISSUES WHO HAS BEEN CONSTANTLY DENIED URGENTLY NEEDED MENTAL HEALTH CARE BY THE MOTHER HAS SUFFERED IRREPARABLE HARM AND IS CONTINUALLY SUFFERING DUE TO JUDGE'S WYNNE'S PERPETUAL JUDICIAL MISCONDUCT*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

18. For the legal facts and reasons outlined above, Petitioner respectfully requests the following relief without a hearing (No. 18 a - g):

a. **Immediate Disqualification of Judge Lindsey Wynne** from all current and future proceedings involving Petitioner, in accordance with **Canon 3B(1), 3B(4), and 3B(5)** of the **Texas Code of Judicial Conduct.**

b. **Reassignment of the Case** to a different judge to ensure impartiality and compliance with both the **Texas Constitution** and **Texas Rules of Civil Procedure, Rule 18b.**

c. **Injunction Against Further Retaliatory Actions** by Judge Wynne, including but not limited to further adverse rulings based on Petitioner's disability or previous actions in this case.

d. **Full Review of Past Actions and Rulings** issued by Judge Wynne, including but not limited to those involving the blocking of properly introduced evidence, division of the marital estate, freezing of FAROOQ's bank accounts, ADA violations, suppression of critical witnesses and evidence, imputation of speculative earnings with no evidence to support any such earnings, awarding exclusive medical/educational decision making rights to opposing party who has abused these rights to constantly act as a barrier towards providing the special needs child with urgently needed mental health care and the unjust imposition of a standard possession order followed by punitive and egregious supervised visitation. This review should be conducted by an impartial third-party judge to ensure fairness and to remedy any violations of Petitioner's due process rights.

e. **Immediately Order a New Trial in this case involving all matters of child custody and the marital estate division and property dispute.**

f. **Reasonable Accommodations under the ADA** to be immediately instituted in all future hearings, including additional time to respond and adjustments to courtroom procedures to accommodate Petitioner's hearing disability.

g. **Award of Costs and Fees** associated with the filing of this Motion and any related proceedings as the court deems appropriate.

In the alternative to the above relief (18 a-g), Petitioner TARIQ FAROOQ requests a hearing on this matter with the Honorable Judge of The First Administrative Judicial Region, Texas to grant the aforementioned relief.

*For these reasons, Petitioner Tariq Farooq requests that this Honorable Court grants the requested relief, disqualifies Judge Lindsey Wynne, and provides such other and further relief to which Petitioner may be justly entitled.*

Dated this 17th day of October, 2024.

Respectfully submitted,

TARIQ FAROOQ

brainsurface@yahoo.com
(No. 468-51752-2020)
3500 S. Echo Trl
Plano TX 75023
214-498-9888



## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on October 17, 2024.

To:

Ambreen Sahar Jafri's Attorney of Record "Vanita Aphan-Kirkland" via Electronic Transmission at vanita@tmwf.org through Electronic Filing.

AND

The 468th District Court of Collin County, Texas via Electronic Transmission at kquillin@co.collin.tx.us and 468@collincountytx.gov through Electronic Filing Manager.

AND

The First Administrative Judicial Region Court, Texas via Electronic Transmission at cshiver@firstadmin.com through Electronic Filing Manager and to all other parties on record.

By:

TARIQ FAROOQ

brainsurface@yahoo.com

tariq.farooq@brainsurface.com



# EXHIBITS



NO. 468-51752-2020

| | | |
|---|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF | § <br>§ <br>§ | IN THE DISTRICT COURT |
| AMBREEN SAHAR JAFRI<br>AND<br>TARIQ FAROOQ | § <br>§ <br>§ <br>§ | 468th JUDICIAL DISTRICT |
| AND IN THE INTEREST OF<br>H.A.F., F.A.F. AND M-T.A.F.,<br>CHILDREN | § <br>§ <br>§ <br>§ | COLLIN COUNTY, TEXAS |

## EXHIBIT A

## SUPPORTING AFFIDAVIT OF TARIQ FAROOQ

TARIQ FAROOQ appeared in person before me today and stated under oath:

1. My name is TARIQ FAROOQ. I am above the age of eighteen years, and I am fully competent to make this affidavit. Everything stated here in is true and correct to the best of my knowledge.

2. That, I am the biological father of the four children in this divorce matter.

3. That, there was NO Police Activity and NO restraining orders filed/obtained against me whatsoever during and after the divorce proceedings in this matter.

4. That, I do not have any other children from any other relationship other than the four children from the relationship for this divorce matter.

5. That, there is only one child under the age of eighteen in this matter: herein referred to as "M.T.A.F.". My other three children/girls are ALL above the age of eighteen.

6. I, Tariq Farooq have never been charged EVER by DFPS - Texas Child Protective Services (CPS) for any reason whatsoever.

7. I, Tariq Farooq have a perfect Academic and Health Record for my special needs child

M.T.A.F.

8. I, Tariq Farooq have NEVER been convicted of any crime in any country of the world and do NOT have any criminal proceedings currently pending against me in any court of the world.

9. I, have been cooperating and co-parenting with the Mother in the best interests of my special needs child before, during and post-separation to-date in this matter: Evidence of this duely available on Our Family Wizard, Academic and Medical/Health Records etc. of my special needs son M.T.A.F.

10. I, Tariq Farooq am a fit and able parent and provide a solid/reliable structure to my special needs child M.T.A.F. and have a very strong bond with my special needs child "M.T.A.F.".

11. That, the parties biological special needs child "M.T.A.F." suffers from a highly rare chromosomal condition right from birth termed as "Tetrasomy 18p" which is a rare chromosomal condition that affects many parts of the body. This condition usually causes feeding difficulties in infancy, delayed development, intellectual disability that can be severe, changes in muscle tone, distinctive facial features, mental health issues including but not limited to abrupt changes in mood potentially resulting in violent outbursts and other birth defects.

12. That, the Mother AMBREEN SAHAR JAFRI HAS BEEN INVESTIGATED by DFPS – Texas Child Protective Services (CPS) for MEDICAL NEGLECT for my special needs child "M.T.A.F." in the past.

13. That before separation, I was the stay-and-work-at-home parent taking care of the kids and was always present at home to look after the children, which is one of the reasons why "M.T.A.F." is very attached to me (the father) by an order of magnitude more than the mother. In strong

contrast to the Father, the Mother was away from the children spending 10-14 hours outside the home daily, while I, the father was the only parent taking care of the children, especially the special needs child "M.T.A.F.".

14. That "M.T.A.F." has always had since birth and continues to have a very special attachment/ dependence/bond with me (his biological father): Therefore, the current custody and visitation order from Honorable 468th District Court of Collin County, TX with regard to my special needs child "M.T.A.F." is NOT in his best interests and have resulted in exacerbation of M.T.A.F.'s mental health issues and multiple documented violent outbursts while in the mother's care and custody after the current Standard Possession and Access Order went into effect after the rendering of the Final Judgement by the honorable court in this matter primarily because "M.T.A.F." is now separated from his father for extended periods of time under the current Standard Possession Order issued by the Honorable Court.

15. That, under the current Possession Order issued by the Honorable Court my special needs child "M.T.A.F." suffers from exacerabated severe separation anxiety disorder from his father amongst other mental health issues.

16. That, under the current Possession Order issued by the Honorable Court my special needs child "M.T.A.F." is severely DEPRESSED amongst other mental health issues.

17. The current possession and access order is causing IRREPARABLE HARM to M.T.A.F. and is a serious cause for concern to his safety and the safety of others around him, thereby constituting an emergency which must be addressed by the Trial Court.

18. That, the mother AMBREEN SAHAR JAFRI has pretty much delegated her parental duties to digital screens, where the minor special needs child "M.T.A.F." spends hours and hours and hours on end including school weekdays on the iPad.

19. The Mother has a well-established history of continuously interfering with our children and coaching/alienating them perpetually against me (the father) before and after separation, especially when the children were in my time of possession and continues to interfere with the father's time of possession.

20. The Mother has neglected the medical care of minor special needs child M.T.A.F.

21. That, the circumstances of the minor special needs child M.T.A.F., a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the Final Judgement order in this matter as a direct result of him suffering from severe separation anxiety disorder from his father.

22. I hereby state that I am fit and able to take Primary Custody of my minor special needs child M.T.A.F. and foresee no issues in being around my child M.T.A.F., being able to provide for him, loving him and taking care of him in all aspects: Health, Academic, Mental Health, Happiness Index, Healthy Outdoor Learning Activities etc.

23. I, the father being a Stay-and-Work-at-Home Dad have a very special bond since birth with the minor special needs child "M.T.A.F." and provide a solid/proper structure and restrict his digital screen time and instead spend one-to-one time for the whole day with my special needs child "M.T.A.F.".

24. That, the Father-and-Son relationship between me the Father and "M.T.A.F." is exceptional in all respects:

    a. A very very very Strong/Healthy Bond between father and son.

    b. Perfect Academic and Health Record by me, the Father.

    c. Proper Life Structure provided by me, the Father.

    d. Healthy, Safe and Stable Real-Life Learning Lifestyle provided by me, the Father: Outdoor Activities, Swimming, Gym, Tennis Classes, Movies, Restaurants, Healthy

Indoor/Outdoor Activities with friends & family kids of "M.T.A.F.", Six Flags, Urban Air, Adventure Landing, Plano Recreational Center Membership and much more to foster a healthy lifestyle for "M.T.A.F.".

25. That, before separation and since separation throughout the divorce proceedings to-date, I have in the past and continue to spend long days with **one-on-one time** with my minor special needs child M.T.A.F. attending to all of his care and needs: Academic, Health, Mental Health, Outdoors/Learning, Healthy recreational activities etc. – We pretty much do everything together 24x7, while he is my periods of possession.

26. That, I the Father have a perfect academic track record as well as having a perfect health track record for my minor special needs child "M.T.A.F." before separation, through-out the length of the divorce proceedings and and since the current Standard Possession Order went into effect for the last "54+ months" with regard to my love, care, health-and-educational-needs and parental treatment towards my special needs child "M.T.A.F.".

27. That since the separation between the parties on March 05, 2020, the parties already had a Joint Managing Conservatorship and **Equal Sharing of Custody with Equal Time spent with the children amongst the parties and No Primary custody to any party** and that, there were no issues at all for co-parenting by me, the Father for the minor children for the arrangement which was **duely-ratified-and-kept-in-place** by the Honorable Court during the Temporary Orders Hearing held on July 7, 2021 since the term of separation for an unusually extended period of more than 32 months: That under this Equal-Time-Spent-With-Both-Parents-Schedule for 32+ months excluding Religious Occasions/Holidays, **"M.T.A.F." was separated from his father at most for 4 days at a time.**

28. That, "M.T.A.F." is a special needs child and has severe intellectual disability and mental

health issues that require special care and attention with a very special attachment/dependence/bond with his father: **Therefore, the current custody and visitation order from Honorable 468ᵗʰ District Court of Collin County, TX with regard to special needs child "M.T.A.F." is NOT in his best interests and has resulted in a severe and notable exacerbation of M.T.A.F.'s mental health issues and multiple documented violent outbursts while in the mother's care and custody after the current Possession and Access Order went into effect.**

29. **Minor Special Needs Child M.T.A.F.'s Mental Health and Public Safety Related Issues due to being FORCED AWAY from the Father for long periods of Time have exacerbated considerably since the current Standard Possession and Access Order went into effect. This constitutes an emergency that the Trial Court must address.**

30. That, the special needs child "M.T.A.F." has vehemently, violently and forcefully refused to go to the Mother at almost every single transition in the last 48+ months since separation, after the current Final Judgement Order by the Honorable 468ᵗʰ District Court of Collin County, TX went into effect since Nov 18, 2022 **and especially more so in the last few months.It is getting worse by the day.**

31. That, at multiple occasions during the transition process, these violent episodes by special needs child "M.T.A.F." have become a Public Spectacle at various locations which has been thoroughly documented in many many audios and videos as part of the existing and new evidence in this matter.

32. That due to the special attachment/bond of the minor child "M.T.A.F." with the Father, the Mother being the Primary Custodian is NOT in the best interest of the child as "M.T.A.F." has at the time of his transition consistently, forcefully and violently shown his intent/desire NOT to live with the Mother AT ALL (This fact is thoroughly documented in more than 134+

audios/videos by the Father before and since separation and since the Final Judgement Standard Possession Order went into effect).

33. That forcing a special needs child with mental health issues and known/documented violent tendencies to live with a parent with whom he does not even feel comfortable is against the norms of justice as well as NOT being in the best interest of the child.

34. That, the special needs minor child "M.T.A.F." being fourteen years old is highly possessive of his father and has always slept on the same bed with his father with his arms around his neck for most of the time: That, for this reason and other reasons the Father has declined to engage in a new relationship with a new partner so that he can single-handedly focus on the care and well-being of his special needs child.

35. That, special needs child "M.T.A.F." being only thirteen years of age has repeatedly informed his father on many many many occasions that he is going to RUN AWAY FROM HIS MOTHER'S APARTMENT. In the light of so much documented evidence of "M.T.A.F." being a Special Needs child, his mental health issues, violent outbursts at school and other locations and his clear desire NOT to live with Mother by "M.T.A.F.", I have strong concerns about the safety of my special needs child M.T.A.F. while he is in the mother's possession and being away from his father for extended periods of time under the current Possession Order issued by the court as part of its Final Judgement in this matter.

36. That, most of the times during Facetime Calls (Virtual Visitations) "M.T.A.F. begs his Father to come get him immediately from his mother's apartment while he is her possession.

37. That forcing my special needs child "M.T.A.F." with mental health issues and known/documented violent tendencies with documented outbursts of hurting other children

while in the mother's possession under the standard possession order may potentially very likely result in M.T.A.F.'s own safety being compromised and potentially result in **Public Safety Issues of others as well.**

38. That, before and during the divorce proceedings and especially after the Final Judgement has been rendered, Mother AMBREEN SAHAR JAFRI has <u>made serious errors in judgement in making Medical and Educational decisions for the special needs child "M.T.A.F.":</u> Therefore, it is not in the best interests of the child to be the sole decision maker for Medical and Educational decisions for M.T.A.F..

39. That, the current ruling of the court in this matter separating the father from the special needs child "M.T.A.F." for long periods of time has resulted in <u>serious mental health issues being exacerbated for the special needs child M.T.A.F. since the Final Judgement Orders went into effect</u> and have resulted in him showing violent outbursts resulting in "M.T.A.F." hurting other children in his school while he is in the care and custody of the mother, where she works right in his class at times as well (This fact has been thoroughly documented by the Schimelpfenig Middle School of Plano ISD on multiple occasions).

40. <u>In the light of ALL of the recent and past school shootings and other similar Public Safety Incidents and acts of violence nationwide linked to Mental Health and Parental Issues, this matter is being stressed-upon with GREAT URGENCE by me, the Father and recorded in this legal document by me, the Father TARIQ FAROOQ especially as it relates to the matter of Public Safety for future reference.</u>

41. Encapsulated within and attached to my Motion for Disqualification as part of the record are multiple Facts and Exhibits covering a wide range of issues presented in this Motion.

    a. I hereby state that I am the custodian of records of my household and am familiar with the manner in which its records are created and maintained by virtue of my duties and

my responsibilities.

b.  It is the regular practice of my household to make this type of record at or near the time of each act, event, exhibits, evidence, condition, or opinion set forth in this Record.

c.  It is the regular practice of my household for this type of record to be made by or from information transmitted by persons with knowledge of the matters set forth in them.

d.  It is the regular practice of my household to keep this type of record in the course of regularly conducted household activity.

e.  I have prepared and read my Motion for Disqualification of the Honorable Judge Wynne. The facts set forth therein are true and correct and are within my personal knowledge.

I humbly request the Court to please help me and my special needs child with mental health issues.

I humbly request the Honorable Judge of the First Administrative Judicial Region, Texas with a great sense of urgency in this matter to grant me and my special needs child the necessary, time-sensitive relief as requested in my Motion for Disqualification.

TARIQ FAROOQ

Signed under oath before me on /7TH Day of October, 2024

Notary Public State of Texas

FAITH MILLER
Notary Public
STATE OF TEXAS
Notary ID # 1215687-3
My Comm. Exp. March 29, 2025





# Kevin Lunde, M.D.

### Board Certified Otolaryngologist
### & Facial Plastic Surgeon

*Exhibit B*

4701 West Plano Parkway, Suite 150, Plano, TX 75093
P: 972-985-3223 • F: 972-964-0562 • https://www.kevinlundemd.com/

10/03/2024

RE: Tariq Farooq
Address: 3500 S Echo Trl Plano, TX 75023
DOB: 06/08/1975

To Whom It May Concern:

Based on Mr. Tariq Farooq's medical history in our office, he suffers from hearing loss and tinnitus, both of which significantly impact his auditory processing, particularly in stressful or high-pressure environments.

Due to this disability, he requires specific accommodations to ensure effective participation in such settings. These accommodations should include, but are not limited to, additional time to process auditory information and reduce stress, particularly in environments like court proceedings, where high noise levels and rapid communication can rapidly and significantly exacerbate his hearing disability condition.

Thank you for your assistance in this matter

If there are any questions, please call.

Sincerely,

Kevin Lunde, MD



STATE OF TEXAS )
COUNTY OF COLLIN )

I, Michael Gould, District Clerk in and for Collin County Texas, do hereby certify that the above foregoing is a true and correct copy of the original document as the same appears on the file in the District Court, Collin County, Texas, Witness my hand and seal of said Court, this the 12 day of OCT A.D., 20 2 Y

MICHAEL GOULD, DISTRICT CLERK
COLLIN COUNTY, TEXAS

_____ DEPUTY